93960-0689

LEGAL MAIL

INSPECTED BY

JUL 1 5 2008

U.S. MARSHALS SERVICE



OFFICE OF THE
CLERK U.S. DISTRICT
COURT NORTHERN DISTRICT
OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA
94102

$ 05.20
MAILED FROM ZIPCODE 9
002 4253482

RECEIVED
JUL 1 5 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES POSTAGE
$ 05.20
000453462
MAILED FROM ZIP CODE 939

OFFICE OF THE
CLERK U.S. DISTRICT
COURT NORTHERN DISTRICT
OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA
94102

U.S. MARSHALS SERVICE
INSPECTED BY
JUL 15 2008

GREGORY MITCHELL
D 44205 GW-209-L
P.O. BOX 689
SOLEDAD CA  93960-0689



C/O J. MARTINEZ
7/13/08

**LEGAL MAIL**

P.O. Box 689

D44205 Gw-209 Lower

Soledad, Ca 93960

July 11, 2008

Office of the clerk

U.S. District Court

Northern District

of California

450 Golden Gate Ave

San Francisco Ca 94102

Dear Sir:

    I have enclosed one (1) Pro se prisoner's civil complaint to be filed in this Court. However, the "prisoner's" application to proceed in forma pauperis is not enclosed. Because my counselor must verify my trust account. Subsequently, this form is in process of being mailed to your office. So, is it possible you could be patient for this portion of the packet.

Respectfully yours

Gregory Mitchell

Gregory Mitchell

1    COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

**FILED**

3    Name    **GREGORY    MITCHELL**

JUL  17

4        (Last)        (First)       (Initial)

RICHARD W. WIEKING
CLERK, U.S. DI

5    Prisoner Number    **D-44205**

6    Institutional Address    P.O. BOX 689, SOLEDAD, CA 93690-0689

8    =========================================== **E-filing**

9                   **UNITED STATES DISTRICT COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA**

10

GREGORY MITCHELL

11   (Enter the full name of plaintiff in this action.)    **CV 08 3443**

12             vs.              ) Case No. _____

13   JIM HAMLET, ET AL..,         ) (To be provided by the clerk of court)

                                    ) **COMPLAINT UNDER THE**

14                                 ) **CIVIL RIGHTS ACT,**
                                  ) **42 U.S.C §§ 1983**

15                                 ) **SECOND AMENDED**

16                                 ) **COMPLIANT** **TEH**

17   (Enter the full name of the defendant(s) in this action)   ) **(PR)**

18   *[All questions on this complaint form must be answered in order for your action to proceed..]*

19   I.    Exhaustion of Administrative Remedies

20        [**Note:** You must exhaust your administrative remedies before your claim can go

21        forward. The court will dismiss any unexhausted claims.]

22        A.     Place of present confinement    SOLEDAD CTF STATE PRISON

23        B.     Is there a grievance procedure in this institution?

24                YES (X)     NO ( )

25        C.     Did you present the facts in your complaint for review through the grievance

26                procedure?

27                YES(X)     NO ( )

28        D.     If your answer is YES, list the appeal number and the date and result of the appeal at

COMPLAINT             - 1 -

1   each level of review. If you did not pursue a certain level of appeal, explain why.

2       1. Informal appeal _____

3   _____

4

5       2. First formal level_____

6   _____

7

8       3. Second formal level_____

9   _____

10

11       4. Third formal level _____

12   _____

13   **SEE PAGES 17 THUR 29**

14   E.   Is the last level to which you appealed the highest level of appeal available to you?

15           YES ( $^x$ )   NO ( )

16   F.   If you did not present your claim for review through the grievance procedure, explain

17   why._____

18   _____

19   _____

20   II.   Parties

21       A.   Write your name and your present address. Do the same for additional plaintiffs, if any.

22                  SEE PAGES 8 THUR 13

23   _____

24   _____

25       B.   Write the full name of each defendant, his or her official position, and his or her place of

26          employment.

27                  SEE PAGES 8 THUR 13

28   _____

COMPLAINT                                    - 2 -

1 _____

2 _____

3 _____

4 III.   Statement of Claim

5        State here as briefly as possible the facts of your case. Be sure to describe how each

6 defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any

7 cases or statutes. If you have more than one claim, each claim should be set forth in a separate

8 numbered paragraph.

9 _____ SEE PAGES 29 THUR 38 _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 IV.   Relief

23        Your complaint cannot go forward unless you request specific relief. State briefly exactly what

24 you want the court to do for you. Make no legal arguments; cite no cases or statutes.

25 _____ SEE PAGES 38 THUR 40 _____

26 _____

27 _____

28 _____

COMPLAINT                                    - 3 -

1

2

3

4    I declare under penalty of perjury that the foregoing is true and correct.

5

6    Signed this __18__ day of ___July___, 20_08_

7

8                        _Gregory Mitchell_

9                        (Plaintiff's signature)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                        - 4 -

1

2

3

4

5

6

7

8      IN THE UNITED STATES DISTRICT COURT

9      FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11     GREGORY MITCHELL,                   )
                                           )
12               Plaintiff(s),             )        No. C 05-2432 TEH (PR)
                                           )        .SECOND AMENDED
13          v.                             )        COMPLAINT RE-FILE FOR
                                           )        .VIOLATIONS OF FREEDOM
14     JIM HAMLET, et al.,                 )        OF RELIGION
                                           )
15               Defendant(s).             )
       _____)

16                                   **VENUE**

17     1. Plaintiff is a Muslim state prisoner housed at California State Prison Soledad

18     seeking relief under 42 U.S.C. 1983 for alleged violations of his First Amendment

19     Rights to free exercise to his religion Al Islam, as well as his Fourteenth

20     Amendment rights to equal protection of the laws.

21                                 **JURISDICTION**

22     2. Venue is proper in the Northern District of California under 28 U.S.C. 1391

23     because the events or omissions giving rise to MITCHELL'S claims occurred at

24     CTF-Soledad in Monterey County, located in the Northern District. See 28 U.S.C.

25     42 1391 (b). This Court has general question jurisdiction over this action under

26     42 U.S.C. 1983 See 28 U.S.C. 1331 and 1915 (a)

27                                      -5-

28

3. Gregory Mitchell, a pro se Plaintiff currently housed at the Correctional Training Facility ("CTF") in Soledad, California filed an action under 42 U.S.C. 1983 on June 16, 2005. The First Amended complaint alleges that California Department of Correctons and Rehabilitation ("CDCR") personnel acted under color of state law to violate Plaintiff's rights under the United States Constitution the California Constitution, and the Religious Land Use and Institutionalized Person Act ("RLUIPA"). Plaintiff alleges that CTF personnel denied him a Halal diet, the ability to wear a beard, the ability to group-worship, and the ability to use earned time off to attend prayer services. Plaintiff also alleges that the prison's religious artifact vendor system only permits him to order religious artifacts from a single vendor and that prison regulations limit the amount of prayer oils that he is permitted to order. Finally, Plaintiff contends that the prison's Muslim Community has not been provided with either a qualified Muslim Chaplain or a Large Prayer Rug.

Plaintiff First Amended Complaint states claims for relief. Plaintiff's first claim for relief alleges a violation of his First Amendment right to free exercise of religion and RLUIPA. Plaintiff's second claim for relief alleges a violation of his Fourteenth Amendment right to Equal Protection and RLIUPA. Plaintiff's third claim for relief alleges a violation of the Establishment Clause of the Constitution and RLUIPA for suppressing Plaintiff's religion while favoring other religions. Plaintiff's fourth claim for relief alleges violations of RLUIPA and the California Constitution's prohibition of governmental acts and undertakings respecting the establishment of religion. Plaintiff's right to Equal Protection as guaranteed by the California Constitution.

Finally, Plaintiff's sixth claim relief alleges violations of RLUIPA and California Constitution for infringing on his right to Free exercise of Religion. Based on these claims, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. The Court conducted a preliminary screening on the complaint pursuant to 28 U.S.C. 1915 (a), and issued an order on December 14, 2005 dismissing Jim Hamlet, and allowing the case to proceed against Defendants Amaya, Lockwood, Barker, Solis, Brown, Caravello and Grannis (Docket No. 4).

On March 13, 2006 Defendants filed a MOTION FOR DISMISSAL (Docket No. 11). Plaintiff filed an opposition to motion (Docket No. 16) and Defendants filed a reply (Docket No. 14). On or about April 6, 2007 the Court GRANTED defendants' motion to dismiss for failure to exhaust administrative remedies and the complaint was DISMISSED WITHOUT PREJUDICE. This Court would permit the Plaintiff to RE-FILE claims following proper exhaustion of administrative remedies which he has in this second Amended Complaint. See (Docket No. 11).

## PLAINTIFF

4. Plaintiff is a Muslim inmate housed within the California Department Of Corrections Of Rehabilitation ("CDCR") prison Soledad and/or ("CTF SOLEDAD"). Upon information and belief, there are approximately 300 Muslim inmates at CTF-Soledad. Named Plaintiff GREGORY MITCHELL is practicing Muslim incarcerated at CTF-Soledad and, have been denied, depravity, or entanglement of his religious accommodations described hereinafter.

///////

////

//

-7-

**DEFENDANTS**

5. Plaintiff is informed and believe, and thereon allege, that defendant J. BROWN is, and at all times relevant herein was, the Acting Warden of CTF-Soledad. Defendant BROWN is sued in her official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Acting Warden of CTF-Soledad, defendant BROWN was and is responsible for the operation of CTF-Soledad and for the spiritual welfare of all prisoners confined therein, including the accommodations of those prisoners as well as the policies and practices regarding the operation of the Soledad facilities, including being responsible for providing constitutionally adequate policies of prisoners religious practices.

6. Plaintiff is informed and believe, and thereon allege, that defendant A.P. KANE is, and at all times relevant herein was, the Acting Warden of CTF-Soledad. Defendant KANE is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Acting Warden of CTF-Soledad, defendant KANE was and is responsible for the operation of CTF-Soledad and for the spiritual welfare of all prisoners confined therein, including the accommodation of those prisoners practices, including being responsible for providing constitutionally adequate policies.

7. Plaintiff is informed and believe, and thereon allege, that defendant B. Curry is, and at all times relevant herein was, the Acting Warden of CTF Soledad. Defendant CURRY is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Acting Warden of CTF-Soledad, defendant CURRY was and is responsible for the operation of CTF-Soledad and for the spiritual welfare of all prisoners confined

therein including the accommodation of those prisoners practices, including being responsible for providing constitutionally adequate policies.

9. Plaintiff is informed and believe, and thereon allege, that defendant W. COHEN is, and at all times relevant herein was, the Associate Warden Business Services/Community Resources Manager at CTF-Soledad. Defendant COHEN is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that defendant COHEN was and is responsible for the Religious Service Programs and staff,assisting in the accommodation of prisoners' religious practices and formulating policies on the exercise of religion at CTF-Soledad.

10. Plaintiff is informed and believe, and thereon allege, that defendant LOCKWOOD is, and at all times relevant herein was, the Business Manager II. at CTF-Soledad. Defendant LOCKWOOD is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that defendant LOCKWOOD was and is responsible for the Religious Service Programs and staff, assisting in the accommodation of prisoners' religious practices and formulating policies on the exercise of religion at CTF-Soledad.

11. Plaintiff is informed and believe, and thereon allege, that defendant B. HEDRICK is, and at all times relevant herein was, the Business Manager II./COMMUNITY RESOURCES MANAGER at Soledad. Defendant HEDRICK is sued in her official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that defendant HEDRICK was and is responsible for the Religious Service Programs and staff, assisting in the accommodation of prisoners' religious practices and formulating policies on the exercise of

-9-

1  religion.

2  12.  Plaintiff is informed and believe, and thereon allege, that

3  defendant P. MANERVILLE is, and at all times relevant herein was,

4  the Business Manager II/Community Resources Manager at CTF-Soledad.

5  Defendant MANDERVILLE is sued in her official and individual

6  capacities. Plaintiff is further informed and believe, and thereon

7  allege, that defendant MANDERVILLE was and is responsible for the

8  Religious Service Programs and staff, assisting in the accommodation

9  of prisoners' religious practices and formulating policies on the

10  exercise of religion at CTF-Soledad.

11  13. Plaintiff is informed and believe, and thereon allege, that

12  defendant W.J. HILL is, and at all times relevant herein was, the

13  Associate Warden Business Services/Community Resources Manager at

14  CTF-Soledad. Defendant HILL is sued in his official and individual

15  capacities. Plaintiff is further informed and believe, and thereon

16  allege, that defendant HILL was and is responsible for the Religious

17  Service Programs and staff, assisting in the accommodation of

18  prisoners' religious practices and formulating policies on the

19  exercise of religion at CTF-Soledad.

20  14. Plaintiff is informed and believe, and thereon allege, that

21  defendant PAT BARKER is, and at all times relevant herein was, the

22  Business Manager II/Community Resources Manager at CTF-Soledad.

23  Defendant BARKER

24  is sued in her official and individual capacities, Plaintiff is

25  further informed and believe, and thereon allege, that defendant

26  BARKER was and is responsible for assisting in the accommodation

27  of prisoners' religious practices and formulating polices on the

28  exercise of religion at CTF-Soledad.

15. Plaintiff is informed and believe, and thereon allege, that defendant ANTAR JANNAH is, and at all times relevant herein was, the MUSLIM CHAPLAIN. Defendant JANNAH is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as The Muslim Chaplain, defendant JANNAH was and is responsible for the religious policies and programs, spiritual welfare, formulating constitutionally adequate policies of all Muslim prisoners' religious practices at CTF-Soledad.

16. Plaintiff is informed and believe, and thereon allege, that defendant E.J. KLEIN is, and at all times relevant herein was, the JEWISH CHAPLAIN for CTF-Soledad. Defendant KLEIN is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Jewish Chaplain, defendant KLEIN is responsible for the religious policies and Kosher Diet Program at CTF-Soledad. Defendant KLEIN is responisble for Religious Service Programs and assisting in the accommodation of prisoners' religious practices and formulating policies on the exercise of religion at CTF-Soledad.

17. Plaintiff is informed and believe, and thereon allege, that defendant A.O. AMAYA is, and at all times relevant herein was, the Assistant Food Manager or Food Manager at CTF-Soledad. Defendant AMAYA is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege that defendant AMAYA was and is responsible for providing prisoners' with nutritious meals which accommodate their religious needs.

////
///
///
//

-11-

18. Plaintiff is informed and believe, and thereon allege, that defendant J. HODGES is, and at all times relevant herein was, the Assistant Food Manager or Food Manager at CTF-Soledad. Defendant J. HODGES is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege that defendant J. HODGES was and is responsible for providing prisoners' with nutritious meals which accommodate their religious needs.

19. Plaintiff is informed and believe, and thereon allege, the defendant J.L. MADISON is, and at all times relevant herein was, the Correctional Lieutenant of Soledad South Unit VII. Defendant Madison is sued in his official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Correctional Lieutenant of Soledad, defendant Madison was and is responsible for reviewing and issuing decisions based on claims of constitutional violations raised by prisoners through the 602 Inmate/Parolee appeals Form process, as well as assisting in the accommodation of prisoners' religious practices and policies on the exercise of religion.

20. Plaintiff is informed and believe, and thereon allege, that defendant CARAVELLO is and at all times relevant herein was, the Correctional Lieutenant of Soledad. Defendant CARAVELLO is sued in his official and individual capacities. Plaintiff further is informed and believe, and thereon allege, that as the Correctional Lieutenant defendant CARVELLO was and is responsible for reviewing and issuing decisions based on claims of constitutional violations raised by prisoners through the 602 Inmate/Parolee Appeals Form process, as well as assisting in the accommodation of prisoners' religious practices and policies on the exercise of religion at CTF-Soledad.

-12-

1    20.(a) Plaintiff is informed and believe, and thereon allege, that
2    defendant V. RASO is and at all times relevant herein was, the Associate
3    Warden Business Services/Community Resources Manager at CTF-Soledad.
4    Defendant RASO is sued in his official and individual capacities.
5    Plaintiff is further informed and believe, and thereon allege, that
6    defendant RASO was and is responsible for the Religious Service Programs
7    and staff, assisting in the accommodation of prisoners' religious
8    practices and formulating policies on the exercise of religion at
9    CTF-Soledad.

10    20. (b) Plaintiff is informed and believe, and thereon allege, that
11    defendant SUE SUMMERSETT is, and at all times relevant herein was , the
12    Department Food Administrator (DFA) at CTF-Soledad.  Defendant SUMMERSETT
13    is sued in her official and individual capacities. Plaintiff is further
14    informed and believe, and thereon allege that defendant SUMMERSETT was
15    and is responsible for providing prisoners' and staff, with nutritious
16    meals which accommodate religious dietary needs, as well as formulating
17    policies on the  religious diets at CTF Soledad.

18    / / / / / / / / /
19    / / / / / / / /
20    / / / / /
21    / / / /
22    / / /
23    / / /
24    / / /
25    / / /
26    / / /
27    / / /
28    / /

21. Plaintiff is informed and believe, and thereon allege, that defendant NAN GRANNIS is, and at all times relevant herein was, the Chief of Inmate Appeals for the entire CDCR, defendant GRANNIS is sued in her official and individual capacities. Plaintiff is further informed and believe, and thereon allege, that as the Chief of Inmate Appeals, GRANNIS was and is responsible for reviewing and issuing decisions based on claims of constitutional violations raised by prisoners through the 602 Inmate/Parolee Appeals Form process.

42 U.S.C. 1983 and 1391 (RLUIPA)

CIVIL ACTION ALLEGATIONS.

22. Plaintiff brings this action on his behalf and pursuant 42 U.S.C. 28 U.S.C. 1331 of the federal rules of civil procedure, and on his behalf as a practicing Muslim whose faith is Al Islam who now, or will in the future be, confined at CTF-Soledad of California Department of Corrections Rehabilitation ("CDCR"). The bases for this action is as follow. (1) Plaintiff is informed and believe, and thereon allege, that CTF-Soledad has 300 practicing Muslim and plaintiff, he brings this action on his behalf. (a) The conditions, practices and omissions that from the basis of this complaint are common to plaintiff and other situated Muslims inmates and himself, if consolidates other actions. (b) The claims of plaintiff are typical of claims of other situated Muslim inmates. (c) Defendants have acted or refused to act on grounds generally applicable to other situated Muslim inmates and plaintiff, making appropriate injunctive and declaratory relief with respect to plaintiff. (d) Any damages recovered on behalf of the plaintiff will be distributed to plaintiff. (e) There are questions of law and facts common to other situated Muslim inmates and plaintiff, including defendants' violations of the United States Constitution. (f) The plaintiff is required to eat Islamically slaughter with name

-14-

of Allah [Halal meats] as well as foods not limited to meats.  The
defendants are not providing plaintiff with a diet consistent with
his essential tenet ,nor a diet similarly to his dietary laws, such
as a Kosher meals.

Plaintiff's inmate appeal (602) concerning a Halal or Kosher foods
which are consistent with his dietary laws has been DENIED.  Defendants
have no penological interest other an exaggerated response to this
concern.

23. Plaintiff is informed and believe, and thereon allege, that with
respect to the inmate appeal concerning depriving him the opportunity
to purchased religious artifacts has been DENIED.  Defendants have
no penological interest other than a exaggerated response to this
concern.

24. Plaintiff is informed and believe, and thereon allege, that
regarding inmate appeal in relations to Christian based inmates being
provided with pews that weigh approximately 80-90 pounds in the
interfaith chapel for religious services.  While Muslim inmates are
being denied a large prayer rug for their prayer services has been
DENIED.

25. Plaintiff is informed and believe, and thereon allege, that
regarding the inmate appeal (602) regarding a diet similar to his Kosher
diet has been DENIED.  Defendants have no penological interest other
than a exaggerated response to this concern.

26. Plaintiff is informed and believe, and thereon allege, that with
respect to the inmate appeal for one vendor to purchased religious
artifacts, as well as limited to four fragrances was DENIED. Defendants
have no penological interest other than exaggerated response to this
concern.

-15-

27. Plaintiff is informed and believe, and thereon allege, that with respect to the inmate appeal for a Chaplain qualified to teach plaintiff and other situated Muslim inmates the eleven-pre-requisites—the rudiments of the Quranic language has been DENIED. Defendants have no penological interest other than a exaggerated response to this concern.

28. Plaintiff is informed and believe, and thereon allege, that with respect to the provision of permission for plaintiff to leave work assignments for attendance at the Friday prayer service known as a Jummah group worship has been DENIED. Defendants have no penological interest other than a exaggerated response to this concern.

29. Plaintiff is informed and believe, and thereon allege, that with respect to the inmate appeal for ¢85. per Muslim inmate for special banquets has been DENIED. Defendants have no penological interest other than a exaggerated response to this concern.

30. Plaintiff's Inmate Appeals ("602") concerning each allegations have exhausted their administrative remedies as ordered by this court.

31. Plaintiff is informed and believe, and thereon allege, that his inmate appeal in respect to his inability to wear his beard without receiving discipline, i.e. 115, for refusal, has been DENIED. Defendants have no penological interest other than a exaggerated response to this concern.

32. Plaintiff is informed and believe, and thereon allege, that each defendant named herein is responsible in some manner, to some degree, and for some or all of the deprivations of accommodations requested by Plaintiff and necessary to the practice of his Muslim religion Al Islam.

## GENERAL FACTS

a. On or about July 8, 2003 named plaintiff MITCHELL submitted inmate appeal # CTF-C- 03-01885 relative to permission to purchase religious (prayer oils, kufee caps, prayer rugs) artifacts, accordingly, to Operation Procedure #42 signed by SEE EX (A) also next attached (A). On or about July 24, 2003 defendant CARAVELLO interviewed plaintiff and on or about July 29, 2003 soon after the interview with plaintiff defendant CARAVELLO along with defendants HILL and SOLIS denied the appeal on the Second Level, who on information and belief consulted a pretend memorandum dated June 30, 2003 by defendant J. BROWN Warden stated: " Suspension of approval to purchase prayer oils." SEE (B) and (C)  In addition enclosed as a exhibit in inmate appeal # CTF-C-0301885 a memo dated October 10 2000 instructing the whole of Califorina Department Of Corrections (CDC) stated: " Under RLUIPA, any such restriction will be invalidated unless (1) furthers a compelling government interest, and (2) compelling that government issues." SEE EX (D)  On or about July 30, 2003 plaintiff responded to H. Level inmate appeal # CTF-C- 01885 Stated: " This is indirect violation of the Religious Land Used And Institutionalized Person Act 2000 S (2869) SEE EX (E)  On or about October 9, 2003 inmate appeal # CTF-C- 03-01885 was denied by defendant N. GRANNIS Chief Inmate Appeals Branch SEE EX (F)  On or about July 20 2003 named plaintiff MITCHELL submitted an inmate appeal # CTF-C-03-01986 stating: " that he was being deprived to freely exercise his religious dietary laws SEE EX (G)  Prior to plaintiff filing inmate appeal # CTF-C-01885 defendant A.O. AMAYA Correctional Food Manager II disseminated a Memo dated March 28, 2003, on

substitutions for meat by products for Special Religious Diet participates. This Memo was enclosed in inmate appeal # CTF-C-03-01986 SEE EX (H) On March 22, 2003 plaintiff wrote a letter of transmittal to defendant A.O. AMAYO Correctional Food Manager, this letter was also enclosed in inmate appeal # CTF-03-01986 as a exhibit SEE EX (I) In addition plaintiff sent a requested for interview SEE SAME (I) Response from defendant A.O. AMAYA. On or about October 14, 2003, defendants J.L. BROWN, Chief Deputy Warden, and J.R. SOLIS Warden denied appeal # CTF-03-01986 SEE EX (J) On or about January 12, 2004 defendant T SURGE signed for defendant N. GRANNIS, Chief Inmate Appeals Branch denied appeal # CTF-C-03-01986 SEE EX (K) On January 10 2003 plaintiff MITCHELL submitted a group appeal # CTF-04-00085 pointing to the fact the COOPER case had been won thereby California State Prisons where to be in compliance by 2006 to institute Kosher/Halal Kitchens to provide religious meals consistent with other situated Muslim inmates dietary needs and plaintiff's religious scruples. SEE EX. (L) On February 17, 2004 plaintiff received a response on the First Level of inmate appeal CTF-C-04-00085 partially denied by defendants A.O. AMAYA and B. LOCKWOOD SEE EX (M) On March 2, 2004 plaintiff responded on F. Level Response and stated: " I discovered that one piece of cheese and one peanut butter enclosed in the Special Religious Diet lunches (SRD) clearly, fail extremely lower, than the prescribed protein value in D.O.M. 54080.3" SEE EX (M) On March 17, 2004 plaintiff received Second Level Appeal Response # CTF-C-04-00085 from defendants P.BAKER Associate Warden Business Services and J.R. SOLIS Warden partially granted the Second Level Review SEE EX (O) On March 30,

2004, Plaintiff MITCHELL responded on H. Level Response asserting his dissatisfaction. See (Ex P). On June 7, 2004 defendant NAN GRANNIS Chief Inmate Appeal Branch: ordered no changes or modifications are required by the institution. See (Ex Q).

## GENERAL FACTS II.

On or about April 28, 2005 named Plaintiff filed an inmate appeal CTFC 05-00938 relative to "policy" prohibiting him from ordering religious artifacts from more than one vender and placing a four ounce limit for religious ceremonial oils, as far as a four fragrance limit without any legitimate penological interest. See ( Ex A.)   Secondly, the fact that Muslim inmates had been terribly represented by the defendant **Muslim Chaplain Antar Jannah** with regard to the issue as well as Muslim inmates religious rights. See (A-2 Memo dated 2/3/05) On or about May 5, 2005 defendants J.L. Madison Correctional Lieutenant and P. Manderville Associate Warden CTF-South Facility DENIED this inmate appeal at the First Level Response. See EX A1) a significant note General Facts II. exhibits will consist of A, A-1 thru A-10, B,C,D,E,F,G,H)

On or about June 6, 2005 Plaintiff responded on the F. Level Response " This answer is unfairly represented and unsound because it doesn't address the logic of one religious artifact vender limits comparing to the five or six venders for special purchased items for general population inmates who are afforded to purchased items e.g.., televisions, radios, cassette players, C.D. players, tennis shoes etc." Defendant Kane Acting Warden gave his word that he'd help and fairly look into extending the fragrances and venders. See (Ex.A-2).

////

///

-19-

On or about July 20, 2005 defendants A. Jannah, Muslim Chaplian and B. Hedrick, P. Manderville and A.P. Kane PARTIALLY GRANTED the second level response of this inmate appeal CTF-S-00938, but insisted that one (1) Religious Artifact Vender was good enough without giving a legitimate penological interest or any security concerns. See (Ex A-3).

On or about July 28, 2005 Plaintiff responded to defendants Second Level Response and stated: "In reference to (RLUPIA) a state of federal agency must have a genuine penological interest of the religious accommodations or religious observances that there is a threat to the institution need to maintain order and safety of the institution and this is in question. In this instances CTF-Soledad has no legitimate penological reasons or rationale not to extend the venders or fragrances." The one **BROADWORLD** has been an ongoing problem e.g., misplacing orders, not filling the whole order, items missing from the paid orders, e.g., The Holy Qur'ans, prayer rugs, etc...Sadly, the **Warden** has missed the point on

///////

/////

///

//

//

//

//

//

//

//                                          -20-

this appeal of treating all inmates impartial because the **general** population inmates are accommodated with several special purchased vendors each one is capable to furnished the items reqested by the inmate population at **CTF-SOLEDAD.** See EX (A-4) On or about October 28, 2005 defendant **GRANNIS, Chief Inmate Appeals Branch** denied this appeal. See Ex. (A-5) On or about june 13, 2005 named plaintiff **MITCHELL** submitted an inmate appeal **#** CTF-S-05-01862 citing the **Religious Land Use And Institutionalized Act of 2000 (RLUIPA)** also <u>Mayweather v. Terhune</u> case. Requesting that other situated **Muslim** inmates and himself should be allowed to practice their faith Al Islam by attending **Jummah prayer** on Fridays without receiving a **128-A or 115** **(disciplinary action)** and be allowed to wear the half-inch beard which are both ( central tenants of Al Islam) key tenats to his faith Al Islam. See Ex(B & B-1) 13-page Memo pages (explaination of Islamic jurispurdence) come **by Abu Alfa Umar Abd's Sataar bin Farid** Sankore Institute of Islamic-African Studies, The School Of Thought the (Exib-2) II follows. Secondly, as aforementioned all exhibits and appendix documents were attached to this original inmate appeal **CTF-S-05-01862** as proof and verification that the **Jummah Prayer and wearing** the beard where factors analyzed and underscored for alleged **Fisrt Amendment Violations** of prisoners' constitutional rights under **Turner v. Safly, 482 U.S. 78, 89-91, 107 S Ct. 2254, 96 L ed. 64 {1987), See Ex (B-3)** A news clipping from the **Sacramento Bee** dated 12-28-02 as well as a document supporting the fact that the Muslim Chaplain defendant **Antar Jannah** and B. **Hedrick Business Manager II** DENIED the appeal on the First level See Ex. (B-4). On or about August 9, 2005 dendants **A. Jannah** and **B. Hedrick** denied the appeal same as about. On or about August 15, 2005 plaintiff responded to defendants response on F. level stating: "Antar Jannah [**Muslim Chaplain**] response alongside B. Hedrick promulgate an acceptable old policy which in this case continues to violate appellant's and other situated Muslims rights to wear their beard, This sets precedence to entitle **declaratory relief** or judgment for Appellant and order situated Muslim inmates. Because the **U.S. Supreme Ct.** ruling in **Cutter v. Wilkerson.** This answer is unacceptable

1   and  dissatisfactory." See Ex (B-5) On or about September 9, 2005, defendant WADE

2   COHEN Ass. Warden Business Services and A.P. KANE WARDDEN (A) denied this appeal.

3   See Ex (B-6)  On or about September 29, 2005 plaintiff responded to defedants re-

4   sponse See Ex (B-7)  On or about June 28, 2005, named plainitff MITCHELL submitted

5   a group inmate appeal CTF-C-05-02094 pointing to the fact that over the past four (4)

6   years other situated Muslim inmates and hiself Religious dietary needs were being

7   violated by not being provided with adequate substitution for the California De-

8   partment Of Corrections mandated Special Religious Diet  (SRD) PROGRAM at CSP -

9   Soledad and that CTF-Soledad Food Service Staff  adopted the ruling of the United

10  State Supreme Court (RLUIPA) Cutter v. Reginald Wilkinson no. 03-9877 Jon. B. Cutter

11  (this eight (8) page document was copied from the Daily Appellate Report dated (May

12  31, 2005) Ex.(a) (C and C-1)to this inmate appeal.  On or about July 13, 2005 de-

13  fendants A.O. AMAYA Correctional Food Manager II and J. Hodges Ass. Correctional

14  Food Manager I., Sue Summerset, Department Food Adminstrator  (DFA) and B. HEDRICK

15  Correctional Business manager II. denied the First Level Response.  See Ex (C-2)

16  On or about July 27, 2005 plaintiff responded to defendants First Level Response

17  and  stated: " In the words of Justice J. Thomas United States Supreme Court (re-

18  grading ) Cutter v. Wilkinson, quoting Justice Thomas "respecting an establishment

19  Religion; it mus not be interfere with state establishment of religion." CSP-Soledad

20  Officails have ot provided a "relevant' reasoning how providing HALAL meals for an

21  established religion [AL Islam] is a "substantial burden"on the  Department Of

22  Correctionsor CSP-Soledad? This answer is unacceptable and far off base of the

23  Constitutionality of the Cutter decision. See Ex (C-3)  on or about August 15, 2005

24  defendants W. Cohen and A.P Kane Warden denied this appeal stating: "The CTF

25  Facility has complied with Title 15 3034 (a) by developing the Operational procedure

26  #67 (See O.P. 67 and Ex. C-4).

    ////

27   ///                                      22

28   //

1  | which offer two (2) **diets**, a **modified special religious diet** and **a strict diet**.
2  | In addition , you were informed that **Sue Summersett, department Food Admini-**
3  | **strator (DFA)** has stated, **"CDCR"** offers pork free meals for the general
4  | population, a **vegetarian** choice for all religious needs." See Ex. (C-5)
5  | On or about August 21, 2005 plaintiff responed to defendants **Second Level**
6  | **Response** stating: **"Justice Thomas stated (in Cutter v. Wilkinsson case)** for
7  | more than a decade, the **Federal Bureau Of Prison** (have provide Halal and
8  | Kosher meals and other religious accommodations) had managerd the largest
9  | Correctional System in the Nation under the same (CDC) scrutiny standard as
10 | **RLUIPA without** comprisiing prison security, public safety, or the constitut-
11 | ional rights of prisoners." **Cutter v. Wilkerson.** For some (five years from
12 | inception of implementation of **Special Religious Diet program at CSP-Soledad)**
13 | (5) years now  California Department Of Corrections (CDC) have been aware
14 | **of the** Maywether v.  Newland 314 F. 3d. 10062-1068 (CA 9-2002). And have
15 | choose too **substantially burden** appellant's and other situated **Muslim inmates**
16 | by not providing **non-Halal meats.** This answer is unsatisfactory." See Ex (C-6)
17 | on or about Nov 30, 2005 defendant **N GRANNIS, CHIEF INMATE APPEALS BRANCH**
18 | denied this appeal. See Ex (C-7)  Onor about June 15, 2005 named plaintiff
19 | submitted an inmate appeal **CTF-C-05-01942** based on **Muslim inmates (for the**
20 | **past ten (10 ) years)** have been sitting on blankets in constrast to a large
21 | Prayer Rug for e.g. **Jummah Friday prayers** or the **Five Daily prayers** while
22 | in the interfaith chapel) compared to **CTF-SOLEDAD Officials** providing for
23 | other religious: **Christian, latter Day Saints, etc..., pews** for their reli-
24 | gious  **services.** See Ex. (D)  On or about August 4 2005 defendants **Antar**
25 | **Jannah, Muslim Chaplian and B. Hedrick** partially GRANTED this appeal. See
26 | Ex. (D-1) On or about August 4 2005, **plaintiff** responded to defendants
27 | **First Level Response on the F. Level** resopnse and stated: "Sadly Mr. Jannah
28 | answer has been a pattern of fabricating fairy tales over the past ten-years

and has neglected the **Muslim population** at **CSP-Soledad** by subterfuge and

equivocations, His track record shows clear testimony that he is not quite

forthcoming." See Ex (D-2) On or about September 19, 2005 defendants **Wade**

**Cohen** and **A.P. KANE** partially GRANTED this appeal See Ex.(D-**3**) On or about

September 19, 2005 plaintiff responded to defendants **Second Level** Response

and stated: "In this case, of **MS. HEDRICK** answer to Second Level Response

she notes, "blanket exchange can be initiated to take care of this concern."

Indeed, **blanket** exchange can  wash the.. blankets but somehow she overlooks

the...crux of the appeal particularly... the purchasing of aa prayeer-rug

underline  in **RLUIPA Federal funding by 42 U.S.C.** 2000 cc-(b) (1). This

answer doesn't address **RLUIPA**, I am absolutely not satisfied with this answer.

See Ex. (D-4) On or about December 30, 2005 defendant **N. GRANNIS, Chief**

**Inmate Appeal Branch** DENIED THIS APPEAL. Ex. (D-5)

On or about July 27,05 named plaintiff submitted an inmate appeal **#** 05-02433

on   ·  C.C.R. Title 15 3084 (5)(b)(1)(2) **policy** for the reduced amount of

monies per inmate for **Special religious Banquents** See Ex (E) on or about

Oct 27, 05 defendants **Antar Jannah, Muslim Chaplain,** and B. Hedrick (CBM )

II stated: The **D.O.M.** inforces the cost of the meals,  my department can

not raise the amount, There is no justi.fication for this, See Ex (E-1)  On

or about November 11, 2005 plaintiff responded to the defendants response:

stating " **(RLUIPA)** 2000 cc 1 (a) (1) (2) 2000 cc-5 (7)(a) **Sec, 3**  applies

when the substantial burden on religious exercise is imposed in a program

or activity that receives federal financial assistances in this instances

the policy of **¢ 85** cents is a substantial burden on Muslims religious

**banquets."** See Ex(E-2)On or about Dec 14, 2005, defendants **P. Barker Chief**

**Deputy Warden** and **A.P. Kane Warden (Acting)** **DENIED**  this appeal at the

second level response See Ex ( E-3) On or about  Jan 5, 06 Plaintiff responded

to defendants Second level response Stating: " C.D.C. Officials continue  to

1    overlooked anu U.S. **Supreme Court** and/or **Ninth Circuit decisions e.g.** Cutter

2    **v. Wilkinson no 03-9877 2000 cc :5 (7)(A)"** See Ex (E-4) ON or about March

3    28, 2006 defendant **N. GRANNIS,** Chief Inmate Appeals Branch DENIED this in-

4    mate appeal See Ex. (E-5) On or about Feb 21, 2006 named plaintiff MITCHELL

5    submitted an inmate appeal **#** 06-00533 challenging a policy that placed

6    limits on **Religious Artifacts** that plaintiff's religious freedoms were being

7    **impermissibly burduned** because CTF-Soledad Officials had no **compelling reasons**

8    logically connected to a penological interest to force him to order and/or

9    purchase From one vendor See Ex (F) On or about April 21, 2006 defendants

10    B **HEDRICK and V. RASO** PARTIALLY GRANTED this inmate appeal. See Ex (F-1)

11    On or about April 26, 2006 plaintiff responded to defendants First Level

12    Responses Stating: "This answer is far-fetching by Ass. Warden Religious

13    Program B. Hedrick for additional vendors, fragrances and modify present

14    policy for order/purchase religious artifacts from every six-months to every

15    three months (quarterly) Four times a year instead of two-a-year). Secondly

16    6 cubie feet of property per preson, fire safety regulations requirement;

17    prayer oils being flammable; causing allergic reactions and respiratory pro-

18    blems as a legitimate penological interest is outlandished, there are no

19    recorded incidences in this matter." I am disatisfied with this answer.

20    See Ex (F-2) On or about April 27, 2006 Defendants B. Barker and A.P.

21    Kane partially granted this inmate appeal See Ex (F-3) On or about May 4,

22    2006 plaintiff responded to defendants Second Level response Stating: " P

23    Barker Chief Deputy Warden and A.P. Kane Warden (A) answer does not meet any

24    **any legitimate penological justification,** and burden the practice of app-

25    ellant's religion, in spite of the First Level Response, In addition, to

26    the far-fetching First Level Response. The Equal Protaction Clause of the

27    U.S. is violated because all other CDC State Prisons have multiple vendors

28    no limits on fragrances and € allowed to order/purchase prayer oils 4 or 8

ounces of per quarter every three months) See Ex (F-4) on or about July 25,

Defendant GRANNIS, Chief Inmate Appeals Branch DENIED this appeal and

ordered: no changes or modifications are required by the institution. This

decision exhausts the administrative remedy available to the appellent with

-in CDCR See Ex (F-5) On or about Feb 7, 2006 named plaintiff MITCHELL

submitted an inmate appeal CTF-06-00428 pursuant DEPARTMENTAL OPERATIONS

MANUAL (D.O.M.) 53050. 5. Religous program Activities/Religious Education

and U.S.C.A. Const, Amendment 28 U.S.C.A. 2254 Religious land use and

Institutionalized Persons Act (RLUIPA) 42 U.S.C. 2000 cc and under 42 U.S.C.

1983 for alleged violations of his Frist Amendment Right to Equal protection

of the law. Plaintiff contend that he and other situated Muslim inmates were

not affored an opportunity to learn and/or increase their islamic education

because the present Muslim Chaplian is not qualified to teach the basic

five daily prayers in the Arabic langauge which is a requirement for all

practicing Muslims to learn the daily prayers in Arabic language. See Ex

(G) Ex (G-1) proofs of importance of knowing the basic understanding of

the Arabic language. On or about April 21, 2006 defendants B. Hedrick

Correctional Business Manager II and V. RASO Associate Warden Busness

Services (A) DENIED this inmate appeal. See Ex (G-2) On or about April

26, 2006 plaintiff responded to defendants First level Respones and stated:

"It's widely known throughout the Islamic world that the Arabic (Qur'anic

language) is a central tenent of appellant's faith Al islam. After, dis-

cussing this with the muslim Chaplain. he is, also in agreement that --

learning the Al-Ajerummiyya and the prerequisite sciences Ex(a) (part of

this appeal) is to be learned by all Muslims, including his self and agrees

with hiring another full-time or part-time Chaplain too teach the essentials

to Arabiyya for Muslims Islamic education, (for clearer understanding please

get a memo in this regard from the Muslim Chaplain). See Ex (G-3)

26

33. On or about May 1, 2006 defendants P. Barker Chief Deputy Warden and A.P. Kane Warden (A) DENIED   this appeal. see Ex.  (G-4)  On or about May 7, 2006 plaintiff responded to defendants Second level response and stated: " Imam Waqia was consulted [it should be noted for further litigation purposes the Imam Waqia is not a state employee) and he received his field training as an Imam from the internallly respected leader W.D. Mohammad and was a participant in Imam Mohammad's first Arabic class or classes.  Secondly, he stated: " for the beginner, the Arabic is replaced with transliteration in order for the new Muslim to learn how to properly pronounce the Arabic words needed to perform the prayer (i.e. bis-millahir -raham-nir-rahim,  which  is transliteration of Arabic). ' See Ex.(G5-6) also see Aljerumiyya Concise Treatise on Arabic Grammer).  it should noted this is what Islamic students learn in second or thrid grades in Arabic speaking Counties.  on or about Augest 4, 2006 Defendants N. GRANNIS, Chief Inmate Appeals Branch Coordinator ordered: " No changes  of   mod- ications are required by the institution, This decision exhausted the administrative remedies available to the appellant within CDCR. See Ex (G-7)

34. On or about January 9, 2007 named plaintiff submitted inmate appeal number CTF -S-07-00161 relative to the subject of the provision of a Kosher diet a religious meal consistent with plaintiff's dietary laws scantioned by The Holy Qur'an  which states " Muslims can eat the foods of the People of the Book (Jewish) attached to this appeal was copy of the relevant application required to participate in the kosher program as well as a inmate request for interview form signed by the Muslim Chaplain Antar Jannah confirming the fact that I'd eat the people of book's foods. See(Exs. H-1, H-2,)   On or about Feburary 5, 2007 the first level of review was DENIED by defendants E.J.  Klein and B. Hedrick  stating: "you are not a Jewish inmate and are therefore

1   not entitled to theJewish Kosher Diet, C.C.R. Title 15 Section 3054.  2

2   (a) See Ex (H-3)  Plaintiff contend, however,that notwithstanding the

3   the partial granted of this  appeal.  Plaintiff responded to the F level

4   response"that this answer is terribly flawed ant I am dissatisfied."See

5   Ex. (H-4)  On or about Feburary 27, 07 defendants W.J. Hill Associate

6   Warden Business Services and B. Curry Warden Acting PARTIALLY GRANTED

7   the  this appeal. See Ex (H-5)

8   Plaintiff contend, however, that notwithstnading the PARTIALLY GRANTED

9   this appeal the defendants continue to denied plaintiff regular access

10   to religious meals consistent with is religious dietary laws and/or

11   similar to them.   And, to the fact that defendants cited two out of

12   circuit court cases where not the law of the land and defendants presented

13   no evidence in their response to this appeal that there is  any extra

14   cost de minimis cost by providing the plaintiff with these meals all

15   ready available. See Ex (H-6)

16   35. On or about 5/1 on the Director Level Decision and defendant Nan

17   Grannis, upheld this appeal at the third level review, as  the  appeal

18   had been partially granted at the pervious levels.   Plainitff contends

19   defendant N. GRANNIS  contine to deny plaintiff religious meals consistent

20   as well as regular access to religious meals.  See Ex (H-7)

21   //////

22   ////

23   ///

24   //

25   //

26   //

27   //                              28

28

FIRST CLAIM FOR RELIEF

( 42 U.S.C. 1983 RLUPIA 2000 cc-1 (a)(1)(2) Denial Of Plaintiff's Rights Under the First Amendment To Freedom From Substantial Governmental Burdens Upon The Free Exercise Of Plaintiff's Religion)

36. Plaintiff reallege and incorporate by reference each allegation of paragraphs 1 thru 35, inclusive, as if alleged herein.

37. Defendants, by and through their conduct as alleged herein, have denied plaintiff his federal rights under the First Amendment to the United states Constitution by imposing a substantial governmental burden upon the free exercise of a serious religious belief.

38. Plaintiff is informed and believe, and thereon allege, the defendants knowingly, willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's religious practices by denying him the opportunity for group worship, by forcing him to choose between worktime credits and attending Jumu'ah services; by refusing to allow him to use his lunch hour or earned time off to attend Jumu'sh services; and by prohibiting him from worshipping at the proper times and in adequate locations.

39. Plaintiff is informed and believe, and thereon allege, that defendants knowingly, willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's religious practices by denying him adequate, or a qualified Muslim Chaplain of Imam to teach a central tenet of his religion basic Arabic.

40. Plaintiff is informed and believe, and thereon allege, that defendants knowingly, willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's religious practices by preventing him from obtaining and utilizing religious artifacts mandated by his faith, such as, but not limited to, religious prayer oil, religious headgear, and prayer rugs.

1        41. Plaintiff is informed and believe, and thereon allege, that defendants

2  knowingly, willingly, and maliciously, or with reckless or callous disregard,

3  substantially burdened plaintiff's religious practices by limiting other

4  situated Muslim inmates and his self to purchased from one vendor, four

5  fragrances/quarterly every six-months.

6        42. Plaintiff is informed and believe, and thereon allege, that defendants

7  knowingly, willfully, and maliciously, or with reckless or callous disregard,

8  substantially burdened plaintiff's religious practices by failing to accommodate

9  his religious dietary needs by providing him Halal meals.

10       43. Plaintiff is informed and believe, and thereon allege, that defendants

11  knowingly, willfully, and maliciously, or with reckless or callous disregard,

12  substantially burdened plaintiff's religious practices by failing to accommodate

13  his religious dietary need by providing him Kosher meals consistent with Halal

14  meals.

15       44. Plaintiff is informed and believe, and thereon allege, that defendants

16  knowingly, willfully, and maliciously, or with reckless or callous disregard,

17  substantially burdened plaintiff's religious practices by forcing, or

18  threatening to force, him to shave his beard to comply with grooming standards

19  even though it violates a central tenant of his religion.

20       45. Plaintiff is informed and believe, and thereon allege, that defendants

21  knowingly, willfully, and maliciously, or with reckless or callous disregard,

22  substantially burdened plaintiff religious practices by placing ¢ 85. cent

23  per inmate limit for plaintiff's religious banquet meals.

24       46. Plaintiff is informed and believe, and thereon allege, that defendants

25  knowingly, willfully, and maliciously, or with reckless or callous disregard,

26  substantially burdened plaintiff's religious practices by failing to accommodate

27  his religious belief by not providing other situated Muslim inmates and his

28  self a large prayer rug for Jummah prayers.

47. As a proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff has suffered, and continue to suffer, personal humiliation, severe emotional and psychological distress.

SECOND CLAIM FOR RELIEF

(42 U.S.C. 1983; RLUIPA 2000 cc-(2) (f) Violation Of First Amendment Prohibition Of Governmental Acts And Undertakings Respecting The Establishment Of Religion)

48. Plaintiff reallege and incorporate by reference each allegation of Paragrahpa 1 thru 35, inclusive, as if alleged herein.

49. defendants, by and through their conduct as alleged herein, have violated the prohibition on governmental acts or undertakings respecting an establishment of religion under the First Amendment to the United States Constitution by favoring particular religious denominations over plaintiff's, as well as by disfavoring plaintiff's religion.

50. Plaintiff is informed and believe, and thereon allege, that defendants' actions had the purpose of forwarding particular religions and suppressing plaintiff's religion; had the effect of "advancing" and "endorsing" particular religions and inhibiting plaintiff's religion; and caused excessive governmental entanglement with religion.

51. Plaintiff is informed and believe, and thereon allege, that defendants knowingly, willfully, and maliciously, or with reckless or callous disregard, violated the First Amendment's prohibition on governmental actions or undertakings respecting an establishment or religion b denying access to articles central to plaintiff's sincere religious beliefs while allowing Jewish inmates of their faith Kosher meals and constructively denying or interfering with plaintiff's opportunity to participant in the Kosher Diet Program or provided him Halal meals. And, denying plaintiff a large prayer rug while providing Christian pews for their religious services.

31

1    52. As proximate result of defendants' ongoing wrongful conduct,
2    as herein alleged, Plaintiff suffered, and will continually suffer,
3    personal humiliation, severe emotional and psychological distress.

4                            **THIRD CLAIM FOR RELIEF**

5    ( 42 U.S.C. 1983; RLUPIA 114 Statue 304 2000 cc-1 (a) (1)-(2) and 2000
6    cc-1 (b) (1)-(2); Denial of Plaintiff's Right under the Free Exercise
7    Clause First and Fourteenth Amendment to The Equal Protection of the
8    Laws).

9    53. Plaintiff reallege and incorporate by reference each allegation
10   of paragraphs 1 thru 35, inclusive, as alleged herein.

11   54. Defendants by and through their conduct as alleged herein
12   knowingly; willfully, and maliciously, or with reckless or callous
13   disregard, denied Plaintiff' federal rights to equal protection of
14   the laws under the First and Fourteenth Amendment to the United States
15   Constitution. Defendants have done so by refusing Plaintiff's religious
16   ritual that central or indispensable to his religious tenets which
17   are mandated by his faith.

18   55. Plaintiff is informed and believe, and thereon allege, the
19   defendants knowingly; willfully, and maliciously, or with reckless
20   or callous disregard, substantially burdened Plaintiff's religious
21   practices by denying him religious artifacts while providing other
22   similarly situated inmates and other religions their religious
23   sacraments.

24   ////
25   //
26   //
27   //                                              32
28

56. Plaintiff is informed and believe, and there on allege, the defendants knowingly; willfully, and maliciously, or with reckless of callous disregard, substantially burdened Plaintiff's religious practices by not accommodating him a diet consistent with his religious dietary laws mandated by [his] faith, but provided other similarly situated inmates with a diet consistent with their faith.

57. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously or with reckless or callous disregard, substantially burdened Plaintiff's sincerely held religious beliefs by prohibiting him to attend Jummuah Prayer Services on Friday via earn time off ("ETO") without being threaten with disciplinary actions against him (Rules violations 115) while permitting other similarly situated inmates attendance without threat of disciplinary actions.

58. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's sincerely held religious belief by threatening to issue him--a progressive disciplinary actions against--for wearing his beard for religious reasons. While permitting other similarly situated inmates the opportunity to wear theirs for religious reasons without threat of progressive disciplinary actions.

59. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's sincerely held religious belief by failing to accommodate him a Kosher diet which is consistent with his religious dietary laws. While defendants provide Jewish inmates this diet.

60. As a proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff has and will continually suffer personal humiliation, severe emotional and psychological distress.

### FOURTH CLAIM FOR RELIEF

(Denial of Plaintiff's Right under the Free Exercise Clause First and Fourteenth Amendment to The Equal Protection of the Laws).

61. Plaintiff realleges and incorporate by reference each allegation of paragraphs 1 thru 35, inclusive, as alleged herein.

62. Defendants by and through their conduct as alleged herein knowingly; willfully, and maliciously, or with reckless or callous disregard, denied Plaintiff' federal rights to equal protection of the laws under the First and Fourteenth Amendment to the United States Constitution. Defendants have done so by refusing Plaintiff's religious ritual that central or indispensable to his religious tenets which are mandated by his faith.

63. Plaintiff is informed and believe, and thereon allege, the defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's religious practices by denying him religious artifacts while providing other similarly situated inmates and other religions their religious sacraments.

64. Plaintiff is informed and believe, and there on allege, the defendants knowingly; willfully, and maliciously, or with reckless of callous disregard, substantially burdened Plaintiff's religious practices by not accommodating him a diet consistent with his religious dietary laws mandated by [his] faith, but provided other similarly situated inmates with a diet consistent with their faith.

65. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously or with reckless or callous disregard, substantially burdened Plaintiff's sincerely held religious beliefs by prohibiting him to attend Jummuah Prayer Services on Friday via earn time off ("ETO") without being threaten with disciplinary actions against him (Rules violations 115) while permitting other similarly situated inmates attendance without threat of disciplinary actions.

66. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's sincerely held religious belief by threatening to issue him--a progressive disciplinary actions against--for wearing his beard for religious reasons. While permitting other similarly situated inmates the opportunity to wear theirs for religious reasons without threat of progressive disciplinary actions.

67. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's sincerely held religious belief by failing to accommodate him a Kosher diet which is consistent with his religious dietary laws. While defendants provide Jewish inmates this diet.

68. As a proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff has and will continually suffer personal humiliation, severe emotional and psychological distress.

////

///

//

34 (A)

## FIFTH CLAIM FOR RELIEF

(**Violation of First and Fourteenth Amendments Prohibition of Governmental Acts and Undertakings Respecting the Establishment of Religion**)

69. Plaintiff reallege and incorporate by reference each allegation of paragraphs 1 thru 35, inclusive, as alleged herein.

70. Defendants by and through their conduct as alleged herein have violated the prohibition on governmental acts or undertakings respecting an establishment of religion under the First and Fourteenth Amendment to the United States constitution by favoring particular religious denominations over Plaintiff's as well as disfavoring his fundamental religious tenents.

71. Plaintiff is informed and believe, and thereon allege, that defendants' actions had the purpose of forwarding particular religions and suppressing Plaintiff's religion, and this had the effect of **"advancing"**, **"endorsing"** and/or **"affiliating"** themselves with other religious doctrine over his.

72. Plaintiff is informed and believe, and there on allege, the defendants knowingly; willfully, and maliciously, or with reckless of callous disregard, violated the First and Fourteenth Amendments prohibition on governmental actions or undertakings respecting an establishment or religion by providing Christian inmates pews for their services, Native America Indians fire wood and other religious artifacts. While denying Plaintiff a large Prayer Mat for Jummuah [Friday Prayer] Services.

73. As a proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff has and will continually suffer personal humiliation, severe emotional and psychological distress.

## SIXTH CLAIM FOR RELIEF

**(Violation of Plaintiff's Rights First and Fourteenth Amendments To Freedom From Substantial Governmental Burdens Upon the Free Exercise of Religion)**

74. Plaintiff reallege and incorporate by reference each allegation of paragraphs 1 thru 35, inclusive, as alleged herein.

75. Defendants by and through their conduct as alleged herein, denied his federal rights under the First Amendment to the United States Constitution by imposing a substantial governmental burden upon the free exercise of a religious ritual central and/or indispensable to his sincerely held belief.

76. Plaintiff is informed and believe, and there on allege, the defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's religious practices by denying him the opportunity for group worship, by forcing him to choose between worktime credits or attending Jummu'ah Services; by refusing to permit him to use his lunch hour or earned time off ("ETO"), to attend Friday Services; and by prohibiting him from worshipping at the proper times as well as in adequate locations.

77. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's religious practices by denying him an adequate or a qualified Muslim Chaplain or Imam to teach a central tenet of his religion basic Arabic.

/////

////

/////

///

36

78. Plaintiff is informed and believe, and there on allege, the defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened plaintiff's religious practices by prohibiting him from utilizing religious artifacts mandated by his faith, as such but not limited to, religious prayer or ceremonial oils, kufi caps/headgear, and prayer rugs.

79. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's religious practices by limiting him to purchased religious artifacts from one religious vender, four fragrances and four ounce limits/quarterly every six months.

80. Plaintiff is informed and believe, and thereon, allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened Plaintiff's religious practices by failing to accommodate his religious dietary needs by not providing him Halal foods and/or a Kosher diet.

81. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened his religious practices by forcing, or threatening to force, him to shave his beard to comply with grooming standards even thought it violated a central tenant of his religion.

82. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened his religious practices by placing a ¢ 85. cent per inmate limit for plaintiff's religious banquet meals.

37

83. Plaintiff is informed and believe, and thereon allege, that defendants knowingly; willfully, and maliciously, or with reckless or callous disregard, substantially burdened his religious practices by failing to accommodate his religious belief by not providing a large prayer rug interfaith chapel for Jummauah and congregational prayers.

84. As a proximate result of defendants' ongoing wrongful conduct, as herein alleged, plaintiff has suffered, and will continually suffer, personal humiliation, severe emotional and psychological distress.

### INJUNCTIVE RELIEF

85. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiff has suffered and will suffer irreparable injury as a result of the unlawful acts, omissions, policies and practices and of the defendants as alleged herein, unless plaintiff is GRANTED the relief requested.

### PRAYER FOR RELIEF

86. **WHEREFORE**, on behalf of Plaintiff, request that this court do the following for Plaintiff's relief:

A. Adjudge and declare that the acts, omissions, policies and practices of defendants, and/or their agents, officials and employees, violate Plaintiff's rights under the **First and the Fourteenth Amendment.** Which GRANTS Constitutional protection to Plaintiff.

2. adjudge and declare that the acts, omissions, policies and practices of defendants, and their agents, officials and employees, violate Plaintiff's rights under **42 U.S.C. 2000 cc 2 (f)** and the California Constitution. Which GRANTS Constitutional protection to Plaintiff.

///

///                              38

3. Order defendants, their agents, officials, employees, and all persons acting in concert with them **UNDER COLOR OF STATE LAW**, to afford Plaintiff the rights to which he is entitled under **RLUPIA U.S.C. 2000 cc-1 (a), 42 U.S.C. 3 (7), (a), U.S. Constitution Art, I and VIII 2000 cc-1 (b) (1) the United States and California Constitution**;

B. Issue a **DECLARATORY** judgment stating that: The violations of Plaintiff's rights under **RLUPIA First and Fourteenth Amendments** which grants protection that caused Plaintiff to suffer severe emotional, personal humiliation, and psychological distress, by defendants'.

C. Award compensatory damages in the following amounts $110. 00 dollars for each day of constitutional violations: $300. 000. dollars jointly and severally against defendants **J.R. SOLIS, BROWN, KANE, CURRY, LOCKWOOD, BARKER, MANDERVILLE, COHEN, KLEIN, RASO, HEDRICK, JANNAH, A. AMAYA, HODGES, CARVELLO, MADISON, SUMMERSET, HILL and GRANNIS** for wrongfully denying; depriving; impeding and entangling Plaintiff [his] constitutional rights and for the personal humiliation, emotional and psychological distress injuries sustained as result of their wrongful conduct.

1. $ 10. 000. 00 dollars jointly and severally against all defendants.

2. $ 50. 000. 00 dollars severally against defendant **ANTAR JANNAH**, for mis-informing all other defendants in relations to Plaintiff's religious rituals and indispensable religious rights mandated by his faith Al Islam.

///
///
//
//

39

D. **Award Punitive Damages In The Following Amounts:**

A. $ 110. 00. dollars a day for each day for violations of Plaintiff rights. For each defendant in their official and individual capacities.

F. **Retain Jurisdiction:** in this case until the unconstitutional conditions and practices as alleged herein no longer exist and the **Court** is satisfied that there will no longer occur:

1. Grant Plaintiff compensatory damages according to proof.

2. Grant Plaintiff punitive damages according to proof.

3. Grant Plaintiff appointed of Counsel due to complexity to the case.

4. Grant such other and further relief as this **Court** may deem just proper and equitable.

/////

In Pro Per

*Gregory Mitchell*

Gregory Mitchell

///////

////

///

//

//

//

//

//

//

40

EXHIBIT   "A"

STATE OF CALIFORNIA                                                                              DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
DC 602 (12/87)



Location: Institution/Parole Region        Log No.              Category
CTF-C
1. _____                    1. **03-01885**
2. _____                    2. **JUL 30 2003**                 **5**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Gregory Mitchell | D-44205 | West Gate Porter A/M | G-243-Up |

A. Describe Problem: Appellant's faith is Al Islam and he practices his faith
ssiduously.    Appellant comes forward with the following facts, and deems
his appeal as the only remedial procedure available, and the appropriate
rocess for this greivance.  Appellant, along with other practicing Muslims
ubmitted order forms to order Islamic (attire) prayer oils.

pproxiamately six-months ago and until this day haven't had an opportunity to
eceive these authorizes items (prayer oils) approved by Warden Jim Hamlet
ee(attach exhibit A)

If you need more space, attach one additional sheet.

B. Action Requested: THAT THE APPROVED ORDERS BE PROCESSED IMMEDIATELY BASED ON
HE APPROVAL BY JIM HAMLET SIGNED MAY 2003

Inmate/Parolee Signature: *Gregory Mitchell*                Date Submitted: 7/8/03

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

*BYPASS*

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

*BYPASS*

Signature: _____              Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

RECEIVED
JUL 1 4 2003
CTF APPEALS

CDC Appeal Number:

**03-01885**

# EXHIBIT "B"

DEPARTMENT OF CORRECTIONS
**Correctional Training Facility**
**Soledad, California**

### SUPPLEMENTAL PAGE

RE:    **CTF APPEAL LOG No. CTF-C-03-01885**
       **Second Level Reviewer's Response**

   **INMATE NAME**    Mitchell        **CDC# D-44205**      **HOUSING GW-243U**


**APPEAL DECISION:**

   Denied

**APPEAL ISSUE:**    Property

   In your appeal you state the following:

   (1) You would like to purchase "Prayer Oils", in accordance with Operation Procedure
       #42.

**APPEAL RESPONSE:**

   A thorough review of your appeal's package, all of your attachments, Central File and a
   personal interview has been completed and reveals the following:

   On July 24, 2003, Lieutenant Caravello interviewed you to discuss your appeal issue. At
   that time, you were given the opportunity to voice your dispute. You have not provided
   additional information to your complaint.

   1. On June 30, 2003, the Warden's office distributed a memorandum suspending the
      purchase of prayer oils pending investigation into the unauthorized use and
      possession of oils by inmates other than those who purchased them.


   Based upon the aforementioned, your appeal, Log #CTF-C-03-01885 at the Second Level of
   Review is **Denied**.


   W. Hill, Associate Warden                                    7·29·03
   _____                         _____
                                                               Date

   _____                         7|29|03
   Reviewed By: J. Solis, Warden (A)                           _____
                                                               Date


cc:    Appeals Office File
       Inmate's Central File

# EXHIBIT  "C"

# Memorandum

Date:        June 30, 2003

To:          Chief Deputy Wardens
             Associate Wardens
             Correctional Captains
             Facility Captains

Subject:     Suspension of Approval to Purchase Prayer Oils

Approval to purchase prayer oils via Special Canteen is suspended until further notice. This action is being taken to allow investigation into the unauthorized use and possession of oils by inmates other than those who purchased them.

Any pending Special Canteen orders are to be returned to the inmate who submitted the order. No additional orders are to be accepted.

Please ensure that this information is shared with staff and inmates at your respective facilities.

J. W. Hamlet
Warden
Correctional Training Facility, Soledad

Cc:    Community Resources Manager
       Receiving & Release

# EXHIBIT "D"

of California                                                                                                    Department of Corrections

# Memorandum

**Date:**   October 10, 2000

**To:**   Wardens
         Community Resources Managers

CC:   **CDW'S**
      **AW BUS SERS**
      **CRM**

**Subject:**   RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000 (S. 2869)

This in an informational memorandum pertaining to the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), signed by President Clinton on September 22, 2000. A copy of this new federal law, which takes effect immediately, is attached for your information. We can expect inmate appeals, defenses to discipline, and lawsuits to begin reciting alleged violations by California Department of Corrections (CDC) of the inmates' right to free exercise of religion.

The RLUIPA is similar to an earlier federal law, the Religious Freedom Restoration Act of 1993 (RFRA), which required the Department to make significant accommodations in its facilitation of inmate religious programs. In response to RFRA, the Department issued Administrative Bulletin (AB) Number 96/24, dated October 31, 1996, to provide guidance to staff in administering inmate religious programs. In 1997, the United States Supreme Court found RFRA to be unconstitutional. Soon after, AB 96/24 was rescinded.

Like RFRA, RLUIPA essentially changes the standard by which courts will assess inmate claims that CDC has in some manner impermissibly restricted their right to free exercise of religion. In recent years, the courts have upheld restrictions on the "free" exercise of religion if the restrictions further a legitimate penological interest. Under RLUIPA, any such restriction will be invalidated unless it (1) furthers a compelling government interest, and (2) is the least restrictive means of furthering that compelling government interest.

Although the Department's religious programs already meet many of RLUIPA's requirements, increased demands may be placed on custody, support services, and budgets to facilitate inmate participation in religious programs. Until you receive further notice, please follow existing departmental religious policy (i.e., Title 15, Sections 3210 – 3216, DOM Chapter 53050, and AB 97/11). Particular attention should be given to the provision in AB 97/11 concerning inmate requests for religious accommodation: "Staff shall not merely state that the proposed religious activity poses a threat to prison operation, e.g., safety and security, but define how the activity is a threat to prison safety and security." It will be very important for the Department to articulate in detail the safety and security concerns underlying any restriction or limitation of an inmate's religious exercise. These legitimate concerns will enable the Department to better defend against the inevitable claims of religious interference we expect inmates to raise under RLUIPA.



Wardens
**Community Resources Managers**
**Page 2**

Finally, in order to update the Department's 1991 Inmate Faith Preference Study, a new study is being proposed. This new study will assist the Department in assessing inmate religious needs, allocating resources, and responding to litigation.

Please direct any questions you may have to Barry J. Smith, Community Resources Manager, Central Region at (916) 324-1441.

STEVEN CAMBRA, JR.
Chief Deputy Director
Field Operations

Attachment



# EXHIBIT "E"

H. Level Response.

This answer is unsatisfactory, because of the following facts. "The memorandum suspending the purchase of prayer oils pending investigation into the unauthorized use and possession of oils by inmate other than those who purchased them".

Is indirect violation of The Religious Land Use And Institutionalized Persons Act 2000 ( S. 2869) which intended for inmates to freely exercise their religious rights without restrictions by government. ( RLUIPA) states:" Any restrictions will be invalidated unless it (1) furthers a compelling government interest, and (2) is the least restrictive means of furthering that compelling government interest.

On the inmate appeal supplement page at <u>Appeal Response:</u> Ass. W. Hill and J. Solis (A) Warden stated: " On July 24,03 Lt. Caravello interviewed you to discuss your appeal issue at that time, you were given the opportunity to voice your dispute. You have not provided additional information to your complaint." First and foremost, is the fact, that I had no prior knowledge of the Memo until I was interviewed by Lt. Caravello ,so what additional information could I have provided other than, the following facts.

Fact (1) is I and other Muslim inmates haven't been giving the opportunity to purchase religious ( attire) prayer oils accordingly, "to D.O.M. 42. Appellant along with other Muslim inmates placed their order forms six months before the alleged investigation.

Fact (2) appellant and other Muslim inmates are being punish for an non-religious issue. Which, the fact still remains the orders were held-up for six months ,and were sent through the appropriate staff to be processed.

Fact (3) The memorandum dosen't stipulate how long the investigation will be, nor does it state how it's a legitimate penological interest, or compelling government interest.

Finally, ( RLUIPA) in conjunction with Title 15 sections 3210-3216, DOM Chapter- 53050 and AB 97/11 In fact, the above authorites, instructs C.D.C. Officials not to merely state that " The religious activity pose a threat to prison operations for an example, safety and security, but, define how the activity is a threat to security. It will be very important for the department to articulate in detail the safety and security concerns underlying any restrictions or limitation of an inmates religious exercise." See Memo attached as exhibit B)

Appellant has shown a prima facie case in reference to the violation of his first amendment right's has being encroached on by this restriction; moreover, Title 15 3210 which states: " Institution heads shall make every reasonable effort to provide for religious and spiritual welfare of all interested inmates. Therefore, this decision to suspend the purchase of ordering the prayer oils accordingly, to DOM 42 is not a substantial burden on the institution, especially in this case were Muslims have yet being afforded a legitimate opportunity to exercise the institutional heads policy DOM #42.

# EXHIBIT "F"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
. P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  OCT 0 9 2003

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0301372          Local Log No.: CTF 03-01885

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that he is not allowed to purchase a special canteen item, prayer oil, which he feels is necessary. The appellant contends that the institution has improperly determined the item to be unallowable. He maintains that the item should be acceptable and is not a threat to institutional safety and security. He is requesting that the institution allow him to purchase the property item.

II    SECOND LEVEL'S ARGUMENT: The reviewer found that the requested prayer oil does not meet the acceptable criteria as a property item for inmates at the institution.

III    DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.    FINDINGS: The Second Level response is appropriate and the decision is based upon a reasonable penological interest. The response by the Second Level of Review is comprehensive. It represents CDC's position. An investigation was conducted into the appellant's allegations. The appellant has not presented a compelling argument to warrant modification of the decision reached by the institution. The regulation set forth in the CCRs and departmental policy vest with the warden the authority and responsibility to make decisions regarding the property inmates will be allowed to possess in a particular institution. An investigation was conducted and it was determined that the prayer oil is not an acceptable item for inmates to possess at the institution. The appellant has not provided evidence to substantiate the allegations of staff misconduct by not allowing him the requested prayer oil.

B.    BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3092, 3190, 3191, 3193, 3270

C.    ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC. If dissatisfied, the appellant may forward this issue to the State Board of Control, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035 for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
Appeals Coordinator, CTF

# EXHIBIT "G"

ORIGINAL
OCT 21 2003

.E OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**                    Location: Institution/Parole Region      Log No.            Category
**APPEAL FORM**                       1. ___CTF-C___                                              q
CDC 602 (12/87)                       2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Gregory Mitchell | D-44205 | West Gate Porter A.M. | G-234-Up |

A. Describe Problem: Appellant is active participant in his Islamic faith and is involved in all schedule Islamic activites held in the interfaith chapel, here at C.T.F. Soledad. he is a practicing Muslim inmate whom follows the dictates of The Holy Qu'ran and the ( Sunnah) authenticated traditions of Prophet Mohammad (A.S.) Appellant is also a participant in the Special Religious Diet (SRD) program at C T.F. Soledad and has been every since its inception. He now comes forward with the complaint and claim pertaining to other practicing Muslims and himself who are being deprived to freely exercise their religious dietary laws -- according to The Holy Qu'ran and the (Sunnah) authenticated slaughter practices of Al

If you need more space, attach one additional sheet. ( See attached additional pg.)

B. Action Requested: That the present Special Religious Diet be improve in an accordance to appellant's Islamic religious scruples and the following food items be implemented into [DOM #67 ] Trail mix; fortified cereals; grain breads; onions; tomatoes; fruits; and fish items And Food Manager seek out an alternative to order halal foods earmarked, from budget (See attached additional pg.)

Inmate/Parolee Signature: _Gregory Mitchell_          Date Submitted: _7/20/03_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed                    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

RECEIVED
JUL 2 4 2003

| 03-01986 |

Pg. 2 of 602.

Islamic by C.T.F. Soledad for not providing  wholesome foods consistent with appellant's religious scruples.   In addition, these deleterious actions and neglect is a in deliberate difference that  could be corrected easily by C.T.F. Soledad Food Manager.

It is well settled by federal laws throughout the land that prison officials must provide a prisoner or prisoners with a diet that is consistent with the prisoners religious scruples.   In fact, federal courts recognize all prisoners who have religious dietary laws must be accommendated with a diet equal to their religious belief.

Most importantly, is the fact that appellant has on numerous occassions sought out --- imformal remedies with his religious leader assistance and food manager. ( See exhibit a,b,c, and d. attached to this appeal).

Appellant has been receiving peanut butter and chesse as an adequate supplement for . -- approximately 4½ years.  His fundamental right to freely practice his  religion Al Islam has undoubtedly ; been impinged on by regulations  that are unreasonable  and  arent a  valid legitmate penological interest.

Action Requested additional pg.

allotted from meats not consumed by SRD  participants see proposal attached to exhibits.

Gregory  Mitchell

*Gregory Mitchell*

July 21 03

ORIGINAL

# MEMORANDUM

**DATE:**    **March 28, 2003**

**TO:**    **INMATE MUSLIM COMMUNITY**
**CTF - SOLEDAD**

**SUBJECT:**    **SPECIAL RELIGIOUS DIETS**

Pursuant Operations Procedure #67, The Correctional Food Manager II, in consultation with the institutional chaplains, has developed two (2) SRD diets: Modified *or Strict*.

Inmates, whose religious beliefs do not permit them to eat meat (ex: Muslim Community inmates), will be issued a diet tray consisting of the regular meal issue. However, all items from the regular meal that contain meat will be substituted with either *second helping "issue" of hot cereal* or a starch food item from the breakfast meal, and either a starch, or a vegetable food item from the evening meal.

This is in addition to and any all other authorized food substitutions.

Please feel free to contact the Assistant Correctional Food Managers at extension #4802 or #5864 for any further assistance needed in this matter.

A. O. Amaya
Correctional Food Manager II
CTF – Soledad

CC: File

# EXHIBIT "I"

A letter of transmittal

To: A.O. Amaya
Correctional Food Manager II
CTF Soledad

March 22,03

From: G.Mitchell D-44205
       G-243-Up
       CTF Soledad

Subject: Special Religious Diet

Dear sir, peace be upon you.

I'm writing you in regards to our conversation we had earlier this month pertaining to possibly adding a variety of new food items to improve the present Special Religious Diet (SRD).

Initially, legislation implemented C.C.R. Title 15 3054 too provide any inmate whose religious belief required him or her to eat in a specific fashion. For example , the Jewish faith according to the Torah, a person practicing this faith are required to eat Kosher food items in their diet. In addition , to religious faiths; dietary laws ... a Hindu is required to eschew eatting any meat by-products. Due to their belief in reincarnation. Then, of course, the Muslims are required to eat halal meats according to the dictates of The Holy Qu'ran and authentic traditions (Sunna) of prophet Mohammad (a.s.)

Secondly, the Special Religious Diet, must provide those who choose to practice their religious belief with a wholesome supplement as an adequate substitution and replacement for meat by-products. In actuality the replacements are done for nutritional reasons. The fact is, the daily caloric allowances must be in accordance with the meat -supplement.

However, the Muslim participants on the (SRD) program have received Peanut butter and chesse for approximately three years now. As a result of receiving this disproportionate supplement for this length of time. Has been the catalyst for numerous of complaints and among other things; further, litigations.

An another concern in regards to adequate supplements is last years Ramadhan's pre-dawn lunches, which were basically, a lunch that general population received and a milk. No doubt, the Ramadhan pre-dawn lunches have gradually, spiral downward in the past few years. Hopefully, with you and Imam Antar Junnah's assistance, the future Ramadhan pre-dawn lunches will improve.

In relations to O.P.# 67 I have attach your response to a prior Inmate request for interview form. That I had forwarded to you pertaining to adding new items to the (SRD). I have discussed this ongoing dilemma of O.P # 67 with my beloved spiritual leader Antar Jannah as you instructed me to. In fact, Antar Jannah and myself have work diligently hand-and-hand proposing many proposals and he has presented them to you to no avail.

Finally, we (the SRD Muslim participants) pray that the suggests of these new food items could be added to O.P # 69 as a wholesome supplement. They are as follows: Fortified wheat cereals; wheat muffins, or any type of muffin, bananas, along with peanut butter and/or chesse. Indeed, your input and idea's as far as additional items is needed too.

Respectfully, yours
Gregory Mitchell
Gregory Mitchell D-44205


c.c. Warden Jim Hamlet
c.c  Resource Manager Jerry Smith
c.c. Muslim Chaplain Antar Junnah

State of California

**MEMORANDUM**

**DATE:**     **February 10, 2003**

**TO:**     **MICTHELL, G.**   D-44205
            **G-243U**

**SUBJECT:** **INMATE REQUEST FOR INTERVIEW**

Inmate Micthell, this is in response to your "inmate request for interview." You are requesting to have an interview with me concerning the Special Religious Program.

As you may or may not know, what you are requesting is done only on an annual basis, and is the responsibility of your spiritual leader (chaplain), as per O. P. #67. Through the current policy/procedure we are continually searching for ways to improve the SRD program.

Any and all suggestions/correspondence regarding this program should be forwarded to your chaplain. I am confident that he will be more than happy to meet with you to discuss this matter.

Thank you for your interest in the program.

*A.O.Amaya*

A. O. Amaya
Correctional Food Manager II
CTF – Soledad

CC: File

ORIGINAL

# EXHIBIT "J"

**DEPARTMENT OF CORRECTIONS**
**Correctional Training Facility**
**Soledad, California**

### SUPPLEMENTAL PAGE

**RE:**    CTF APPEAL LOG No. **CTF-C-03-01986**
            Second Level Reviewer's Response
            **MITCHELL**                              **D-44205**                    **GW-234-U**

### APPEAL DECISION:

> **DENIED**

### APPEAL ISSUE:

### (CAT - 09) LIVING CONDITIONS

### APPEAL RESPONSE:

Mr. Mitchell, in your appeal you state that you and other practicing Muslims are being deprived of free exercise of your religious dietary laws by Correctional Training Facility not providing wholesome foods consistent with your religious scruples. You also state that this institution; without legitimate penological interest, has provided peanut butter and cheese as an adequate dietary supplement for approximately 4.5 years. In your appeal you request the following actions:

1) That Operational Procedure 67 (Special Religious Diet) is altered to include specific food items reflecting Islamic religious scruples (trail mix; fortified cereals; grain breads; onions; tomatoes; fruits; and fish).

2) That the institution Food Manager earmark funds saved from meat products not consumed by SRD participants to purchase halal foods for SRD participants.

On October 7, 2003, you were interviewed by Richard Ortiz, Community Resources Manager (A), to provide you with the opportunity to explain your appeal and present supporting information or documents. During the interview, you provided no additional information to support the actions requested in your appeal.

A thorough review of your appeal's package, all of your attachments, and your Central File has been completed and, reveals the following:

Pursuant to California Department of Corrections, Departmental Operations Manual (DOM), Section 54080.3, the Departmental Food Administrator (DFA) represents CDC in all food service issues and activities. The DFA develops, administers and monitors the Department's food service activities, including food service at this institution.

Department food service activities are guided by California Department of Corrections Operations Manual, Section 57080.1; 54080.13; 54080.14; which state "The California Department of Corrections shall supply inmates with a wholesome, nutritious and adequate diet." "Authorized inmate religious groups shall not be permitted more than two (2) events per year where special foods with religious significance are provided to them by the institution in place of the regularly scheduled meal. The value of such meal shall not exceed that of the regularly planned meal." "Each institution/facility shall make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require special religious diets." And "Any religious organization may contract with CDC to provide their inmate members with religious diets provided that such a contract shall not result in any additional costs to CDC."

CTF APPEAL LOG No. CTF-C-03-01986
Second Level Reviewer's Response
MITCHELL    D-44205    GW-234-U
Page 2 of 2

In addition, CCR Title 15, Section 3054 (c), and Operational Procedure 67 (Special Religious Diet), state: "Inmates with special religious dietary needs that prohibit them from consuming an item(s) from the daily scheduled meal may be accommodated by being provided another item(s) from the same day's scheduled meal that is consistent with their dietary need." And "Modified SRD diet tray will consist of the regular meal issue. However, all items from the regular meal that contain meat will be substituted with a starch or vegetable food item." Furthermore, 'Canteen SRD Food Items' states, "The institutional Chaplain will advise CTF—Canteen Manager II of SRD food items that need to be maintained in local inmate canteens. The Canteen Manager will review religious organizations contracts with the Department that will provide religious diets, these contracts shall not result in any additional costs to the Department."

Mr. Mitchell, it is the objective of the Correctional Training Facility Administration and the Food Service Department to achieve this task in compliance with all the regulations and procedures outlined in this response. You have been provided with a thorough response, and all disputes that you addressed have been spoken to.

Based on the above, your appeal is **DENIED**.

Reviewed By:  _____    _10/14/03_
                    J. L. Brown, Chief Deputy Warden        Date

Reviewed By:  _____    _10/20/03_
                    J. R. Solis, Warden (A)                 Date

# EXHIBIT  "K"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JAN 1 2 2004**

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0304890        Local Log No.: CTF 03-01986

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner J. Peters, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he is Muslim and he wants to have a special religious diet. The appellant says the vegetarian meal served at the Correctional Training Facility (CTF) does not meet the standards of the halal diet. The appellant says that it is his constitutional right as a Muslim to receive the proper food while incarcerated. The appellant wants a halal diet.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the institution complies with state law and regulations. Muslim inmates are given the vegetarian diet when they present a chrono for the special religious diet meal. The institution is not obligated to serve the appellant a specific halal diet. The appellant was informed that the meals served do not contain pork. The appellant's request was denied at the Second Level of Review.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A. **FINDINGS:** The documentation is persuasive that the decision by the institution is appropriate and in conformity with state law and departmental regulations. The institution's special diet offerings shall be recognized by the appellant as the only meatless entree the CDC serves. Inmates may utilize the vegetarian diet offered as long as they have a valid chrono that say they may. The appellant has failed to provide a persuasive argument or any evidence to warrant a favorable decision in his behalf.

B.    **BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3001, 3054, 3055, 3210
CDC Operations Manual Section: 54080.1, 54080.3, 54080.4, 54080.6

C.    **ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

*T. Surges*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
Appeals Coordinator, CTF

# EXHIBIT "L"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location:   Institution/Parole Region
CTF-C
FEB 25 2004
2.

Log No.
04 - 0 0 8 5
MAR 2 4 2004
2.

Category
9

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.   GREGORY

| NAME   _ν_  G. MITCHELL | NUMBER  D 44205 | ASSIGNMENT  WEST GATE PORTER A.M. | UNIT/ROOM NUMBER  GW 243 U |
|---|---|---|---|

A. Describe Problem: This is a group appeal.   Appellants complain that CTF Soledad officials have

denied the specific religious foods ( Halal meals) pertaining to their Islamic faith.

Appellants contend that prison officials are violating the Religious Land Use and

Institutionalized Person Act of 2000, 42 U.S.C. 2000cc-1 (a). the Free Exercise Clause

of the Fourteenth Amendment.   Appellants are seeking to exhaust administrative remedies.

Appellants religious rights are clearly being violated by CTF Soledad officials because

they continually fail to improve the present Special Religious Diet (SRD). And refuse to

incorporate a viable Halal and/or Kosher Kitchen, so inmates of their faith can wash, prepare

If you need more space, attach one additional sheet.      ( see attached sheet)

B. Action Requested That CTF SOLEDAD fully comply with the state wide order to The Department Of

Corrections reference to the lawsuit of Wayne Cooper, at Vacaville State Prison. And with

good-faith implement Halal meals, and a special Halal foods, quarterly purchase Operational

Procedure. to order Halal foods.   Lastly, add tuna and boiled-eggs daily for (SRD) bags.

Inmate/Parolee Signature: _Gregory Mitchell_                           Date Submitted: _1/10/03_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____                           Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____                           Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

JAN 0 8 2004

04 - 0 0 8 5

and inspect utensils, pots, pans, etc. being use for general population. At current CTF Soledad officials have not genuinely and/or reasonably tried to accommodate appellants with a Halal Kitchen to prepare foods consistent with their religion Al Islam. Nor has an attempt been made by CTF Soledad officials to assign Muslim inmates, for the pupose, to oversee, if meat-by-products used in utensils for the everyday meals, that would contaminate utensils used by Muslims, especially, on their daily trays.

It was narrated by Abu Tha'laba Al-Khushani; May Allah be pleased with him, I said:" O Allah's prophet! We are living in a land ruled by the people of the (Judeo- Christian) scripture. Can we take our meals in their utensil? In that land there is plenty of game and I hunt game with my bow and with my hound that is not trained and with my bow and with my trained hound. Then what is lawful for me to eat? He said, (Prophet Mohammad (a.s.)) as for what you have mentioned about the people of the scripture, (Judeo-Christian) if you can get utensils other than theirs, don not eat out of 'theirs but if you cannot get other than theirs, wash their utensils and eat out of it. If you hunt a game with your bow after mentioning Allah's name eat of it,' and if you hunt something with your untrained hound (and get it before it dies) and slaughter it eat of it." Sahih Al-Bukhari book #7, 387.

Basically, this is saying from our Beloved Prophet (a.s.) is to take precaution, and for Muslims to be vigilant, and aware of foods (Halal) and the utensils they use daily. The U.S 9th Circuit Court Of Appeals and U.S. Supreme Court has ruled on Halal and/or Kosher foods, must be provided, and kitchens. It's clear that CTF Soledad officials has not, will not, and refuse to provide the Muslim population with Halal/Kosher meals. The Department Of Corrections is ordered to make available Halal and/or Kosher meals at California State Prison Solano by January 11, 2004. It's a religious tenant for Muslims to eat Halal foods. On July 12, 2003, the 10th U.S. Circuit Court of Appeals agreed with the lower courts opinion in Makin v. Colorado Department of Corrections. " Even though they are incarcerated, prisoners retain fundamental constitution rights." the appeals court wrote. " These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." For approximately four years the Special Religious Diet has consist of cheese and/or peanut butter and a starch item from the daily menu. Therefore, "to offer another helping of mashed potatoes." instead of a balanced diet to an inmate whose religion does not permit eating pork." Is not an equivalent substitue according to Heather Nolan attorney who represented Wayne Cooper an Orthodox Jew who brought the lawsuit against Vacaville State Prison. In addition, Muslim inmates at California Medical Facility and Solano State prisons are provided: tuna, cheese, and boiled eggs in their Special Religious Diet lunches daily, and are afforded an opportunity for a special purchase to order Halal foods in a special quarterly packages up to 30 pounds. CTF Soledad is in contempt for not reasonably trying to improve the (SDR) over the pasted three-in-half years, and/or implementing an Operational Procedure for a special quarterly package for the purpose to order Halal meats.

**Additional pg. to (602) group Appeal Halal foods and kitchen**

| Name | CDC # | Signature | Housing |
|------|-------|-----------|---------|
| BURAIK | T-55784 | | Y-203^ |
| HAYES, H. | 8-17449 | Hayes H. | y.236-L |
| LROY, G. | E-93140 | | B-218 L |
| MARTIN | D-44170 | J.D. Martin | Y-215 L |
| BOOKER | K-58848 | Booker | B-335" |
| ROWLAND | C-68905 | E. Rowland | C-268. |
| Johnson | 422086 | Michael R Johnson | E-115" |
| Miles | C-81837 | Dennis Miles | C.W 304 |
| WILLIAMS | K 48678 | Derick Williams | E-108U |
| ShedRick | T 46216 | Keith A Shedrick | y-236 |
| RUNNELS | E 12389 | Keffer Runnels | D-126 |
| Broaten | B-8120 | A. Bron | G-3120 |
| Sims | C-31090 | T. S | G-35-3 |
| SANTOFA | J-91703 | | G.116 |
| JOSEPH | J89854 | ub | 8-122 |
| SMITH | D-89280 | Juriph | |
| JoLLEY | C-57727 | smith | BW-130 |
| Jones, K. | C-41038 | Kelvin E Jones | B-108 F-112 |
| Li+HE H. | D-14389 | Robert E. Little | D-317 |

# EXHIBIT "M"

Furthermore, The Food service Department is not authorized to provide a remedy concerning the "quarterly package" concern. For this reason you are being referred to the Canteen Manager II, for an appropriate response.

Therefore, based on the foregoing information, your appeal is *Partially Denied* at the First Level Review.

A. O. Amaya
Correctional Food Manager II
CTF – SOLEDAD

B. Lockwood
Correctional Business Manager II
CTF – SOLEDAD

State of California

# MEMORANDUM

Date:        February 17, 2004

To:          Mitchell, D - 44205, G – 243U

Subject:     **FIRST LEVEL APPEAL RESPONSE CTF – C – 04 - 00085**

Your appeal has been referred for First Level Review on January 15, 2004.

In your appeal you are stating "This is a group appeal. Appellants complain that CTF Soledad officials have denied the specific religious foods (Halal meals) pertaining to their Islamic faith. Appellants contend that prison officials are violating the Religion Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. 2000cc-1 (a). the Free Exercise Clause of the Fourteenth Amendment. Appellants are seeking to exhaust administrative remedies. Appellants religious rights are clearly being violated by CTF Soledad officials because they continually fail to improve the present Special Religious Diet (SRD). And refuse to incorporate a viable Halal and/or Kosher Kitchen, so inmates of their faith can wash, prepare and inspect utensils, pots, pans, etc. being use for general population. At current CTF Soledad officials have not genuinely and /or reasonably tried to accommodate appellants with Halal Kitchen to prepare foods consistent with their religion Al Islam. Nor has and attempt been made by CTF Soledad officials to assign Muslim inmates for the purpose, to oversee, if meat-by-products used in utensils for the everyday meals, that would contaminate utensils used by Muslims, especially, on their daily trays. . . . CTF Soledad is in contempt for not reasonably trying to improve the (SDR) over the passed three-in-half years, and/or implementing on Operational Procedure for a special quarterly package for the purpose to order Halal meats."

You are requesting "That CTF Soledad fully comply with the state wide order to the Department of Corrections reference to the lawsuit of Wayne Cooper, at Vacaville State Prison. And with good-faith implement Halal meals, and a special Halal foods quarterly purchase Operational Procedure to order Halal foods. Lastly, add tuna and boiled-eggs daily for (SRD) bags."

An investigation was conducted, which revealed the following:

R. Nickerson, Acting Correctional Food Manager II interviewed you, at approximately 1547 hours on January 8, 2004 and at approximately 1340 hours on January 15, 2004. Providing you the opportunity to fully explain your appeal and to provide any supporting information and/or documentation.

Pursuant, California Department of Corrections Operations Manual, Section 54080.1, which states, "The California Department of Corrections shall supply inmates with a wholesome, nutritious and adequate diet."

In addition, pursuant California Department of Corrections Operations Manual, Section 54080.3, which states, The Departmental Food Administrator represents the CDC in all food service issues and activities. The DFA develops, administers, and monitors the Department's food services program…"

Furthermore, pursuant California Department of Corrections Operations Manual, Section 54080.14, which states, "Each institution/facility shall make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require special religious diets." "Any religious organization may contract with CDC to provide their inmate members with religious diets provided that such a contract shall not result in any additional costs to CDC."

Also, pursuant CCR Title 15, sections 3054, sub-section (c), Special Religious Dietary Needs, which states: "Inmates with special religious dietary needs that prohibit them from consuming an item(s) from the daily scheduled meal may be accommodated by being provided another item(s) from that same day's scheduled meal that is consistent with their dietary need."

Furthermore, pursuant Correctional Training Facility (CTF) Operations Procedure (OP) #67, which states, "Modified SRD diet tray will consist of the regular meal issue. However, all items from the regular meal that contain meat, will be substituted with a starch or vegetable food item."

Furthermore, pursuant California Department of Corrections, Food Services Handbook, which states "nutritional values are averaged on a weekly basis of 2900 calories."

Additionally, the Modified Heart Healthy Menu stipulates which Alternate Entrée (AE) is to be offered for each meal. CTF is mandated to follow this menu. Also, any substitutions must be on the authorized/approved substitution list issued to all facilities by California Department of Corrections (CDC) Headquarters. It is the objective of the Correctional Training Facility's Administration as well as the Food Service Department to achieve these tasks.

# EXHIBIT "N"

### F LEVEL RESPONSE

The fact is true, I inmate Mitchell D44205 was interviewed by R. Nickerson on 1/08/04 and on 1/15/04. At these interviews Mr. Nickerson, cordially, assisted me in discovering that one piece of cheese and one peanut butter enclosed in the Special Religious Diet lunches (SRD). Clearly, fail extremely lower, than the prescribed protein value in D.O.M. 54080.3. which, stated the DFA develops, administers, and monitors, are by the Department's Food Services Program. During the interview on 1/15/04 Mr. Nickerson and myself sought out to actually resolve this matter. He and I discovered when Mr. Nickerson was cross-referencing the protein value of one piece of cheese and one peanut butter in lunches (SRD) were not equivalent to turkey ham and a hamburger in the same night's meal that contain 48 grams of protein while the items placed the lunches (SRD) total 12 grams of protein. It's obviously clear that the disparities in the current lunch (SRD) supplements, need improvement. With this in mind. Mr. Nickerson and myself try to come to a solution; to resolve the problem, by adding more items to the lunches (SRD). For example, one boiled egg, two pieces of cheese, and two peanut butters, or wheat muffin, cheese and peanut butter, or two pieces of cheese, two peanut butters. Thus, these additional items would be alternated throughout the weeks to come. Undoubtedly, this would have resolved and improved the present lunch program (SRD), until the Halal/Kosher kitchens would be in place, accordingly, to the memo Mr. Nickerson has from the Director of C.D.C in relations to the Wayne Cooper lawsuit which was agreed on by the U.S. Court and C.D.C to have in place: the Kosher kitchens throughout California State Prisons no later than December 31,2006

Secondly, A.O. Amaya CTF Food Manager and B. Lockwood Business Manager are named defendants in appellant's pro se prisoner civil rights compliant No C 03 5165 TEH (pr) Presiding U.S. District Judge Thelton Henderson. It is a fact, their input in this inmate appeal (602) is openly bias in regards in improving the current program (SRD).

Lastly, Mr. A.O. Amaya CTF Food Manager quotes: " Alternate Entree (AE) is to be offered for each meal. CTF is mandated to follow this menu." Although this may be true. However, this regulation does not impede the Food Manager from giving the equivalent protein value in regards to improving the lunches (SRD). For instance, the current mandate instructs CTF Soledad to provide a Heart Healthy Diet not an insufficient one. Above all the portions of one piece of cheese and one peanut butter is not equivalent to the daily protein values reference to the daily meals. Whereby, CTF-Soledad Officials continue to afflict irreparable harm on appellant and other situated inmates by not at least improving the proportionate aspect of cheese and peanut butter in the current Special Religious Diet Program (SRD)


Respectfully, submitted

*Gregory Mitchell*
Gregory Mitchell D 44205

March 2, 2004

EXHIBIT   "O"

State of California

# MEMORANDUM

Date:        March 17, 2004

To:          Mitchell, D - 44205, G – 243U

Subject:     **SECOND LEVEL APPEAL RESPONSE CTF – C – 04 - 000085**

Your appeal has been referred for Second Level Review on March 11, 2004.

In your first level appeal response you are stating " . . .The partially denied does not address the issues in this inmate appeal therefore this answer is illegitimate.. . . . ."

You are requesting "two (2) slices of cheese and two (2) packages of peanut butter instead of only one (1) of each on the days they are utilized as a meat substitute in the *SRD* lunches.

An investigation was conducted, which revealed the following:
R. Nickerson, Assistant Correctional Food Manager contacted you via phone at approximately 1245 hours on March 17, 2004. Providing you the opportunity to fully explain your appeal and to provide any supporting information or documentation. After the completion of this phone call you accepted the resolution as stated at this time. After much negotiation for several food items (i.e. muffins, tuna, boiled eggs, cheese slices, peanut butter packets), cheese slices and peanut butter packets were agreed upon as the final resolution until the Cooper vs. State of California settlement is implemented.

The agreement is as follows: instead of only one (1) cheese slice, two (2) cheese slices will be issued when appropriate and instead of only one (1) peanut butter packet being issued, two (2) peanut butter packets will be issued when appropriate inside each *SRD* lunch as the meat substitute.

Pursuant, California Department of Corrections Operations Manual, Section 54080.1, which states, "The California Department of Corrections shall supply inmates with a wholesome, nutritious and adequate diet."

Furthermore, pursuant California Department of Corrections Operations Manual, Section 54080.14, which states, "Each institution/facility shall make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require special religious diets."

Page 2 – SECOND LEVEL APPEAL RESPONSE, APPEAL LOG # CTF-C-04-00085

The Correctional Training Facility (CTF – Soledad) Administration as well as the Food Service Department is sensitive to all religious groups needs, etc. It should be noted that this appeal is *Partially Granted* pertaining only to the Food Services Department concerns, and not the Canteen concerns.

Therefore, based on the foregoing information, your appeal is *Partially Granted* at the Second Level Review.


_____          _____
P. Barker                                      Date
Associate Warden Business Services
CTF – SOLEDAD


_____          _____
J.R. Solis                                     Date
Warden
CTF - SOLEDAD

EXHIBIT    "P"

## H. Third Level Response

It should be noted during the telephone interview (conversation) conducted by R. Nickerson, Assistant Correctional Food Manager, I also discussed the fact, that the protein items negotiated in the prior interview agreed on were appropriate i.e. wheat muffins, and boiled-eggs, along with peanut-butter and cheese, where the appropriate additional items to improved the current Special Religious Diet lunches.

However, due to CTF Soledad Food Services manifesto, which is a hard boiled-policy peanut butter and cheese, or nothing else. Whereupon, under duress appellant negotiated the present so called improvement reference to the SRD lunches.   In fact, appellant had no other choice but to accept the one additional peanut butter and one additional piece of cheese.

CTF Soledad Food Service manifesto has no regard for the Muslim inmate participants rights to be given a viable protein supplement or supplements equivalent to their religious scruples.   Moreover, this answer is not satisfactory and doesn't address the ongoing insufficient protein items placed in the SRD lunches, nor does it supply the full needs of the SRD participants.

Very truly yours,

*G. Mitchell*

G. Mitchell D44205

March 30, 2004

# EXHIBIT "Q"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN 0 7 2004

Group Appeal

In re:    Mitchell, D-44205
          Correctional Training Facility
          P.O. Box 686
          Soledad, CA 93960

IAB Case No.: 0310612        Local Log No.: CTF 04-00085

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner J. Burleson. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT:    It is the appellant's position that staff at Correctional Training Facility (CTF) denied the Muslim Community their right to religious freedom. He is Muslim and he wants to have a special religious diet. The appellant says the vegetarian meal served at the CTF does not meet the standards of the halal diet. The appellant says that it is his constitutional right as a Muslim to receive the proper food while incarcerated. The appellant requests that the CDC comply with the statewide order of the Wayne Cooper lawsuit; that Halal meals be implemented; that a special Halal foods quarterly purchase procedure be implemented; and that tuna and hard boiled eggs be provided daily.

II    SECOND LEVEL'S DECISION:    The reviewer found that the institution complies with state law and regulations. Muslim inmates are given the vegetarian diet when they present a chrono for the special religious diet (SRD) meal. The institution is not obligated to serve the appellant a specific halal diet. The appellant was informed that the SRD will contain two cheese slices and two peanut butter packets as the meat substitute. The appellant's request was denied at the Second Level of Review.

III    DIRECTOR'S LEVEL DECISION:    Appeal is denied.

A.    FINDINGS: It is noted that this is a duplicate appeal for the appellant, in that on January 12, 2004 the Director's Level of Review issued a decision on log #0304890 regarding the requested special religious diet. The Cooper Settlement Agreement referenced by the appellant is specific to California State Prison, Solano and the provision of kosher diets to kosher-observant Jewish inmates. The program will be implemented statewide, but a rabbi shall determine the inmate's eligibility to participate in the Kosher Diet Program.

The documentation is persuasive that the decision by the institution is appropriate and in conformity with state law and departmental regulations. The institution's special diet offerings shall be recognized by the appellant as the only meatless entree the CDC serves. Inmates may utilize the vegetarian diet offered as long as they have a valid chrono that say they may. It is clear that the appellant is not being denied the opportunity to practice the religion of his choice. Despite his dissatisfaction with the institution's decision, the documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the Second Level of Review.

B.    BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section (CCR): 3001, 3054, 3055, 3210, 3270
CDC Operations Manual Section: 54080.1, 54080.3, 54080.4, 54080.6

C.    ORDER: No changes or modifications are required by the institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

MITCHELL, D-44205
CASE NO. 0310612
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDC.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

EXHIBIT "A"

STATE OF CALIFORNIA

INMATE/PAROLEE
APPEAL FORM
CDC 602 (12/87)

DEPARTMENT OF CORRECTION

Location: Institution/Parole Region    Log No.    Category

Group Appeal 3084.2.    05 - 0 0 9 3 8

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| GREGORY MITCHELL (2) | D44205 | WEST GATE PORTER A.M. | (W) 243- |

A. Describe Problem: This group appeal is in congruent to C.C.R. Title 3084. 2. (f). C.C.R. Title 15 3004 (a) state's " All inmates have the right to be treated respectfully, impartial and fairly by all employees." C.C.R. Title 3004 (c) state's " Employees will no subje persons to any form of discrimination because of race , " Religion," nationally, sex, ... political belief, age, or physical or mental handicap." This group appeal, is in relation to a discriminatory 'Policy' against other situated Muslim inmates and appellant.  The Musl population at CTF Soledad, has been poorly represented by the Muslim chaplain Antar Jannah when called on by The warden, Associate Wardens and other administrative staff, in general

If you need more space, attach one additional sheet.    ( SEE ATTACHED SHEET TO INMATE APPEAL 602)

B. Action Requested: That the Ex (a) Memorandum date 8/27/04 be reinstated.  Which called for th the extension of four ounces to eight ounces of fragrance oils and six additional fragrances added.  And the following " vendors " be added: Garden Of Fragrance, Dawah Book Shop, Th Helper's Of Mohammad -- Books And Things, be added to one vendor Broadworld Fragrance.

Inmate/Parolee Signature: Gregory Mitchell    Date Submitted: 3/28/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.

CDC Appeal Number:

05 - 0 0 9 3 8

RECEIVED    RECEIVED    RECEIVED

MAR 3 0 2005    MAY 2005    JUN 8 2005

Supplemental Page Of Inmate Appeal.

religious issues e.g. Jummah Prayer, The Sunnah of Prophet Mohammad religious right to wear the Beard, Special Religious Diet, etc. Specifically, on this issue regarding the extension of Religious Artifacts, mainly prayer oil fragrances, and additional vendors. The Muslim Chaplain continues to misrepresent other situated Muslim inmates and appellant, by missing schedule meetings with Associate Warden Of Religious Programs, and his habitual tardiness, and lack of real vigor when it comes to representing the Muslim population, on establishing religious equalities. He dutifully misinforms or out of his own ignorance mispresents any issues pertaining to administrative Policies, involving the religious rights for the inmate Muslims at CTF Soledad.

It should be noted that appellant personally spoke with Warden Kane, in relationship, to additional fragrances and additional vendors. This discussion never pertain to religious rights or other situated inmate Muslims and appellant, would be able to practice their religion if the additional fragrances or vendors were not give to us. This specific conversation pertain to the 'Logic' of general population inmates could purchased fragrances olis, in their quarterly package with no limit. As a matter of fact, "30 pounds" of fragrances oil could be purchased if an inmate like to in his quarterly package. Mr. Kane was receptive to this logic and told me to have the Muslim Chaplain, to submit a memo which The Muslim Chaplain did. See Ex (a)

Shortly after The Muslim Chaplain Antar Jannah, informed the Muslim population that the new vendors and additional fragrances had been approved and other situated Muslims and appellant submitted order forms that were eventually denied by R&R C/O White. Soon after this incident the Muslim population at CTF Soledad had been informed, that someone had white out the Warden signature on approval for the additional Artifacts, and replaced his signature with a disapproval on the memo. See Ex (a)

Appellant on Sept 13,04 personally wrote a thank you letter to the Warden because he had been informed that the additional artifacts, had been approved. See Ex (b) Immediately, after Muslim Chaplain informed the Muslim population he'd be meeting with Associate Warden of Religious Programs on October 14, 2004, and as usual Mr. Antar Jannah, drop the ball and did not even show up to this meeting. See Ex (c)

On Dec 27, 04 appellant sent a request for interview form to Antar Jannah Muslim Chaplain, for an update on the Meeting on Oct 14, 04, as aforementioned Mr. Jannah, missed this meeting. See Ex (d) It is noteworthy to mention The Warden, Associate Warden, and, other Administrative Staff, have been open about fairly extending the fragrances and vendors. I am of opinion, due to Mr. Antar Jannah, lackadaisical concern and neglect to show up to Warden's meetings is the cause for months of delays on this issue, and the catalyst for ongoing inmate appeals and law suits, because of Mr. Jannah's, poorly misinforms or misrepresents The Muslim Population over the years.

At the end, C.C.R. Title 15 3004. (a).(c). is applicable in this instances because its only fair and equal treatment, to extend the Religious Artifacts, i.e. fragrances and vendors. Undoubtedly, there are " clear " disparities when purchasing non-religious fragrance oils for general population inmates compared to Muslims inmates Religious Artifacts, having the restriction to purchase four ounce and four fragrances limits, and, the fact, of being allowed to purchase Religious Artifacts from only one vendor.

Finally, the one vendor that the Muslim population, are allowed to order from is a " discriminatory policy " because general population inmates are given multiply choices in relationship, to vendors, e.g. Wakenhorst's, Access, J.C. Penny's, Music By Mail, while the Muslim population just has one vendor. Clearly this is an unfair policy.

-2-

## GROUP APPEAL EXTENTSION FOR
### PRAYER OILS AND VENDORS

| NAME: | CDC-NUMBER: | HOUSING: | SIGNATURE: |
|-------|-------------|----------|------------|

Y-WING:

Z-WING:  H62186        2339 LOW    Curtis Daniels
         E31206        2118 LOW    Steven Rice

B-WING:

C-WING:

PAGE 3:

F-WING:

G-WING:

| | | | |
|---|---|---|---|
| SImmons A | K. 77704 | 108 up | |
| Wesley, I | J-46248 | 350 up | Ishmael Wesley |
| STEVEN CLAUDE | K12408 | 112 L | Steven Claude |
| Howard Henry | C-87490 | 153 | Howard Henry |
| C Hutchinson | T38690 | 8258 | |
| M. Hundley | C-65838 | GW-31b | Mart. Hundley |
| K. Harris | C-71291 | 344L | K. Harris |
| J. Evans | D-19360 | A-237 | J. Evans |
| C. Zurom | L-41052 | 6/213. | |
| R. LAUTERMILL | H24103 | B-106L | R. Lautermill |
| Juan Kelly | C79.88 | GW | Juan Kelly |

ADDITIONAL NAMES:

State of California                                                    Department of Correctio

# Memorandum

Date : August 27, 2004

To    : A.P. Kane, Warden (A)
       Correctional Training Facility

Subject : VENDORS FOR RELIGIOUS SPECIAL PURCHSE

I'm requesting that the below religious (3) vendors be
approved to supply the Muslim Community with religious artifacts
per CTF Operation Procedure #42, 53050. Muslim inmates are
currently allowed to purchase from Broadworld Fragrance. The
inmates are allowed to purchase a maximum of four (4) one ounce
ceremonial prayer oils from this vendor. I'm requesting that the
maximum be extended to eight (8) one ounces, (quartely packages
from Walkenhorst allow 9 oz.) I'm requesting six (6) additional
fragrances that will bring the maximum total of ten (10)
frangrances that the inmates be allowed to select from.

Thank you.

VENDORS:

GARDEN OF FRANGRACE                   DAWAH BOOK SHOP
1960 A 54TH. STREET                   4801 SOUTH CRENSHAW BLVD.
SAN DIEGO, CA.  92115                 LOS ANGELES, CA. 90043
or P.O. BOX 152513                      Ph. (323) 299-0335
  SAN DIEGO, CA. 92115                   FAX: (323) 299-4434
Ph. (619) 527-1307   FAX: (619) 527-2101


The Helper's Of Muhammad - Books and Things
674 San Juan
Venice, CA.  90291
Ph. (310) 925.2071

FRAGRANCES:

1) Frakensence & Myrrh      4) Mecca
2) DRAKKAR                  5) Medina Musk
3) Kush                     6) Timbuctu

Imam Antar Jannah                    Approve / Disapprove
Muslim Chaplain
Correctional Training Facility        W. Cohen
                                      Associate Warden
                    RECEIVED          CTF South Facility

Approve / Disapprove

                    2004 SEP -1  P 12: 05

A.P. Kane, Warden (A)
Correctional Training Facility    WARDENS OFFICE
                                  CTF SOLEDAD

# EXHIBIT "A-1"

DEPARTMENT OF CORRECTIONS
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:       CTF APPEAL LOG NO.    *CTF-S-05-00938*
          First Level Reviewer's Response

NAME:    MITCHELL       CDC#:    D44205        HOUSING:    GW243

APPEAL DECISION:        DENIED

APPEAL ISSUE:           PROPERTY

APPEAL RESPONSE:

In your appeal you request the following:

1.  That the memorandum dated August 27, 2004 be reinstated. The memorandum called for the extension from four ounces to eight ounces of fragrance oils and six additional fragrances to be added.

2.  That the following vendors be added: Garden of Fragrance, Dawah Book Shop, The Helpers of Mohammad – Books and Things.

On April 6, 2005 an interview was conducted by P. Mandeville, Religious Programs Manager. A thorough review of your appeal and all of its attachments was completed and reveals the following:

1.  It was reiterated that there would be no violations of the Muslim Religious practices if the request for additional oils and vendors were denied. (See memorandum dated February 3, 2005).

Your appeal is being **DENIED** at the first level of review.

_____            5-5-05
J. X. Madison                               _____
Correctional Lieutenant                     Date
CTF-South, Unit VII


_____            5-3-05
P. Mandeville                               _____
Associate Warden                            Date
CTF-South, Unit VII

# EXHIBIT "A-2"

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: MAR 3 0 2005    Due Date: MAY 1 2 200

Interviewed by: _____ Mandeville _____

_See attached response_

Staff Signature: _____    Title: Lieutenant    Date Completed: 5-5-05

Division Head Approved

Signature: F. Mandeville    Title: Assc. Warden    Returned Date to Inmate: MAY 06 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This answer is unfairly represented and unsounded because its doesn'T address the logic of one vendor compairing to the five or six vendors for special Purchased items. Mr Kane The Werden give is aford to Tel help and fairly extend the frigrances and vendors.

Signature: Gregory Mitchell    Date Submitted: 6/6/0

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____    JUL 15 2005

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: JUN 16 2005    Due Date: _____

☒ See Attached Letter _____ 7-20-05

Signature: _____    Date Completed: 7-20-05

Warden/Superintendent Signature: D) Barba    Date Returned to Inmate: JUL 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In reference to (RLUIPA) a State or Federal agency must have a genuine penological interest or the religious accomodations of religious observances is a threat too institution need to maintain order and safety of the

institution in question. In this instances CSP-Soledad has no legitimate reasoning not to extend vendors or

fragrances. The one vendor BroadWorld has been an ongoing problem i.e. misplacing orders, not filling the whole order, items missing from the paid orders, Qur'ans, prayer rugs. Sadly the Warden has missed the point of this appeal of treating all inmates impartial because the general population inmates are accomodated with several

special purchased vendors each one is capable to furnished the items. Thus this answer is unfounded and inadequate.

Signature: Gregory Mitchell    Date Submitted: 7/29/2005

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

RECEIVED

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

☐ See Attached Letter

CDC 602 (12/87)    JUL 2 1 2005    Date OCT 2 8 2005

CTF APPEALS

# EXHIBIT "A-3"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:    CTF APPEALS LOG # *CTF-S-05-00938*
Second Level Reviewer's Response

NAME: MITCHELL        CDC# D-44205        HOUSING:  GW243

APPEAL DECISION:

*PARTIALLY GRANTED*

APPEAL ISSUE:    PROPERTY

In your appeal you state the following:

1. You request the memorandum dated August 27, 2004 be reinstated. The memorandum called for the extension from four ounces to eight ounces of fragrance oils and six additional fragrances to be added.

2. You request the following vendors be added: Garden of Fragrance, Dawah Book Shop, The Helpers of Mohammad – Books and Things.

Dissatisfied with the First Level Response, you  submitted your appeal for a Second Level of Review,  stating "the answer is unfairly represented and unsounded because it doesn't address the logic of one vendor comparing to the five or six vendors for special purchased items. Mr. Kane the Warden give his word he'd help and fairly extend the fragrances and vendor."

Appeal Response:

A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

1. The memorandum dated August 27, 2004, was disapproved by the Warden. Therefore it can not be reinstated.  However, a discussion was held with A. Jannah, Muslim Chaplin, B. Hedrick, Correctional Business Manger II, P. Mandeville AW South, A.P. Kane, Warden (A) and I, on June 30, 2005. At which time, A. Jannah was instructed to put his request in writing to A. P. Kane via B. Hedrick to increase the number of Fragrances from four to eight, not ten. Once A. Jannah returns from vacation, it is expect he will complete this memorandum.   The memorandum will serve as an addendum to the Religious Programs Operational Procedure #42. This portion of your appeal is partially granted.

2. There is currently one vendor approved to provide Religious Artifacts. This will not be increased at the Wardens instructions. It has been determined that the current vendor has the ability to provide all authorized Religious Artifacts. There is no clear  justification to increase the number of vendors. This portion of your appeal is denied.

Supplemental Page
Second Level Reviewer's Response
Appeal Log# CTF-S-05-00938
Page 2 of 2

Based on the information provided in ths appeal and a review of appeal number CTF-S-05-00938 and other information gathered your appeal is PARTIALLY GRANTED.

Reviewed by:

Wade Cohen
Associate Warden Business Services

7-20-05
Date

A. P. Kane
Warden (A)

7-21-05
Date

# EXHIBIT "A-4"

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days). Date assigned: MAR 3 0 2005    Due Date: MAY 1 2 200

Interviewed by: _S P Manderville_

_See attached) response_

Staff Signature: _____    Title: _Lieutenant_    Date Completed: _5-5-05_

Division Head Approved
Signature: _P Manderville_    Title: _Assoc Warden_    Returned
Date to Inmate: MAY 06 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_This answer is unfairly represented and unsound_
_because its doesn't address the logic of one vendor_
_comparing to the five or six vendors for special_
_purchased items. Mr Kane the Warden give is word_
_to fully help and fairly extend the fragrances and vendors_

Signature: _Gregory Mitchell_    Date Submitted: _6/6/0_

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____    JUL 15 2005

G. REVIEWER'S ACTION (Complete within 10 working days). Date assigned: JUN 16 2005    Due Date: _____
☒ See Attached Letter    _7-20-05_

Signature: _____    Date Completed: _7-20-05_

Warden/Superintendent Signature: _D Barta_    Date Returned to Inmate: _2005_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In reference to (RLUIPA) a State or Federal agency must have a genuine penological interest or the religious accommodations of religious observances is a threat too institution need to maintain order and safety of the

institution in question. In this instances CSP-Soledad has no legitimate reasoning not to extend vendors or

fragrances. The one vendor BroadWorld has been an ongoing problem i.e. misplacing orders, not filling the whole order, items missing from the paid orders, Qur'ans, prayer rugs. Sadly the Warden has missed the point of this appeal of treating all inmates impartial because the general population inmates are accommodated with several special purchased vendors each one is capable to furnished the items. Thus this answer is unfounded and inadequate.

Signature: _Gregory Mitchell_    Date Submitted: _7/23/2005_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

RECEIVED
DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87) JUL 2 1 2005    Date: OCT 3 8 2005

CTF APPEALS

# EXHIBIT   "A-5"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: OCT 2 3 2005

Group Appeal

In re:   Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0501412         Local Log No.: CTF 05-00938

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   APPELLANT'S ARGUMENT: It is the appellant's position that Muslim inmates are being discriminated against mainly because they are being denied additional prayer oil fragrances. Also, they contend that the Muslim population is only allowed to order from one vendor when the general inmate population (GP) inmates are given multiply choices of vendors to order canteen. He requests that the August 27, 2004 memorandum be reinstated. This memorandum allows up to eight ounces of fragrance oils and the addition of vendors.

II   SECOND LEVEL'S DECISION: The reviewer found that once A. Jannah, the Muslim Chaplain returns from vacation his request for additional ounces of prayer oils will be addressed via a memorandum to the Warden.     The memorandum will serve as an addendum to the Religious Programs Operational Procedure #42. The Warden has denied the addition of vendors approved to provide religious artifacts.

III   DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.   FINDINGS: The documentation presented fails to indicate that the institution has violated the intent of the law, or departmental regulations regarding this matter.   The appellant's requests have been considered and a reasonable response has been provided. The appellant is housed in the GP, and as such, is allowed to order from all approved vendors. The appellant has alluded to the fact that Muslim inmates are not allowed to order from established vendors as other GP inmates similarly situated. The appellant has not supported this allegation with fact. The appellant has provided no evidence to indicate that, as a GP inmate, he has been denied access to the canteen program. Based upon his arguments and documentation presented, he has not established that the institution is engaging in discriminatory practices based upon his religious beliefs. A meeting with the CTF Religious Program Coordinator and A. Jannah, Muslim Imam, established that the oils currently available are sufficient for religious practice. Additional oils, as requested by the appellant, are not required but are a matter of individual preference. The appellant is not being singled out or denied the right to practice his religious beliefs; however, he must practice his beliefs within the resources available to him via institutional and departmental policies. No relief at the Director's Level of Review is warranted.

B.   BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section (CCR): 3210, 3270, 3380

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with the other inmates who signed this appeal.

MITCHELL, D-44205
CASE NO. 0501412
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

APPENDIX

EXHIBIT "A" 

Gregory Mitchell D44205

P.O. Box 689 G-243

Soledad CA' 93960

September 13, 2004

A.P. Kane
Warden
Correctional Training Facility

Dear A.P. Kane:

Peace Be With You.

This letter is regarding to a personal conversation you and I had near the West End of the Central Facility Corridor a month or so ago. You and I discussed the possibility of extending the Muslim population's Religious Artifacts, specifically, the prayer oil fragrances selection, which at that time was four and the amount of four ounces could be purchased. At this present time, this has been extended to six additional fragrances for a total of ten, and the additional four ounces extending to a total of eight and four additional vendors to order from. In actuality after our discussion a month ago or so you stated, *"I am one Warden that is willing to help. Have your Muslim Chaplain to write up the proposal and I'll give it a honest look."* Verily your words were true and we the signed on this letter would like to personally thank you for assisting and facilitating this particular issue. We would also like to extend our gratitude to those who assisted you on this matter, Associate Warden Mr. Cohen and the Muslim Chaplain Antar Jannah and all others who assisted.

Respectfully submitted,

*Gregory Mitchell*

Gregory Mitchell

P.S. The best of Salutations of Peace and hopefully you and your staff will attend our belated Eid Banquet on October 2, 2004 and in the up-coming Banquets.

Cc:   J. Woodford, Director of Corrections
      W. Cohen, Associate Warden, CTF
      Antar Jannnah, Muslim Chaplian, CTF
      J. White, Receiving & Release, CTF

APPENDIX

EXHIBIT "A" 2

State of California
Department of Corrections

# Memorandum

Date:    February 3, 2005

To:    Inmate Gregory Mitchell
       D-44205
       G-243

Subject: REQUEST FOR EXTENSION OF MUSLIM ARTIFACTS

This is to acknowledge receipt of a Correspondence Referral from the Institutions
Division regarding your Request for Interview, dated January 27, 2004 to Antar
Jannah, Muslim Chaplain.

Your letter indicates you want to know the outcome of the meeting with the
Warden on October 14, 2004 regarding the extension of prayer oil fragrances.
Be advised that Mr. Jannah was unable to attend the scheduled quarterly
Chaplain's meeting with the Warden regarding this issue.

However, as the Religious Program Coordinator, I met with Mr. Jannah regarding
the extension of prayer oil fragrances. I asked the specific questions listed below:

1. Can the Muslims practice their prayers with the existing oils being used?
   The answer was yes.

2. Is the request for more oils and vendors to be added a requirement for
   practice of the faith? He indicated that additional oils and vendors are not
   a requirement. The request is a desire.

3. I asked if there were any or would there be any violations of the Muslim
   Religious practices if the request were to be denied. He indicated that the
   Muslim inmates would still be able to practice their religion without
   additional prayer oils or vendors.

Therefore, based on the above statements, there is no need to approve additional
oils or vendors as the existing vendors are adequate to meet the needs of the
Muslim inmate population.

P. Mandeville

P. MANDEVILLE
Associate Warden
Religious Programs

APPENDIX

EXHIBIT "A" 3

# Memorandum

Date:     October 4, 2004

To:       Inmate Gregory Mitchell
          D-44205
          G-243

Subject: REQUEST FOR EXTENSION OF MUSLIM ARTIFACTS

This is to acknowledge receipt of your letter to A. P. Kane, Warden, dated September 13, 2004 regarding a previous conversation with Mr. Kane relative to extending Muslim Religious Artifacts, specifically, the prayer oils. Your letter has been assigned to P. Mandeville, Associate Warden and Coordinator of Religious Programs at CTF.

P. Mandeville will be conducting a meeting with the Chaplains on October 14, 2004. At that time the feasibility of extending the number of prayer oils will be discussed. The Muslim Population will be advised via written documentation of the decision. If you have additional information you would like to have presented, please submit it to you Chaplain for discussion at the meeting.

P. MANDEVILLE
Associate Warden
Religious Programs

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORREC

# CORRESPONDENCE REFERRAL

CDC 972 (03/02)

| | YACA TRANSMITTAL NUMBER | CCU NUMBER |
| | | 05-30 |

| ASSIGNED TO | DATE ASSIGNED: | DATE DUE: |
| INSTITUTIONS DIVISION | 1/4/2005 | 2/10/2005 |

**THE ATTACHED CORRESPONDENCE IS REFERRED TO YOU FOR ACTION AS INDICATED**

FROM:    D-44205 MITCHELL

REGARDING: MUSLIM ARTIFACTS
Institution:

[ CTF ]

TYPE OF ACTION:

[ SMALL ]

PACKAGING INSTRUCTIONS:

LARGE ACTION - Return one copy of your response and the original CORRESPONDENCE REFERRAL (with the DISPOSITION SECTION completed) to the Correspondence Control Unit.

SMALL ACTION - Return only the original CORRESPONDENCE REFERRAL (with the DISPOSITION SECTION completed) to the Correspondence Control Unit.

| **DISPOSITION SECTION** | **SPECIAL INSTRUCTIONS TO RESPONDING DIVISION** |

MUST BE COMPLETED PRIOR TO RETURNING TO CCU

Type of Response:

[ ] Letter/memo          [ ] E-Mail

[ ] Telephone call. Please note discussion in the space below:

[ ] No response necessary. Note reason no response was necessary in space below:

[ ] Copy of YACA referral sheet and completed correspondence sent to YACA.

RESPONDED TO BY OR DETERMINED NO RESPONSE NEEDED BY:
PRINT OR TYPE NAME

JAN 2005
RECEIVED
BY INSTITUTIONS
DIVISION

RESPONSE DATE:

**REASSIGNMENT INSTRUCTIONS: NOTIFY Correspondence Control Unit and reassigned Division IMMEDIATELY if this referral is reassigned. Phone: (916) 323-0962, or E-mail**

Reassigned to: _____

Date Correspondence Control Unit notified of reassignment: _____

[ HAND CARRY OR MAIL IMMEDIATELY TO REASSIGNED UNIT ]

[ ] TO: CORRESPONDENCE CONTROL UNIT, 1515 S St., Rm 124 S, Sacramento, CA 95814
(X-MARK HERE TO RETURN COMPLETED ASSIGNMENT TO CORRESPONDENCE CONTROL UNIT.)

EXHIBIT ."B"



STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)



DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region    Log No.    Category

1    CTF-S                     05 - 01862    11-3
AUG 05 2005    2    SEP 22 2005

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly. 6/13/05.04

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| G. Mitchell | D-44205 | West gate porter A.M. | Gw 209 |

A. Describe Problem  Appellant is a practicing Muslim whose faith is Al-Islam, and he follows the Maliki school of thought. Appellant comes forward with the finding of The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") constitutional. Subsequently on or about march 2005 a " Notice Of Court Order" was issued. SEE EX (A) Stating: " if you were given a 128-A (' counseling chrono) or 115 (' rules violation report' for wearing a short beard ( ½ inch or less) at CSP-Solano at September 22, 2000 you can apply to have those documents removed from your file and to receive any credits that you have lost." Appellant's 128-A's where removed from his central file. See Ex. (b).

If you need more space, attach one additional sheet. ( SEE ATTACHED SHEET)

B. Action Requested:  That Appellant along with other situated Muslim inmates be allowed to practices their faith Al-Islam by attending Jummah Prayers on Friday's between the hours of 1 P.m. and 3 P.m. without receiving a 128-A or 115. Also be allowed to wear the half ½ inch beard that is a key tenant of Muslims faith those whoever follows the Sunnah without receiving a 128-A or 115. SEE EX (D)

Inmate/Parolee Signature: _Gregory Mitchell_    Date Submitted: 6/13/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: [illegible handwritten text] BYPASS [illegible handwritten text]

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED

RECEIVED

RECEIVED

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number:

RECEIVED AUG BC-9 2005

RECEIVED AUG 18 2005

2 0 2005

JUN 1 4 2005

JUN 2 1 2005

CTF APPEALS    05 - 01862

CTF APPEALS

Supplement page of inmate appeal.

Appellant had been a plaintiff in the Mayweather vs Terhune case, but still is not allowed to wear a short beard according to his religious faith Al Islam without constant harassment from CTF-Soledad Central staff.

Appellant follows the Ahl-as-Sunnah and Al-Adillat Ash Shari'yyah whose jurisprudence (philosophy or formal science of law) is Maliki. SEE EX (C) Which exempts appellant from any short-sighted rulings referred to The Muslim Chaplain because at present The Muslim Chaplain, is considered La Madhabi (hawas) a layman who does not know the sciences of Arabic grammar and Islamic literature pertaining to (Islamic Rulings) Fatwas. Thus he is not qualified to grasp the books of fatwas SEE EX (F)

Respectfully submitted
Gregory Mitchell
G. Mitchell D 44205

6/13/05

## NOTICE OF COURT ORDER

In the case of *Mayweathers v. Terhune*, the Court held that the CDC could not punish Muslim inmates at California State Prison - Solano (CSP-Solano) for wearing a short beard (1/2 inch or less) or for being at Jumu'ah prayer service instead of their job or class. The Court's Order only applies to Muslim inmates who were at CSP-Solano during certain time periods.

If you were at CSP-Solano and were given a 128-A (counseling chrono) or 115 (rules violation report) for being at Jumu'ah services any time after November 19, 1998, you can apply to have those documents removed from your file and to receive any credits that you may have lost.

Also, if you were given a 128-A or 115 for wearing a short beard (1/2 inch or less) at CSP-Solano any time after September 22, 2000, you can apply to have those documents removed from your file and to receive any credits that you may have lost.

To apply, submit a 602 (inmate appeal) to your Correctional Counselor requesting that these forms be removed from your file and asking that your credits be restored.

If you have any questions about this Order, please contact your Correctional Counselor or the Appeals Coordinator. You may also contact the attorney for the Muslim inmates in *Mayweathers*:

      Sue Christian
      Prison Law Office
      General Delivery
      San Quentin, CA 94964-0001

STATE OF CALIFORNIA

CT 7-N 5/20/98
DEPARTMENT C

NAME and NUMBER    MITCHELL            D-44205            12-207-U

On 05/14/98, at approximately 1400 hours, it is noted that Inmate MITCHELL,
12-207-U, has failed to comply with the Grooming Standards Memorandum. Inmate
is hereby ordered to come into compliance by shaving his beard, or getting a
chrono to have a beard within regulations. Inmate MITCHELL has seven days to kom
this order. If Inmate MITCHELL does not comply within the seven-day period, he
subject to further progressive disciplinary action. Inmate MITCHELL is aware
report.

ORIG:  (C-File)                          A. FLORES,  Correctional Officer
   cc:  Counselor                        2nd Watch, Building #12
        Writer                           Facility II, CSP-Solano
        Inmate

DATE   May 14, 1998              INFORMATIVE CHRONO          CUSTODIAL COUNS

---

STATE OF CALIFORNIA                                       DEPARTMENT OF CORREC
                                 CT 7-N 5/20/98                    CDC 128.

NAME and NUMBER    MITCHELL            D-44205            12-207-U

On 05/14/98, at approximately 1400 hours, it is noted that Inmate MITCHELL, D-442
12-207-U, has failed to comply with the Grooming Standards Memorandum. Inmate MITCH
is hereby ordered to come into compliance by shaving his beard, or getting a medi
chrono to have a beard within regulations. Inmate MITCHELL has seven days to comply w
this order. If Inmate MITCHELL does not comply within the seven-day period, he will
subject to further progressive disciplinary action. Inmate MITCHELL is aware of th
report.

ORIG:  C-File                            A. FLORES,  Correctional Officer
   cc:  Counselor                        2nd Watch, Building #12
        Writer                           Facility II, CSP-Solano
        Inmate

DATE   May 14, 1998              INFORMATIVE CHRONO          CUSTODIAL COUNSELL

# EXHIBIT "B-1"



# SANKORE'



Institute of Islamic - African Studies

بسم الله الرحمن الرحيم والصلاة والسلام على سيّدنا محمّد وآله وصحبه وسلّم

# Memorandum

DATE:     November, 4, 1997

TO:        California-Department of Corrections

FROM:    Sankore' Institute of Islamic-African Studies

RE:        The Issue of Beards and Grooming Standards in Islam

      The Directorate of the Sankore' Institute of Islamic-African Studies was requested by the Muslim public as well as many Muslim inmates in the California Department of Correction to research into the *shari'a* of Islam in order to provide textual evidence concerning the wearing of beards by Muslims. The purpose of this research is to determine whether the wearing of the beard is an obligation in Islam, an established *sunna* or simply a custom of the Muslim people which can be dispensed with under certain circumstances.

      On October 16, 1997 the California Department of Corrections issued Resolution # 97/12: Notice of Change to Director's Rules - Sections: 3000, 3062, 3075, 3287, 3314 and 3315. The new resolution was issued *"to incorporate into the Director's Rules provisions governing inmate grooming standards"*.

      After carefully examining the purpose and aims of the resolution and after grasping the legitimate needs for security and maintenance of the hygienic standards within the California Department of Corrections - the Sankore' Institute of Islamic African Studies determined that the established Islamic grooming standards can be allowed for Muslims without challenging the stated objectives of the new changes. The stated objectives of the new changes are coterminous with the legal obligations of grooming standards in Islam. Therefore, each Muslim inmate can maintain the obligations of Islamic grooming standards while at the same time comply with the objectives of the new changes as stated in Resolution 97/12.

      The objectives of the new changes are, as stated: [1] to promote good personal hygiene; [2] to aid in the security of the prison; and [3] to protect the safety of the public. We do not feel that the objectives of these new changes are to "target" the Muslim inmate population of the CDC nor to violate established religious normative practices which in no way threaten the security of the prison system.

      It for this reason that the California Department of Corrections should be well informed of the grooming standards of Muslims, whether incarcerated or free - from the legal perspective of the *shari'a* of Islam. This will enable the officials of the CDC to know that Muslim grooming standards fulfill the very objectives of the new changes which would allow Muslims to be exempt from conforming to any grooming standards which violate their religion.

[2]    [a] The existence of facial hair is apart of the clear distinctions in Islam for determining the maturity of a young men. It is at the point of maturity (بلوغ) that human beings are made responsible for their actions (فعل). According to Abd'l-Wahab ibn Ashir in his Murshid 'l-Mu'een:

وكلُّ تَكليفٍ بِشَرْطِ الْعَقل   مَعَ اللَّبُلوغِ بِدَم أَوْ حَمل

أَوْ بِمَنِيْ أَوْ بِإِنْبَاتِ الشَّعْرَ   أَوْ بِثَمَانِ عَشَرَةَ حَوْلاً ظَهَرَ

"Every responsibility is conditioned by reason. Along with maturity indicated by (menstrual) blood or pregnancy.

Or by sperm or the growing of (facial or pubic) hair, Or by reaching eighteen years of age."[3]

[b] The existence of the beard is the clearest and most apparent sign of physical maturity in the male. The intentional removal of the beard is considered in Islam a sign of infantile vanity and religious immaturity. The shaving of the beard is a sign of humiliation and degradation.

[3]   [a] Human outward appearance (خلقة) is divided into two divisions: [i] the natural physiognomy (بنية); and [ii] artificially produced appearance (تصنع). The beard is included among the first type - the natural physiognomy of man. The divine law was established to preserve every aspect of the natural physiognomy and it is opposed to anything which would lead to its removal. This includes shaving or mutilation, except in a case which is justified by the *shari'a*. This principle lies at the very foundation of the divine law. The majority of laws in Islam were implemented by Allah ta'ala in order to protect the natural human constitution from futility and in order to preserve that which is the fundamental nature of humanity - whether spiritual or physical.

[b] Thus, the Messenger, may Allah bless him and grant him peace, established what is lawfully removed from the physical body and he included this removal as being apart of the natural human constitution (فطرة). It has been related by *Imam* Muslim in his Saheeh on the authority of A'isha: The Messenger of Allah may Allah bless him and grant him peace said:

عَشْرٌ مِنَ الْفِطْرَةِ قَصُّ الشَّوارِبِ وَأَعْفَاءُ اللَّحْيَةِ وَالسِّوَاك وَاسْتِنْشَاقُ الْمَاء وَقَصُّ الأَظْفَارِ وَغَسْلُ الْبَرَاجِم وَنَتَفُ

الآبَطِ وَحَلْقُ الْعَانَةِ وَانْتِقَاصُ الْمَاء. قَال مصعب وَنَسِيتُ الْعَاشِرَةَ إلاَّ أَن يَكُونَ الْمَضْمَضَةُ.

"*Ten things are the acts according to fitra (the natural state): clipping the mustache, letting the beard grow, using the tooth-brush, cutting the nails, washing the finger joints, plucking the hair under the arm-pits, shaving the pubic hair, and cleansing one's private parts (after defecation or urination) with water*." The narrator said: "I have forgotten the tenth, but it may have been *rinsing the mouth*."[4]

[c] From the above prophetic tradition it is known that the *shari'a* begins by preserving the natural human constitution. This is because the completion or perfection of the human physiognomy is apart of the natural constitution upon which humanity was created. Thus, the clipping of the mustache and the growing of the beard also constitutes the perfection of the human physiognomy as Allah ta'ala has ordained. Within these two acts there are well known hygienic, medical as well as religious benefits. Thus, the issue of the beard comprises the essence of the human formation and physical constitution in Islam and it should be preserved in the fashion that the Prophet, may Allah bless him and grant him peace ordered.

[3] Shaykh Abd 'l-Waahid ibn 'Aashir, al-Murshid 'l-Mu'een 'Ala al-Daruuri Min 'l-Uluum 'd-Deen, (Tunis: Maktaba 'l-Manaar, 1969), p. 3.

[4] Imam Muslim, Saheeh Muslim, (Cairo: Isa 'l-Baabi 'l-Halabi), p. 125.

becomes abundant. This is what Abu Ubayda said. However, al-Baaji said: 'I consider that what is intended here is that the beard should be exempt from being cut, because not cutting the beard does not necessarily mean it should be abundant.' It has been narrated that Ibn Umar and Abu Hurayra used to grasp their beards in their hands and then cut what exceeded beyond their hand grasp. *Imam* Malik was asked about the beard which is very long and he said, 'My opinion is that he should grasp hold of it and cut (that which extended beyond the hand).' . . . *Imam* at-Taybi said, 'It is prohibited

(نَهَى) to cut the beard like the non-Arabs or to extend the beard like the tail of a donkey.' *Imam* al-Haafidh said, 'The prohibition for the beard is complete elimination (يَسْتَن) or cutting it very close contrary to what grows beyond the hand grasp mentioned in the above traditions."[7]

[5]    [a] The Muslim is prohibited from repudiating known Islamic customs and resembling the customs of the non-Muslims. Allah ta`ala says:

وَمَنْ يُشَاقِقِ الرَّسُولَ مِنْ بَعْدِ مَا تَبَيَّنَ لَهُ الْهُدَى وَيَتَّبِعْ غَيْرَ سَبِيلِ الْمُؤْمِنِينَ نُوَلِّهِ مَا تَوَلَّى وَنُصْلِهِ جَهَنَّمَ وَسَاءَتْ مَصِيرًا.

"*Whoever repudiates the Messenger after the Guidance had been made clear to him and follows other than the Way of the believers, Allah will attach him to what he has become attached and lead him to Hell an evil destiny.*"[an-Nisa': 115]

Thus, if the Muslim denies the obligation of maintaining the beard and follows in the ways of the disbelievers by shaving their beards after the Messenger has given the command to let the beard grow -then he will no doubt be connected to those whom he resembles. This is because sameness in outward appearance is a proof of sameness in the hearts.

[b] The Messenger of Allah, may Allah bless him and grant him peace said,

لاَ يُشْبِهُ الزَّيُّ بِالزَّيِّ حَتَّى يُشْبِهَ الْقَلْبُ بِالْقَلْبِ.

"*There is no resemblance of outer appearance until there is first resemblance in the hearts.*" Again the Messenger of Allah, may Allah bless him and grant him peace said,

مَنْ تَشَبَّهَ بِقَوْمٍ فَهُوَ مِنْهُمْ.

"*Whoever resembles a people then he is from them.*" Lastly the Messenger of Allah, may Allah bless him and grant him peace said,

لَيْسَ مِنَّا مَنْ تَشَبَّهَ بِغَيْرِنَا.

"*He is not from among us who resembles other than us.*" *Shehu* Uthman Dan Fodio said in his Tahdheer, "This means he is not among the righteous from us nor among those who are fearful of Allah - who resembles the people of corruption and sinful deviation. For by resembling them in their ways it is feared that he will be included among them on the Day of Judgment."[3]

[c] *Shaykh* Uthman ibn Abd'l-Qaadir narrated in his excellent work called Hukmu 's-Shar'i Fi 'l-Lahya wa 'l-Azyaa (The Legal Judgment Concerning Beards and Attire), "One day messengers from the courts of the King of Persia, Kosra, came to the Prophet of Allah, may Allah bless him and grant him peace and their beards were shaved off. He upon him peace asked, 'Who has ordered you to do that?' They said, 'Our master.' Meaning by that Kosra. He then turned his eyes away

---

[7] Ibid, 426.

[3] Uthman Dan Fodio, Tahdheer, pp. 21-22.

[g] Also by *Imam* Muslim on the authority of Jabir ibn Abdallah: "When Abu Quhafah (father of Abu Bakr) came in the Year of Victory or on the Day of Victory (to the Prophet to pledge his allegiance to him) his head and his beard were white like hyssop. He (the Prophet) commanded or the women were commanded by him that they should change this with something (that the color of his hair should be changed)."[16]

[h] It is related by Abu Dawud in his Sunan on the authority of Laqit ibn Sabira who said: "Oh Messenger of Allah, tell me about ablution." He said: "*Perform ablution in full and make the fingers go through the beard and snuff with water well except when you are fasting.*"[17]

[i] In the same collection on the authority of Anas ibn Malik: "Whenever the Messenger of Allah (peace be upon him) performed ablution, he took a handful of water, and, putting it under his chin, made it go through his beard, saying: *Thus did my Lord command me.*"[18]

[j] Finally, it says in the al-Ibdaa` Fi Mudaar `l-Ibtidaa`:

اِنَّفَقَتِ الْمَذَاهِبُ الْاَرْبَعَةُ عَلَى وُجُوبِ تَوْفِيرِ اللِّحْيَةِ وَحُرْمَةِ حَلْقِهَا وَالْاَخْذِ الْقَرِيبِ مِنْهُ .

"The four schools of thought are unanimously agreed upon the obligation of growing of the beard and upon the prohibition of shaving it and trimming it to where it is nearly (shaved)."[19]


[8]  [a] Pursuant to the above legal rulings as established within the Quranic verses, prophetic traditions and the independent judgment of the *sunni* scholars - the Sankore` Institute will now examine the actual text of the new amendments to demonstrate that the Muslim inmates can wear the beards as has been religiously ordained while at the same time complying with the objectives of the new amendments.

[b] The 'determination' of the new amendments concerning inmate grooming standards states:

> "The Department must determine that no alternative considered would be more
> effective in carrying out the purpose of this action or would be as effective and
> less burdensome to affected persons."[20]

The Muslim community believes that regarding Section 3062 *Inmate Grooming Standards,* Subsection (h),1-2 - that there is an alternative which can be considered which would be more effective and less burdensome to the religious grooming standards of the Muslim inmates.

---

[16] Ibid.

[17] Ibid.

[18] Ibid.

[19] Shaykh Uthman ibn Abd'l-Qaadir `s-Sanfi, Hukmu `t-Shar`i Fii `l-Lahyati wa `l-Am:a`, p. 51.

[20] Director of Corrections, "Notice of Adoption of Emergency Regulations" Oct. 3, 1997, p. 3

The Muslim community alleges that this amendment should: [a] be excluded because of the above mentioned religious reasons; or [b] be amended to include within its exemption the Muslim inmates who have a 'chronos' from the institutional Muslim Chaplain stating that the said inmate is indeed a Muslim and be given authorization from Institutional Division's Regional Administrator. The above amendment for those who are professed Muslims should not be delimited by a time exemption.

[f] As for beard's length, the *Initial Statement of Reasons* states,

> "Prison restrictions on hair length assist correctional officers in searches of inmates for concealment of contraband including dangerous materials, reduce the difficulty and time needed to conduct searches, and aid in the promotion of
>
> hygienic and healthy conditions inside the prisons."[27]

This objective demonstrates the compelling institutional interests which can never be compromised because it underpins the very purpose and design of the CDC system. However, the Muslim community maintains that this objective can also be accomplished by allowing the Muslim inmates to grow their beards as enjoined by Islam. The Islamic injunction regarding the growing of the beard is that it should be a certain length. In the above mentioned tradition narrated on the authority of Ibn Umar and Abu Hurayra that they used to grasp their beards in their hands and then cut what exceeded beyond their hand grasp. *Imam* Malik was asked about the beard which is very long and he said, 'My opinion is that he should grasp hold of it and cut (that which extended beyond the hand)."[28] This means the beard should be no longer than three inches in length. This length is also supported by the Institutional requirements as established in the *Initial Statement of Reasons*,

> "The Department contends that *three inches is a reasonable length* as it is difficult to hide contraband in hair of this length and will inhibit matting of the hair, which makes it difficult to search. At this time, a shorter maximum length, such as two inches is not thought to be necessary to address security concerns."[29]

Although this objective was engendered regarding the length of the hair of the head, it can be argued that what is *"necessary to address security concerns"*[30] for the hair of the head should be the same circumstances for the hair of the face. As for the concerns of uniformity, discipline and neatness, the Islamic requirements of neatness and uniformity for the beard are completely in accord with the stated objectives of the Department's new amendments.

All of the above gives evidence that there are clear achievable alternatives to Section 3062(h), (1), (2) which will prove to be more effective in carrying out the purpose, reason and objective of inmate grooming standards. Allowing the Muslims to grow their beards to a uniform length of three inches (and no more) would be as effective and less burdensome to Muslims who will be adversely affected by the above amendments as stated.

---

[27] Director of Corrections, "Initial Statements of Reasons", p. 1.

[28] See above pg. 5 Section 4 (c) of this memorandum.

[29] Director of Corrections, "Initial Statements of Reasons", p. 2.

[30] Ibid.

This action, with all of the negative results it would induce[39] would no doubt lead to the very opposite of "promoting a positive self image"[40] on the part of Muslim inmates. It will induce fear, depression and an overwhelming sense of persecution. These pessimistic traits would undermine the ability of the inmates to become rehabilitated and reformed.

The Muslim inmate would then be left with two alternatives: [1] to comply with Subsection 3062 (h) by shaving their beards and disobeying the laws of Islam; or [2] by refusing to comply with the administrative action and obeying the laws of Islam. All Muslims, whether incarcerated or free have the same choices. Shaykh Uthman Dan Fodio said in his Bayan Wujub 'l-Hiira, "Whenever there is a conflict between a religious interest and a worldly interest, then it is obligatory for the Muslim to give preference to the religious interest over the worldly interest."[41] Allah ta'ala says:

$$\text{وَمَا كَانَ لِمُؤْمِنٍ وَلاَ مُؤْمِنَةٍ إِذَا قَضَى اللَّهُ وَرَسُولُهُ أَمْرًا أَنْ يَكُونَ لَهُمُ الْخِيَرَةُ مِنْ أَمْرِهِمْ، وَمَنْ يَعْصِ اللَّهَ وَرَسُولَهُ فَقَدْ ضَلَّ ضَلاَلًا مُبِينًا.}$$

"It is not for the believing man and believing woman that when Allah and His Messenger decide a matter that they should have a choice in their affair. Whoever disobeys Allah and His Messenger has gone clearly astray."[al-Ahzaab: 36]   The Messenger of Allah, may Allah bless him and grant him peace is reported to have said,

$$\text{لاَ طَاعَةَ لِلْمَخْلُوقِ فِي مَعَاصِيَةِ لِلْخَالِقِ.}$$

"There is no obedience to a created being in disobedience to the Creator." Thus, the Muslim who fears Allah and His displeasure will endure every worldly constriction for the sake of Allah and His religion.

As for the weak hearted Muslim, who is a slave of his lower passions and has been induced by Satan to fear created beings, Allah ta'ala says about him:

$$\text{أَلَمْ تَرَ إِلَى الَّذِينَ يَزْعُمُونَ أَنَّهُمْ آمَنُوا بِمَا أُنْزِلَ إِلَيْكَ وَمَا أُنْزِلَ مِنْ قَبْلِكَ يُرِيدُونَ أَنْ يَحْتَكِمُوا إِلَى الطَّاغُوتِ وَقَدْ أُمِرُوا أَنْ يَكْفُرُوا بِهِ، وَيُرِيدُ الشَّيْطَانُ أَنْ يُضِلَّهُمْ ضَلاَلًا بَعِيدًا. وَإِذَا قِيلَ لَهُمْ تَعَالَوْا إِلَى مَا أَنْزَلَ اللَّهُ وَإِلَى الرَّسُولِ رَأَيْتَ الْمُنَافِقِينَ يَصُدُّونَ عَنْكَ صُدُودًا.}$$

"Have you not seem those who claim that they believe in what was revealed to you and in what was revealed before you, how they would go for judgement to false dieties when they were ordered to renounce them? Satan desires to lead them far astray. And when it is said to them, 'Come to that which Allah has revealed and to the Messenger'; you see the hypocrites turning their back to you with aversion."[an-Nisaa: 59-60]

---

[39] Failing to comply with grooming standards would constitute a violation of the rules and the inmate will be written up for an administrative rule violation. The inmate may be placed in Work Group C, which would preclude them from earning time credits and restrict their privileges.

[40] Department of Corrections, "Initial Statement of Reasons", p. 1. *"The Department contends that these grooming standards may help to promote a positive self image on the part of the inmates."*

[41] Uthman Dan Fodio, Bayan Wujub 'l-Hiira 'Ala 'l-'Ibaad, trans. F.H. el-Misri, p.13.

Conclusion

The Islamic ordinance for wearing the beard demonstrates definitively that the claim of the beard not being a substantial part of the *shari'a* of Islam is false. The beard is the prominent facial distinction between males and females. The beard is a symbol of maturity and puberty in the male, signaling that he has attained the age of religious and social responsibility of the Islamic commands and prohibitions. The beard is apart of the natural human physiognomy which completes and perfects the facial constitution. It is forbidden to shave it or to trim it until it is almost shaved.

Letting the beard grow is apart of the features of the natural human constitution which Allah included in creating mankind. It is apart of the *sunna* of the Prophet, may Allah bless him and grant him peace, which a Muslim is rewarded for adhering to and is punished for leaving. The Messenger of Allah, may Allah bless him and grant him peace guided the Muslim to do the opposite of what non-Muslims do in shaving their beards.

All of the foregoing judgments does not challenge the objectives of the new changes to be implemented in the CDC concerning inmate grooming standards. In fact, Islamic grooming standards correspond with the spirit and objectives of the new changes. The wearing of beards by the Muslim inmate population does not in anyway preclude discipline and respect for authority. The wearing of beards as stipulated by the Islamic law does not hamper the health and safety requirements of the correctional institution. The beard does not impede the effective use of safety devices e.g. eye shields, headgear and face masks. The Islamic custom of wearing the beard is a religious custom which in no way induces animosity towards anyone. The wearing of beards in the manner which Islamic law delineates impedes the possibility of concealing weapons or contraband and permits the necessity and efficiency of inspection and search by Correctional Officers.

The wearing of beards by Muslim inmates will help to promote a positive self image and is an alternative which would be more effective in carrying out the purpose of the new changes in grooming standards. The Muslim inmate population should be given administrative exemption from the shaving of their beards after determination of their Islamic faith by institutional Muslim chaplains. This would be more effective and less burdensome than Subsection 3062(h)(1) and (2) to the Muslim population.

Directorate: Sankore' Institute of Islamic-African Studies

أبو الفَتح عَمَر عَبْد السَتَّار بن فَريد

Abu Alfa Umar Abd's-Sataar bin Farid

## Conclusion

The Islamic ordinance for wearing the beard demonstrates definitively that the claim of the beard not being a substantial part of the *shari`a* of Islam is false. The beard is the prominent facial distinction between males and females. The beard is a symbol of maturity and puberty in the male, signaling that he has attained the age of religious and social responsibility of the Islamic commands and prohibitions. The beard is apart of the natural human physiognomy which completes and perfects the facial constitution. It is forbidden to shave it or to trim it until it is almost shaved.

Letting the beard grow is apart of the features of the natural human constitution which Allah included in creating mankind. It is apart of the *sunna* of the Prophet, may Allah bless him and grant him peace, which a Muslim is rewarded for adhering to and is punished for leaving. The Messenger of Allah, may Allah bless him and grant him peace guided the Muslim to do the opposite of what non-Muslims do in shaving their beards.

All of the foregoing judgments does not challenge the objectives of the new changes to be implemented in the CDC concerning inmate grooming standards. In fact, Islamic grooming standards correspond with the spirit and objectives of the new changes. The wearing of beards by the Muslim inmate population does not in anyway preclude discipline and respect for authority. The wearing of beards as stipulated by the Islamic law does not hamper the health and safety requirements of the correctional institution. The beard does not impede the effective use of safety devices e.g. eye shields, headgear and face masks. The Islamic custom of wearing the beard is a religious custom which in no way induces animosity towards anyone. The wearing of beards in the manner which Islamic law delineates impedes the possibility of concealing weapons or contraband and permits the necessity and efficiency of inspection and search by Correctional Officers.

The wearing of beards by Muslim inmates will help to promote a positive self image and is an alternative which would be more effective in carrying out the purpose of the new changes in grooming standards. The Muslim inmate population should be given administrative exemption from the shaving of their beards after determination of their Islamic faith by institutional Muslim chaplains. This would be more effective and less burdensome than Subsection 3062(h)(1) and (2) to the Muslim population.

Directorate: Sankore' Institute of Islamic-African Studies

آبو الْفَتح عَمَر عَبْد السِتّار بن قريــد

Abu Alfa Umar Abd's-Sataar bin Farid

# EXHIBIT "B-2"

Sacramento Bee - 12-28-02 ** A3

# Let inmates worship, court says

## The Muslim prisoners also can grow beards, the appeals panel rules.

By Claire Cooper
BEE LEGAL AFFAIRS WRITER

SAN FRANCISCO – In a victory for Muslim prisoners in California, a federal appeals court ruled Friday that wardens can't interfere with inmates' religious practices without proving a compelling security need.

The 3-0 decision by the 9th U.S. Circuit Court of Appeals, the first of its kind by a federal appeals court, upheld the Religious Land Use and Institutionalized Persons Act against a constitutional attack by the state in a case that began six years ago.

The 2000 U.S. statute conditions the states' receipt of federal prison funds on the religious liberty they permit their inmates. The amount at stake for California in the Muslim inmate case appears to be about $240 million annually.

The upshot of the ruling is that Muslim inmates can't be disciplined with loss of good-time credits or subjected to other penalties for attending the one-hour Friday worship services known as Jumu'ah, as the Quran requires, or for wearing the half-inch beards that symbolize loyalty to Muhammad.

"Congress has a strong interest in making certain that federal funds do not subsidize conduct that infringes individual liber-

"The federal government also has a strong interest in monitoring the treatment of federal inmates housed in state prisons and in contributing to their rehabilitation."

Expressly protected by the decision are the approximately 300 practicing Muslims incarcerated at California State Prison at Solano. They're the same men who were covered by 14 three-month preliminary injunctions against the prison – 10-on-Jumu'ah-and four-on-beards – issued earlier by U.S. District Judge Lawrence K. Karlton in Sacramento.

The implications are much broader, however, because the 9th Circuit's interpretation of any federal law is binding throughout California and eight other Western states unless and until it's reversed by the U.S. Supreme Court.

And, as a practical matter, said Susan D. Christian, the inmates' lawyer, "I would think it wouldn't require another lawsuit to apply it to all religions and all institutions."

The case had its origins in several suits filed by individual inmates, representing themselves. The court appointed Christian to represent them in what became a class-action lawsuit, Mayweathers vs. Newland, that won the backing of the U.S. Department of Justice.

Terry Thornton, a spokeswoman for the Department of Corrections, had no estimate of the overall Muslim population behind bars but said Islam is "one of the fastest-growing religions in

## Muslim: Next move uncertain

➤ CONTINUED FROM A3

: The state's attorneys were reviewing the opinion before deciding what to do next. They could petition the U.S. Supreme Court for a review, seek further review in the 9th Circuit or let the case go back to Karlton for a ruling on a permanent injunction.

The prisons had justified a general ban on beards as essential to speedy identification. The argument was rejected without discussion in the 9th Circuit's opinion.

Karlton ruled last winter that the prisons could achieve their legitimate goals by imposing less restrictive measures, such as limits on beard length.

In the 9th Circuit, the state argued mainly that Congress exceeded its constitutional powers in passing the 2000 law.

The 9th Circuit said the statute was sound under a 15-year-old U.S. Supreme Court precedent that spells out the circumstances under which Congress may withhold its funds from states that refuse to comply with its mandates.

It's anybody's guess, though, whether the Supreme Court would adhere to the precedent today.

Jesse Choper, a leading constitutional authority at the University of California, Berkeley, said the power of Congress to put conditions on its funding was "in all likelihood, the next front in the court's federalism revolution."

Although the court has extended the right to practice religion, it also has made progressive inroads on the power of Congress to tell the states what to do, especially in running their prisons.

▢ ▢ ▢

*The Bee's Claire Cooper can be reached at (415) 551-7701 or ccooper@sacbee.com.*

# EXHIBIT "B-3"

## Chapter One
### An Explanation of the Scope of the Book, the *Sunna*, and the Consensus
### (*al-ijma'*) and the Proofs of the Obligation to Follow Them

### The Scope of the Book:

As for the scope of the Book it is as Abd'r-Rahmaan as-Suyuti[12] said in his an-Niqaya, "It is the heavenly speech which was revealed to Muhammad, may Allah bless him and grant him peace, in the form o chapters as a wondrous miracle from Him."

### The Scope of the *Sunna*:

The scope of the *Sunna* is as Ahmed ibn Ali ibn Abd'r-Rahmaan al-Manjuri said in his commentary upon the Minhaj 'l-Muntakhib, "The *sunna* linguistically means a way (*at-tareeqa*) and a custom (*al-'aadat*). The *sunna* technically is a word which is a combination of a form of worship (*al-'ibaadat*) and a form of proof (*al-adaalat*).    The *sunna* with regard to worship are the supererogatory acts which the Prophet, may Allah bless him and grant him peace, practiced constantly, or it was understood by it that it was to be done continuously, even when its cause was not recurrent - like the eclipse prayer (*salaat 'l-khusuuf*). And some of the Companions added: and it was publicly demonstrated to be done in congregation (*jama'at*). The *sunna* with regard to proof is meant here everything which proceeded from the Prophet, may Allah bless him and grant him peace, (other than the Qur'an) pertaining to words, deeds or decisions. It is in accordance with this meaning that the realized ones (*al-muhaqqiqeen*) explained it. In the Minhaj al-Muntakhib it says, "That about which Muhammad, the master of mankind, was silent, his words, his deeds which were done always, or that in which he had made a decision - that is the *sunna*."

### The Scope of the Consensus (*al-ijma'*):

The scope of the consensus, it is as Abd'r-Rahman as-Suyuti said in his an-Niqaya, "It is the unanimous agreement of the *fuqaha* of the time. That means its *mujtahids* who pass legal judgments upon new occurrences which occur in any time."    In the al-Kawkab as-Saati' it says, " (Consensus) is the agreement which comes from the *mujtahids* of our *umma* after the death of Ahmed, may Allah give him peace, who give legal decisions on new issues in any time as it occurs. This is the boundary of excellent proficiency."

### The Proofs of the Obligation to Follow the Book:

As for the proofs of the obligation to follow the Book, the *Sunna*, and the Consensus, realize, and may Allah give you and us success, that following the Book is an obligation in accordance with the Book. Allah ta'ala says, "*This is a blessed scripture which We have revealed: so follow it.*"[19] Following the Book is obligatory in accordance with the *Sunna* by the words of the Messenger of Allah, may Allah bless him and grant him peace, "Verily I have left for you two admonitions. They will never mislead the one who takes hold of them. They are plain speech and silence. For plain speech is the Qur'an and silence is death." Following the Book is obligatory in accordance with the Consensus because consensus upholds that.

---

[18] He was Abu 'l-Fadl Abd'r-Rahman ibn Abu Bakr ibn Muhammad 's-Suyuti, [849-911 A.H.] a Shafi' jurist, the other of many works and was considered by many to be the *mujaddid* of the 9th century *hijra*.

[19] Quran - 6:155.

## The Proofs of the Obligation of Following the *Sunna*:

Likewise, following the *sunna* is obligatory according to the Book by the words of Allah ta'ala *"Whatever the Messenger gives you, take it. And whatever he forbids you, abstain from it."*[20] Following th *sunna* is obligatory in accordance with the *sunna* by the words of the Messenger of Allah, may Allah bless him and grant him peace, "Take hold of my *sunna* and the *sunna* of the *Khalifs*[21] after me. Hold on to them stubbornly." Following the *sunna* is obligatory in accordance with the Consensus because consensus upholds its obligation.

## The Proofs of the Obligation of Following the Consensus (*al-ijma'*):

Likewise, following the Consensus is obligatory in accordance with the Book by the words of Allah ta'ala, *"Those who oppose the Messenger after the guidance has been made clear unto him and then follows other than the way of the believers; We shall appoint him to that unto which he himself has turned, and expose him to Hell - an evil destiny."*[22] Following the consensus is obligatory in accordance with the *sunna* by the words of the Messenger of Allah, may Allah bless him and grant him peace, "My *umma* cannot agree upon an error. Take hold of the great majority. For whoever separates himself from the community even the length of a hands span, then has removed the noose of *Islam* from his neck."

If you have realized the obligation of following the Book, the *Sunna*, and the Consensus based upon what we have mentioned here, then let the weight of your actions conform with them. Question those who act by them concerning all that you desire to do. If that action is in accord with the *sunna*, then do it; if not then leave it. Here ends the explanation of the boundaries of the Book, the *Sunna* and the Consensus; and the proofs of the obligation to follow them.

O Allah! make us successful at following the *Sunna* of Your Prophet
Muhammad, may Allah bless him and grant him peace,
by his standing with You!



---

[20] Quran - 59:7.

[21] The meaning of the word *khalif* (vicegerent) here refers not only to the four Righteous *Khalifs* after the Prophet, but to everyone who is refered to in the following prophetic tradition related by Isbahaani on the authority of Anas ibn Malik, "The mercy of Allah is with my *khalifs*." It was said, "Who are your *khalifs*?" He said, "Those who give life to my *sunna* and teach it the people. Whoever gives life to my *sunna*, has given life to me. Whoever gives life to me; will be with me in Paradise."

[22] Quran - 4:115.

Classification of the Levels of Scholarship

The *Shehu*,  may Allah be merciful to him said in his Fat'hu 'l-Basaa'ir, "Realize that the division of th Muslims in this  Community of Muhammad with regard to their rank in researched insight (*tabasara*) are si [1] the *mujtahid* of the principles; [2] the  *mujtahid* of the branches; [3] the *mujtahid* of the more weigh opinion; [4] the scholar (*al-'aalim*); [5] the intermediate (*al-mutawassit*) between the scholar and the commc person; [6] the 'common person (*al-'aama*).  And for each of them there are designated characteristics whic distinguish  each from the other. . .Ahmed az-Zarruq said in his 'Umdat'l-Murid as-Saadiq after mentioning th words  of Allah ta'ala; "*Say: this is My way, I call to Allah by way of insight; I and those who follow me*." this is  an explanation that insight through investigation and research (*tabassura*) in the *deen* is  a fir foundation from among the foundations of the *deen*.   Whoever takes the matters of the *deen* from his o ignorant  opinion (*raiyihi fi 'amaaya*) is not  a follower of the Lawgiver. However, people are three kinds (meaning  after the  *mujtahids*). [1] The scholar (*'aalim*) who is well established in his researched insight fron taking  issues by seeking after the proofs, (that is if he is not a *mujtahid*). [2] The intermediate (*al-mutawassit* between the scholar and the common person.   It is  not correct to follow him except for the one who ha: researched  insight  into his affair (*tabassara fi shaanihi*).  It is also binding upon him to make known from the *shari'a*  that which he is following. Further, one cannot take from him whose knowledge from the fundamenta principles  of the  *shari'a* is vague (*yaabaahu*). This is because it is not permissible for anyone to overstep his own  knowledge  (*yata'addaa  'ilmahu*) and do not depend upon one whose knowledge is not known. [3] The common  person  (*'aamiyun*), it  is  only appropriate for him to stop with that  in which there is no doubt concerning  its reality (*maa laa yashuku fi haqeeqatihi*) from the commands of Allah and His remembrance. He should  behave  earnestly  in that about which he has no doubt. If he is not like this, then he is merely one who makes  jest and trifles with his religion. So realize!"[58] When the writings of the *Shehu* are examined throughout his  forty  years  of  erudition, it is clear to see that he began as a *muqallid* of *Imam* Malik and the 'amal of the People  of Medina,  and then  he  became as his grandson, Shaykh Abd'l-Qaadir ibn al-Mustafa, may Allah be merciful to him described him:

> "He  had  attained in that the status of *mujtahid* and was accurate in his *ijtihaad*. Thus, in that his
> preeminence,  supremacy  of his  rank  and  emergence of his station above all the scholars of his
> time  became apparent. The sign of *mahdiyya* also became clear for him due to this because it has
> been  narrated concerning  the  description  of  the  *Mahdi* that he will oppose the scholars in the
> majority of their decisions."[59]

That  is to say that the *Shehu*  had  aquired all of the sciences essential for *ijtihaad*. He mastered the Quranic  sciences,  like *qira'at* (recitation), *sabab  'n-nuzuul* (the causative factor for the descent of the verse), *an-naasikh  wa  'l-mansuukh* (the abrogating and abrogated verses), and *tafseer* (Quranic exegesis). The *Shehu* was proficient in the science of the prophetic traditions like: *'ilm 'r-rijaal ar-ruwaat* (the science of the men of narrations), the  science  of *sabbab 'l-hadeeth* (the causative factor surrounding the traditions), the science of how  to  distinguish  between  the  sound, good, weak and discarded traditions, and all  the other sciences surrounding  this science.  The *Shehu* was skilled in the linguistic sciences like: *nahyi* (grammar), *'uruud* (prosody),  *sirf* (conjugation), *bayaan* (rhetoric) and *balaagha* (eloquence). He was thoroughly familiar with the  'ijma consensus of the *mujtahid imams*  and the differences of opinion and the textual sources of these differences.  His  inttellectual achievements  were coupled with his deep piety and fear of Allah and resulted in him attaining the status of *mujtahid*. Allah ta'ala says, "*Fear Allah and Allah will teach you*."

---

[58] Fat'hu 'l-Basaa'ir, pp. 3-10.

[59] Abd'l-Qaadir ibn 'l-Mustafa, Kitaab Masaa'il 'l-Khilaaf, unpublished manuscript in the possession of the translator, p. 8.

# EXHIBIT "B-4"

First Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUN 14 2005    Due Date: JUL 27 2005

Interviewed by ____ - Antar Jannah Aug 4 2005

Based upon the warden A.P. KANE, NO. INMATES will BE RELEASED From WFTR or School to Attend Jummah Prayer. As it relates to the LAW suit At Salono state Prison which SACromento Sents A change of Policy to CTF The Procedures Concerning Jummah, Beards etc well REMAIN The SAME.

Staff Signature B. Hedrick (4) A. Jannah    Title: Muslim Chaplain    Date Completed 8/8/05

Division Head Approved:    Returned
Signature B. Hedrick    Title CBMTT    Date to Inmate AUG 09 2005

F. If dissatisfied, explain reasons for requesting a Second-Level-Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Antar Jannah response alongside B Hedrick Associate Warden promulgate an acceptable old policy which in this case continues to violates appellant's and other situated Muslims rights to wear his beard. This sets precedence to entitle declaratory relief or judgment for Appellant and other situated Muslim inmates. Because the U.S. Supreme Court's ruling in Cutter v. Wilkerson. This answer is unacceptable and dissatisfactory.

Signature Gregory Mitchell    Date Submitted 8/15/05

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned AUG 18 2005    Due Date SEP 16 2005

☐ See Attached Letter

Signature ____    Date Completed ____

Warden/Superintendent Signature    Date Returned SEP 22 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level-Review, and submit by mail to the third level within 15 days of receipt of response.

In respect to the Warden response, her notes, "Please note, CTF-Soledad is not mentioned [the U.S. Supreme Court ruling in Cutter vs Wilkerson case. Therefore, we are not regulat to follow any decision. If and when there is a change to CCR Title 15 inmate grooming standar We will adjust our policy at that time." This answer is unfounded and shreds our cornersto rights founded in the U.S.A. Constitution. This answer is inadequate and off based

DISATISFACTORY

Signature Gregory Mitchell    Date Submitted 9/29/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____
☐ See Attached Letter

Date: DEC 30 2005

CDC 602 (12/87)

EXHIBIT    "B-5"

**First Level**  ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

JUN 14 2005

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned _____ Due Date JUL 27 2005

Interviewed by ____ - Antar Jannah   Aug 4 2005

Based upon the warden A.P. KANE, NO INMATES will BE released from
WHReap School to Attend Jummiah PRayer. As it Relates to the
Law suit At Soloro state PRison which SACRomanto sents A change
of Polcy to CTF The PRecautions Concerning Jummah, BeARd Etc
will REmain The SAme,

Staff Signature B. Hedrick (4)   A. Jannah   Title Muslim Chaplain   Date Completed 8/8/05
Division Head Approved: B. Hedrick   Title CBMII   Returned
Signature                                           Date to Inmate AUG 09 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Antar Jannah response alongside B Hedrick Associate Warden promulgate an acceptable old policy
which in this case continues to violates appellant's and other situated Muslims rights to
wear his beard. This sets precedence to entitle declaratory relief or judgment for Appellant
and other situated Muslim inmates. Because the U.S. Supreme Court's ruling in Cutter v.
Wilkerson. This answer is unacceptable and dissatisfactory.

Signature Gregory Mitchell   Date Submitted 8/15/05

**Second Level**  ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

AUG 18 2005   Due Date SEP 16 2005

☒ See Attached Letter

Signature _____   Date Completed _____

Warden/Superintendent Signature _____   Date Returned SEP 2 2 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In respect to the Warden response, her notes, "Please note, CTF-Soledad is not mentioned
[the] U.S. Supreme Court ruling in Cutter vs Wilkerson case." Therefore, we are not regulat
to follow any decision. If and when there is a change to CCR Title 15 inmate grooming standar
We will adjust our policy at that time." This answer is unfounded and shreds our cornersto
rights founded in the U.S.A. Constitution. This answer is inadequate and off based
DISATISFACTORY.

Signature Gregory Mitchell   Date Submitted 9/29/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001.
Attn: Chief, Inmate Appeals

**DIRECTOR'S ACTION.**  ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____
☒ See Attached Letter

Date DEC 3 0 2005

COC 602 (12/87)

# EXHIBIT "B-6"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:   CTF APPEALS LOG # *CTF-S-05-01862*
Second Level Reviewer's Response

NAME: MITCHELL        CDC# D-44205        HOUSING:  GW209

## APPEAL DECISION:

*DENIED*

## APPEAL ISSUE:   PROPERTY

In your appeal you state the following:

1.  You request that you and other Muslim inmates be allowed to attend Jummah Prayer on Fridays between the hours of 1 PM and 3 PM, without receiving a 128A or 115.

2.  You request that you and other Muslim inmates be allowed to wear a ½ inch beard, indicating it is a tenant of the Muslim faith for whoever follows the Sunnah without receiving a 128A or 115.

Dissatisfied with the First Level Response, you submitted your appeal for a Second Level of Review, stating "Antar Jannah response alongside B. Hedrick, Associate Warden promulgate and acceptable old policy which in this case continues to violate appellants and other situated Muslim rights to wear his beard. This set precedence to entitle declaratory relief or judgment for appellant and other situated Muslim inmates. Because of the U. S. Supreme Court's ruling in Cutter v. Wilkerson. This answer is unacceptable and dissatisfactory."

## Appeal Response:

A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

1.  Allowing inmates to leave their worksite for a routine service is not an authorized use of "ETO" time.   Therefore, Inmate Work incentive guidelines do not allow an inmate to leave his job assignment for routine services, such as Jummah Prayer.  If you would like to attend Jummah Prayer, you will need to look for a job assignment that allows you to be off work during the times listed.  See; CCR Title 15 section 3045.2 (H) (4).  This portion of your appeal is denied.

2.  CCR Title 15 section 3062 (h) states, "An inmate's face shall be clean shaven at all time, except..." Religious beliefs are not listed as an exception.  Facial hair is a violation of the inmate grooming standards.  This portion of your appeal is denied.

3.  Please note, CTF Soledad is not mentioned in the Cutter v. Wilkerson case.  Therefore, we are not regulated to follow any decision.   If and when there is a change to the CCR Title 15 inmate grooming standards, we will adjust our policy at that time.

Supplemental Page
Second Level Reviewer's Response
Appeal Log# CTF-S-05-01862
Page 2 of 2

Based on the information provided in ths appeal and a review of appeal number CTF-S-05-01862 and other information gathered your appeal is DENIED.

Reviewed by:

_____

Wade Cohen
Associate Warden Business Services

9-16-05
_____
Date

_____

A. P. Kane
Warden (A)

9/16/05
_____
Date

EXHIBIT "B"?

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____    JUN 14 2005

E. REVIEWER'S ACTION (Complete within 15 working days). Date assigned: _____    Due Date: JUL 27 2005

Interviewed by: Antar Jannah Aug 4 2005

Based upon the warden A.P. KANE, NO INMATES will BE RELEASED FROM WHPCSF School to Attend Jummah Prayer. As it Relates to the LAW suit At Soledo STATE Prison. until SAcromento Sents A change of Policy to CTF The Precidures Concerning Jummah, Bennds Etc will REMAIN The SAME.

Staff Signature: B.Hedrick(AW) A. Jannah    Title: Muslim Chaplain    Date Completed: 8/8/05
Division Head Approved: B. Hedrick    Title: CBMTT    Returned Date to Inmate: AUG 09 2005
Signature:

F. If dissatisfied, explain reasons for requesting a Second Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Antar Jannah response alongside B Hedrick Associate Warden promulgate an acceptable old policy which in this case continues to violates appellant's and other situated Muslims rights to wear his beard. This sets precedence to entitle declaratory relief or judgment for Appellant and other situated Muslim inmates. Because the U.S. Supreme Court's ruling in Cutter v. Wilkerson. This answer is unacceptable and dissatisfactory.

Signature: Gregory Mitchell    Date Submitted: 8/18/05

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____    AUG 18 2005    Due Date: SEP 16 2005
☐ See Attached Letter

Signature: _____    Date Completed: _____
Warden/Superintendent Signature: _____    Date Returned: SEP 22 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In respect to the Warden response he notes, "Please note, CTF-Soledad is not mentioned [the U.S. Supreme Court ruling] in Cutter vs Wilkerson case. Therefore, we are not regulate to follow any decision. If and when there is a change to CCR Title 15 inmate grooming standar We will adjust our policy at that time." This answer is unfounded and shreds our cornersto rights founded in the U.S.A. Constitution. This answer is inadequate and off based.

DISATISFACTORY.

Signature: Gregory Mitchell    Date Submitted: 9/29/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter

Date: DEC 30 2005

CDC 602 (12/87)

EXHIBIT "B" 8

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date    **DEC 3 0 2005**

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0503681          Local Log No.: CTF 05-01862

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Burleson. All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that he is a practicing Muslim and was a plaintiff in the Mayweather vs. Terhune case. He asserts that despite removal of disciplinary action from his central file, he is not allowed to wear a short beard according to his religious faith without constant harassment from staff. The appellant requests that he, along with other situated Muslim inmates, be allowed to practice their faith by attending Jummah Prayers on Fridays between the hours of 1 p.m. and 3 p.m. without receiving disciplinary action. He also requests to be allowed to wear the 1/2 inch beard that is a key tenant of his faith without fear of disciplinary action.

II    SECOND LEVEL'S DECISION: It is staff's position that leaving a worksite for a routine religious service is not authorized under the guidelines of the work incentive program. The appellant was advised to search for a job that allows him to be off work during the hours listed. Religious beliefs are not an exemption from the Departmental grooming standards. The Cutter vs. Wilkerson case does not specifically apply to the Correctional Training Facility (CTF); therefore, the institution is not bound to follow its decision. If and when there is a change to the California Code of Regulations, Title 15, Section (CCR), inmate grooming standards, the institution will adjust policy.

III    DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.  FINDINGS: The appellant is advised that the Mayweather court decision cited is only applicable to Muslim inmates housed at California State Prison, Solano. The CDCR Office of Legal Affairs reviews court decisions pertaining to Corrections. If their legal review and evaluation of the Cutter v. Wilkerson Supreme Court decision concludes a need for change, notice will be forthcoming. The appellant is not entitled to be exempt from compliance with the grooming standards or the work incentive program regulations based upon religious beliefs. The appellant is not being denied his right to practice the Muslim faith in accordance with CCR 3210. However, he must comply with CCR 3062 and 3045.2 based upon the need to maintain the safety and security of the institution and to protect the public. The appellant is required to adhere to the departmental regulations and that failure to do so will result in the issuance of a CDC Form 115, Rules Violation Report, and may result in the forfeiture of worktime credits. The institution has responded appropriately to the appellant's issue

B.  BASIS FOR THE DECISION:
CCR: 3044, 3045.2, 3062, 3210, 3270

C.  ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

EXHIBIT "C"

STATE OF CALIFORNIA

2ND LEVEL

GROUP

DEPARTMENT OF CORRECTIO.

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1 | CTF-C 2005 | 05 - 02094 | 14-14 |
| 2 | AUG 17 2005 | 2 | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classificatio committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate sta member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supportin documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be take for using the appeals procedure responsibly

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| G. MITCHELL (Gregory) | D-44205 | WEST GATE PORTER A.M. | GW 209L |

A. Describe Problem This group appeal is based on the recent policy change on (SRD) Special Religious Diet and constant harassment, and discrimination on Muslim inmates first Amendment rights to the free exercise clause. In response to CSP-Soledad Correctional Food Manager II A.O. Amaya and Correctional Supervisor Cook I Taylor mandating a substantial burden by failing to accommodate the Islamic Faith Religious Diet. SEE EX (A) Cutter vs Wilkinson No. 03-9877. Unfortunately, Mr. Amayo and Ms. Taylor have yield to imposed burdens and have totally disregarded the agreement granted in inmate appeal (CDC 602) # CTF-C-04-000085 which Stated: instead of only one (1) cheese slice. Two (2) cheese slices will be issued when.

If you need more space, attach one additional sheet. (SEE ATTACHED SHEET TO 602)

B. Action Requested: That CSP-Soledad Food Services Officials adopt The ruling of The Supreme Court Of The United States ruling (RLUIPA) Cutter v. Wilkinson. SEE EX (A) And adhere to this court ruling by providing Halal meals for breakfast, lunch and dinner according to The Islamic Faith.

Inmate/Parolee Signature _Gregory Mitchell_                     Date Submitted: 6/28/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

BYPASS

Staff Signature _____                     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED

Signature _____                     Date Submitted _____

RECEIVED

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

JUN 29 2005

RECEIVED

JUL 22 2005

RECEIVED

JUL 29 2005

CTF APPEALS

RECEIVED

AUG 17 2005    CDC Appeal Number

05 - 02094

Supplement page of inmate appeal.

appropriate and instead of only one (1) peanut butter packet being issued when appropriate inside each SRD lunch as the meat substitute." SEE EX (B)  According to the above statement cheese and peanut butter and raisins, dry fruits, and other items where placed in the bag as an improvement for the already inadequate substitutions in the SRD lunches. Now items have been arbitrarily removed from the SRD lunches basically the same items in the general population menu lunches without any substitutions to replace the items reduced for the meat products.

Sadly Mr Amaya has had a long track record of break agreements in this area of the SRD program. Undoubtedly this is, a prefect example on his long-standing contempt  continually demonstrated toward Muslim participants in the SRD program.

In short, the attributes of discrimination by A.O. Amaya, and CSP-Food Services Staff should be access since (over the past four-years) the beginning of SRD program. As a matter of fact the O.P. 67 states the SRD program can be revised each year but no (CSP-Soledad Food Services, Muslim Chaplain or other Officials) one has tried to improve the Religious Diet Program for the Islamic Faith on their own volition since the inception of SRD Program.  Other than Muslim inmate appeals of course. SEE O.P. 67 DOM 54080. 10. menu.

In fact. DOM 54080. 14 Religious Diets Stated: " Facility shall make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require Special Religious Diets."  The law is absolutely clear now for CDC Officials alongside CSP-Soledad Officials, to provide Halal meals equal to general population meals.  Finally, what is most troubling about CSP-Soledad Correctional Food Manager II A.O. Amaya and Correctional Supervisor Cook I Taylor's decision to reduced the already inadequate substitutions for SRD program is, no memorandum was circulated prior to their decision stipulating why the SRD food items were reduced, or why any changes were necessary, and/or needed.

Respectfully submitted

Gregory Mitchell

G. MITCHELL D 44205

6/28/05

PAGE 2:

D-WING:

E-WING:

| | | |
|---|---|---|
| Johnson - H-2208 6 | E-209ᴸ | Michael Johnson |
| PIAZZA   K-86475 | E-216L | |
| JOHNSON   #07101 | E-209ᵘᴾ | |
| ᵏ JAMES LONG J-80237 | E-342 uP | |
| Holmes   C41562 | E23741 | Jerome Holmes |
| C. Smith   N-76850 | F-215 | Christopher Smith |

F-WING:

| | | |
|---|---|---|
| HANEY   D-35143 | F-Ling-254 | Haney S. |
| KENNEDY   D#30780 | F-304 | E. Kelly |
| Lemmon Evins D-74948 | F-316 | EVINS G. |

PAGE 3:

F-WING:

G-WING:

| LAUDERMILL | H24103 | GW·106ᴸ | |
| SIMMONS | K·47704 | Gw·355u | |
| GLAUDE | K·12408 | G·102ᴸ | |
| Kelly | C·01938 | G·331ᴸ | mk·(Dejena) |
| Hutchinson | T·38690 | G·256ᵘ | |
| BROASTER | B-81201 | C·350 | |
| Edwards | S·56681 | Gw#127 | |
| Blankenship | C-76829 | GW/358ᵘ | |
| Williams | K·48678 | FW/107ᴸ | |
| Sims | C-31090 | GW·353ᴸ | |

ADDITIONAL NAMES:

GROUP APPEAL

NAME:                CDC-NUMBER:           HOUSING:              SIGNATURE:

Y-WING:

Z-WING:

RICE            E-31206         ZW-118L         Steven Rice
HARMON          D-10395         Z. 303          L.L.H
DANIELS         H62186          Z. 339          Curtis Daniels

B-WING:

McClelland      H-29611         B-3354          B. McClelland

C-WING:

# EXHICIT  "C-1"

Opinion of the Court



SUPREME COURT OF THE UNITED STATES

No. 03–9877

JON B. CUTTER, ETAL.,
PETITIONERS

REGINALD WILKINSON, DIRECTOR,
OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION; ETAL.

On Writ of Certiorari to the United States
Court of Appeals for the Sixth Circuit

[May 31, 2005]

JUSTICE GINSBURG delivered the opinion of the Court.

Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 804, 42 U.S.C. §2000cc–1(a)(1)–(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." Plaintiffs below, petitioners here, are current and former inmates of institutions operated by the Ohio Department of Rehabilitation and Correction and assert that they are adherents of "nonmainstream" religions—the Satanist, Wicca, and Asatru religions, and the Church of Jesus Christ Christian. They complain that Ohio prison officials (respondents here), in violation of RLUIPA, have failed to accommodate their religious exercise

. . . in a variety of different ways, including retaliating and discriminating against them for exercising their nontraditional faiths, denying them access to religious literature, denying them the same opportunities for group worship that are granted to adherents of mainstream religions, forbidding them to adhere to the dress and appearance mandates of their religions, withholding religious ceremonial items that are substantially identical to those that adherents of mainstream religions are permitted, and failing to provide a chaplain trained in their faith. Brief for United States . . . .

For purposes of this litigation at its current stage, respondents have stipulated that petitioners are members of bona fide religions and that they are sincere in their beliefs. Gerhardt v. Lazaroff, 221 F. Supp. 2d 827, 833 (SD Ohio 2002). . . .

In response to petitioners' complaints, respondent prison officials have mounted a facial challenge to the institutionalized-persons provision of RLUIPA; respondents contend, inter alia, that the Act improperly advances religion in violation of the First Amendment's Establishment Clause. The District Court denied respondents' motion to dismiss petitioners' complaints, but the Court of Appeals reversed that determination. The appeals court held, as the prison officials urged, that the portion of RLUIPA applicable to institutionalized persons, 42 U.S.C. §2000cc–1, violates the Establishment Clause. We reverse the Court of Appeals' judgment.

This Court has long recognized that the government may accommodate religious practices without violating the Establishment Clause. Hobbie v.

Unemployment Appeals Comm'n of Fla., 480 U.S. 1, 144–145 (1987). Just last Term, in Locke v. Davey, U.S. 712 (2004), the Court reaffirmed that " 'there is room for play in the joints between' " the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements without offense to the Establishment Clause. Id., at 7 (quoting Walz v. Tax Comm'n of City of New York, 3 U.S. 664, 669 (1970)). . . "At some point, accommodation may devolve into 'an unlawful fostering of religion' " Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos, 483 U.S. 327, 334–335 (1987) (quoting Hobbie, 480 U.S., at 145). But §3 of RLUIPA, we hold, does not, on its face, exceed the limits of permissible government accommodation of religious practices.

II.

A.

RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents. Ten years before RLUIPA's enactment, the Court held, in Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872, 878–882 (1990), that the First Amendment's Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. In particular, we ruled that the Free Exercise Clause did not bar Oregon from enforcing its blanket ban on peyote possession with no allowance for sacramental use of the drug. Accordingly, the State could deny unemployment benefits to persons dismissed from their jobs because of their religiously inspired peyote use. Id., at 874, 890. The Court recognized, however, that the political branches could shield religious exercise through legislative accommodation, for example, by making an exception to proscriptive drug laws for sacramental peyote use. Id., at 890.

Responding to Smith, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. §2000bb et seq. RFRA "prohibits [g]overnment from 'substantially burdening' a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.' " City of Boerne v. Flores, 521 U.S. 507, 515–516 (1997) (brackets in original), (quoting §2000bb–1). "[U]niversal in its coverage, RFRA 'applie[d] to all Federal and State law,' " id., at 516 (quoting former §2000bb–3(a)), but notably lacked a Commerce Clause underpinning or a Spending Clause limitation to recipients of federal funds. In City of Boerne, this Court invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment. Id., at 532–536.

Congress again responded, this time by enacting RLUIPA. Less sweeping than RFRA, and invoking federal authority under the Spending and Commerce Clauses, RLUIPA targets two areas: Section 2 of the Act concerns land-use regulation, 42 U.S.C. §2000cc; §3 relates to religious exercise by institutionalized persons, §2000cc–1. Section 3, at issue here, provides that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so



by "the least restrictive means." §2000cc—1(a)(1)—(2). The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by or central to, a system of religious belief." §2000cc—5(7)(A). Section 3 applies when "the substantial burden . . . [on] religious exercise] is imposed in a program or activity that receives Federal financial assistance," or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." §2000cc—1(b)(1)—(2). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." §2000cc—2(a).

Before enacting §3, Congress documented, in hearings spanning three years, that "frivolous or arbitrary" barriers impeded institutionalized persons' religious exercise. See 146 Cong. Rec. S7774, S7775 (July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (hereinafter Joint Statement) ("Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways."). To secure redress for inmates who encountered undue barriers to their religious observances, Congress carried over from RFRA the "compelling governmental interest"/"least restrictive means" standard. See id., at S7774; Lawmakers anticipated, however, that courts entertaining complaints under §3 would accord "due deference to the experience and expertise of prison and jail administrators." Id., at S7775 (quoting S. Rep. No. 103–111, p. 10 (1993))

### B

Petitioners initially filed suit against respondents asserting claims under the First and Fourteenth Amendments. After RLUIPA's enactment, petitioners amended their complaints to include claims under §3. Respondents moved to dismiss the statutory claims, arguing, inter alia, that §3 violates the Establishment Clause. 221 F.Supp. 2d, at 846. Pursuant to 28 U.S.C. §2403(a), the United States intervened in the District Court to defend RLUIPA's constitutionality. 349 F.3d 257, 261 (CA6 2003).

Adopting the report and recommendation of the Magistrate Judge, the District Court rejected the argument that §3 conflicts with the Establishment Clause. 221 F.Supp. 2d, at 846–848. As to the Act's impact on a prison's staff and general inmate population, the court stated that RLUIPA "permits safety and security—which are undisputedly compelling state interests—to outweigh an inmate's claim to a religious accommodation." Id., at 848. On the thin record before it, the court declined to find, as respondents had urged, that enforcement of RLUIPA, inevitably, would compromise prison security. Ibid.

On interlocutory appeal pursuant to 28 U.S.C. §1292(b), the Court of Appeals for the Sixth Circuit reversed. Citing Lemon v. Kurtzman, 403 U.S. 602 (1971), the Court of Appeals held that §3 of RLUIPA "impermissibly advanc[es] religion by giving greater protection to religious rights than to other constitutionally protected rights." 349 F.3d at 264. Affording "religious prisoners rights superior to those of nonreligious prisoners," the court suggested, might "encourag[e] prisoners to become religious in order to enjoy greater rights." Id., at 266.

We granted certiorari to resolve the conflict among Courts of Appeals on the question whether RLUIPA's institutionalized-persons provision, §3 of the Act, is consistent with the Establishment Clause of the First Amendment. 543 U.S. ___ (2004). Compare 349 F.3d 257, with Madison v. Riter, 355 F.3d 310, 313 (CA4 2003) (§3 of RLUIPA does not violate the Establishment Clause); Charles v. Verhagen, 348 F.3d 601, 610–611 (CA7 2003)

(same); Mayweathers v. Newland, 314 F.3d 1062, 1069 (CA9 2002) (same). We now reverse the judg the Court of Appeals for the Sixth Circuit.

## II

### A

The Religion Clauses of the First Amendment p "Congress shall make no law respecting an establis of religion, or prohibiting the free exercise thereof." first of the two Clauses, commonly called the Establis Clause, commands a separation of church and state second, the Free Exercise Clause, requires gover respect for, and noninterference with, the religious l and practices of our Nation's people. While the Clauses express complementary values, they often conflicting pressures. See Locke, 540 U.S., at 718 ("two Clauses . . . are frequently in tension."); Walz U.S., at 668–669 ("The Court has struggled to f neutral course between the two Religion Clauses, bo which are cast in absolute terms, and either of wh expanded to a logical extreme, would tend to clash wi other.").

Our decisions recognize that "there is room for[s] the joints" between the Clauses, id., at 669, some spac legislative action neither compelled by the Free Exe Clause nor prohibited by the Establishment Clause." e.g., Smith, 494 U.S., at 890 ("[A] society that believ the negative protection accorded to religious belief car expected to be solicitous of that value in legislation . . . ."); Amos, 483 U.S., at 329–330 (Fede Government may exempt secular nonprofit activities religious organizations from Title VII's prohibition religious discrimination in employment); Sherbert Verner, 374 U.S. 398, 422 (1963) (Harlan, J., dissent ("The constitutional obligation of 'neutrality' is not narrow a channel that the slightest deviation from absolutely straight course leads to condemnation." (citat omitted)). In accord with the majority of Courts of Appe that have ruled on the question, see supra, at 7–8, we b that §3 of RLUIPA fits within the corridor between Religion Clauses: On its face, the Act qualifies as permissible legislative accommodation of religion that not barred by the Establishment Clause.

Foremost, we find RLUIPA's institutionalized-perso provision compatible with the Establishment Clau because it alleviates exceptional government-creat burdens on private religious exercise. See Board of Ed Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 68 705 (1994) (government need not "be oblivious impositions that legitimate exercises of state power m place on religious belief and practice"); Amos, 483 U.S. 349 (O'CONNOR, J., concurring in judgment) (removal government-imposed burdens on religious exercise is mo likely to be perceived "as an accommodation of t exercise of religion rather than as a Governme endorsement of religion"). Furthermore, the Act on its fac does not founder on shoals our prior decisions hav identified. Properly applying RLUIPA, courts must tak adequate account of the burdens a requeste accommodation may impose on nonbeneficiaries, see Esta of Thornton v. Caldor, Inc., 472 U.S. 703 (1985), and th must be satisfied that the Act's prescriptions are and will b administered neutrally among different faiths, see Kirya Joel, 512 U.S. 687.

"[T]he 'exercise of religion' often involves not only belief and profession but the performance of . . . physica acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and win . . ." Smith, 494 U.S. at 877. Section 3 covers state-ru institutions—mental hospitals, prisons, and the like—i



which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. 42 U.S.C. §2000cc-1(a); §1997; see Joint Statement S7775 ("Institutional residents' right to practice their faith is at the mercy of those running the institution."). RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.

We note in this regard the Federal Government's accommodation of religious practice by members of the military. See, e.g., 10 U.S.C. §3073 (referring to Army chaplains); Katcoff v. Marsh, 755 F.2d 223, 225–229 (CA2 1985) (describing the Army chaplaincy program). In Goldman v. Weinberger, 475 U.S. 503 (1986), we held that the Free Exercise Clause did not require the Air Force to exempt an Orthodox Jewish officer from uniform dress regulations so that he could wear a yarmulke indoors. In a military community, the Court observed, "there is simply not the same [individual] autonomy as there is in the larger civilian community." Id., at 507 (brackets in original; internal quotation marks omitted). Congress responded to Goldman by prescribing that "a member of the armed forces may wear an item of religious apparel while wearing the uniform, unless ... the wearing of the item would interfere with the performance of [of] military duties [or] the item of apparel is not neat and conservative." 10 U.S.C. §774(a)(b).

We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. In Caldor, the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath." 472 U.S., at 709. We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests." Id., at 710.

We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, see supra, at 5, "[c]ontext matters" in the application of that standard. See Grutter v. Bollinger, 539 U.S. 306, 327 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, e.g., 139 Cong. Rec. 26190 (1993) (remarks of Senator Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement S7775 (quoting S.Rep. No. 103-111, p. 10 (1993)).

Finally, RLUIPA does not differentiate among bona fide faiths. In Kiryas Joel, we invalidated a state law that carved out a separate school district to serve exclusively a community of highly religious Jews, the Satmar Hasidim. We held that the law violated the Establishment Clause, 512 U.S., at 690, in part because it "single[d] out a particular religious sect for special treatment," id., at 706 (footnote omitted). RLUIPA presents no such defect. It confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment.

The Sixth Circuit misread our precedent in deeming invalidation of RLUIPA as impermissibly advancing religion by giving greater protection to religious exercise than to other constitutionally protected rights. 349 F.3d, at 264. Our decision in Amos counsels otherwise. There we upheld against an Establishment Clause challenge a provision exempting "religious organizations" from Title VII's prohibition against discrimination in employment on the basis of religion. 483 U.S., at 329. The District Court in Amos, reasoning in part that the exemption improperly "single[d] out religious entities for a benefit," had "declared the statute unconstitutional as applied to secular activity," id., at 333. Religious accommodations, we held, need not "come packaged with benefits to secular entities." Id. at 338; see Madison, 355 F.3d, at 80 ("There is no requirement that legislative protections for fundamental rights march in lockstep.").

Were the Court of Appeals' view the correct reading of our decisions, all manner of religious accommodations would fall. Congressional permission for members of the military to wear religious apparel while in uniform would fall, see 10 U.S.C. §774, as would accommodations Ohio itself makes. Ohio could not, as it now does, accommodate "traditionally recognized" religions, 221 F.Supp. 2d, at 832. The State provides inmates with chaplains "but not with publicists or political consultants," and allows "prisoners to assemble for worship, but not for political rallies." Reply Brief for United States 5.

In upholding RLUIPA's institutionalized-persons provision, we emphasize that respondents "have raised a facial challenge to [the Act's] constitutionality, and have not contended that under the facts of any of [petitioners'] specific cases ... [that] applying RLUIPA would produce unconstitutional results." 221 F.Supp. 2d, at 831. The District Court, noting the underdeveloped state of the record, concluded "a finding that it is factually impossible to provide the kind of accommodations that RLUIPA will require without significantly compromising prison security or the levels of service provided to other inmates" cannot be made at this juncture. Id., at 848 (emphasis added). We agree.

For more than a decade, the federal Bureau of Prisons has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of other prisoners." Brief for United States, 24 (footnote omitted). The Congress that enacted RLUIPA was aware of the Bureau's experience. See Joint Statement S7776 (letter from Department of Justice to Senator Hatch) ("[W]e do not believe [RLUIPA] would have an unreasonable impact on prison operations. RFRA has been in effect in the Federal prison system for six years and compliance with that statute has not been an unreasonable burden to the Federal prison system."). We see no reason to anticipate that abusive prisoner litigation will overburden the operations of state and local institutions. The procedures mandated by the Prison Litigation Reform Act of 1995, we note, are designed to inhibit frivolous filings.

Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition. In that event, adjudication in as-applied challenges would be in order.

For the reasons stated, the judgment of the United States Court of Appeals for the Sixth Circuit is reversed, and the

case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[1] Petitioners Cutter and Gerhardt are no longer in the custody of the Ohio Department of Rehabilitation and Correction. Brief for Petitioners 2, n.1. No party has suggested that this case has become moot, nor has it. Without doubt, a live controversy remains among the still-incarcerated petitioners, the United States, and respondents. We do not reach the question whether the claims of Cutter and Gerhardt continue to present an actual controversy. See *Steffel* v. *Thompson*, 415 U.S. 452, 459–460, and n. 10 (1974).

[2] RFRA, Courts of Appeals have held, remains operative as to the Federal Government and federal territories and possessions. See *O'Bryan* v. *Bureau of Prisons*, 349 F.3d 399, 400–401 (CA7 2003); *Guam* v. *Guerrero*, 290 F.3d 1210, 1220–1222 (CA9 2002); *Kikumura* v. *Hurley*, 242 F.3d 950, 958–960 (CA10 2001); *In re Young*, 141 F.3d 854, 858–863 (CA8 1998). This Court, however, has not had occasion to rule on the matter.

[3] Section 2 of RLUIPA is not at issue here. We therefore express no view on the validity of that part of the Act.

[4] Every State, including Ohio, accepts federal funding for its prisons. Brief for United States 28, n.16 (citing FY 2003 Office of Justice Programs & Office of Community Oriented Policing Services Grants by State).

[5] The hearings held by Congress revealed, for a typical example, that "[a] state prison in Ohio refused to provide Moslems with Hallal food, even though it provided Kosher food." Hearing on Protecting Religious Freedom After *Boerne* v. *Flores*, before the Subcommittee on the Constitution of the House Committee on the Judiciary, 105th Cong. 2d Sess., pt. 3, p.17, n.1 (1998) (hereinafter Protecting Religious Freedom) (prepared statement of Marc D. Stern, Legal Director, American Jewish Congress). Across the country, Jewish inmates complained that prison officials refused to provide such lunches, which would enable inmates to break their fasts after nightfall. *Id.*, at 39 (statement of Isaac M. Jaroslawicz, Director of Legal Affairs for the Aleph Institute). The "Michigan Department of Corrections . . . prohibit[ed] the lighting of Chanukah candles at all state prisons" even though "smoking" and "votive candles" were permitted. *Id.*, at 41 (same). A priest responsible for communications between Roman-Catholic dioceses and correctional facilities in Oklahoma stated that there "was [a] nearly yearly battle over the Catholic use of Sacramental Wine . . . for the celebration of the Mass," and that prisoners' religious objections, "such as the Bible, the Koran, the Talmud or items needed by Native Americans[,] . . . [were] frequently treated with contempt and were confiscated, damaged or discarded" by prison officials. *Id.*, pt. 2, at 58–59 (prepared statement of Donald W. Brooks, Reverend, Diocese of Tulsa, Oklahoma).

[6] *Lemon* stated a three-part test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" 403 U.S., at 612–613 (citations and internal quotation marks omitted). We resolve this case on other grounds.

[7] Respondents argued below that RLUIPA "exceeds Congress' legislative powers under the Spending and Commerce Clauses and violates the Tenth Amendment. The District Court rejected respondents' challenges under the Spending Clause, *Gerhardt* v. *Lazaroff*, 221 F.Supp.2d 827, 839–849 (SD Ohio 2002), and the Tenth Amendment, *id.*, at 850–851, and declined to reach the Commerce Clause question, *id.*, at 858–859. The Sixth Circuit, having determined that RLUIPA violates the Establishment Clause, did not take up respondents' further arguments. See 349 F.3d 257, 259–260, 269 (2003). Respondents renew those arguments in this Court. . . . They also augment their federalism-based or residual-powers contentions by asserting that, in the space between the Free Exercise and Establishment Clauses, the States' choices are not subject to congressional oversight. See Brief for Respondents 9, 25–33; cf. *Madison* v. *Riter*, 355 F.3d 310, 322 (CA4 2003). Because these defensive pleas were not addressed by the Court of Appeals, and mindful that we are a court of review, not of first view, we do not consider them here. See *F.Hoffmann-La Roche Ltd* v. *Empagran S.A.*, 542 U.S. 155, 175 (2004); *United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 494 (2001). But cf. *post*, at 1–2, n.2 (THOMAS, J., concurring).

[8] Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories. See, e.g., *Charles* v. *Verhagen*, 348 F.3d 601, 605 (CA7 2003) (overturning prohibition on possession of Islamic prayer oil but leaving inmate-plaintiff with responsibility for purchasing the oil).

[9] See, e.g., *ibid.* (prison's regulation prohibited Muslim prisoner from possessing ritual cleansing oil); *Young* v. *Lane*, 922 F.2d 370, 375–376 (CA7 1991) (prison's regulation restricted wearing of yarmulkes); *Hunafa* v. *Murphy*, 907 F.2d 46, 47–48 (CA7 1990) (noting instances in which Jewish and Muslim prisoners were served pork, with no substitute available).

[10] Respondents argue, in line with the Sixth Circuit, that RLUIPA goes beyond permissible reduction of impediments to free exercise. The Act, they project, advances religion by encouraging prisoners to "get religion," and thereby gain accommodations afforded under RLUIPA. Brief for Respondents 15–17; see 349 F.3d, at 266 ("One effect of RLUIPA is to induce prisoners to adopt or feign religious belief in order to receive the statute's benefits."). While some accommodations of religious observance, notably the opportunity to assemble in worship services, might attract joiners seeking a break in their closely guarded day, we doubt that all accommodations would be perceived as "benefits." For example, congressional hearings on RLUIPA revealed that one state corrections system served as its kosher diet "a fruit, a vegetable, a granola bar, and a liquid nutritional supplement—each and every meal." Protecting Religious Freedom, pt. 3, at 38 (statement of Jaroslawicz).

[11] The argument, in any event, founders on the fact that Ohio already facilitates religious services for mainstream faiths. The State provides chaplains, allows inmates to possess religious items, and permits assembly for worship. See App. 199 (affidavit of David Schwarz, Religious Services Administrator for the South Region of the Ohio Department of Rehabilitation and Correction (Oct. 19, 2000)) (job duties include "facilitating the delivery of religious services" in 14 correctional institutions of various security levels throughout); Ohio Department of Rehabilitation and Correction, Tables of Organization, available at http://www.drc.state.oh.us/web/DRCORGF.pdf (department includes "Religious Services" division) (as visited May 27, 2005, and available in Clerk of Court's case file); Brief for United States 20, and n.3 (citing, *inter alia*, *Cowdrey* v. *Dallman*, 363 F.Supp. 103, 113 (SD Ohio 1997) (inmate in protective custody allowed to attend a congregational religious service, possess a Bible and other religious materials, and receive chaplain visits); *Taylor* v. *Perini*, 413 F.Supp. 189, 238 (ND Ohio 1976) (institutional chaplains had free access to correctional area)).

[12] The Sixth Circuit posited that an irreligious prisoner and member of the Aryan Nations who challenges prison officials' confiscation of his white supremacist literature, as a violation of his free association and expression rights would have his claims evaluated under the deferential rational-relationship standard described in *Turner* v. *Safley*, 482 U.S. 78 (1987). A member of the Church of Jesus Christ Christian challenging a similar withholding, the Sixth Circuit assumed, would have a stronger prospect of success because a court would review his claim under RLUIPA's compelling-interest standard. See 349 F.3d, at 266 (citing *Madison* v. *Riter*, 240 F.Supp. 2d 566, 576 (WD Va. 2003)). Courts, however, may be expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order. Cf. *Reinmann* v. *Murphy*, 897 F.Supp. 398, 402–403 (ED Wis. 1995) (concluding, under RFRA, that excluding racist literature advocating violence was the least restrictive means of furthering the compelling state interest in preventing prison violence); *George* v. *Sullivan*, 896 F.Supp. 895, 898 (WD Wis. 1995) (same).

[13] State prison officials make the first judgment about whether to provide a particular accommodation for a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies. See 42 U.S.C. §2000cc–2(e) (nothing in RLUIPA "shall be construed to amend or repeal the Prison Litigation Reform Act of 1995"); §1997e(a) (requiring exhaustion of administrative remedies).

[14] Respondents argue that prison gangs use religious activity to cloak their illicit and often violent conduct. The instant case was considered below on a motion to dismiss. Thus, the parties' conflicting assertions on this matter are not before us. It bears repetition, however, that prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area. See *supra*, at 12–13. Further, prison officials may appropriately question whether a prisoner's

religiosity, asserted as the basis for a requested accommodation, is authentic. Although RLUIPA bars inquiry into whether a particular "belief or practice is 'central'" to a prisoner's religion, the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity. Cf. *Gillette v. United States*, 401 U.S. 437, 457 (1971) ("'[T]he "truth" of a belief is not open to question'; rather, the question is whether the objector's beliefs are 'truly held.'" (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965))).

[6] See *supra*, at 13, n.12.

### THOMAS, J., concurring

#### SUPREME COURT OF THE UNITED STATES

No. 03–9877

JON B. CUTTER, ETAL.,
PETITIONERS
v.
REGINALD WILKINSON, DIRECTOR,
OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, ETAL.

On Writ of Certiorari to the United States
Court of Appeals for the Sixth Circuit
[May 31, 2005]

JUSTICE THOMAS, concurring.

I join the opinion of the Court. I agree with the Court that the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is constitutional under our modern Establishment Clause case law.[1] I write to explain why a proper historical understanding of the Clause as a federalism provision leads to the same conclusion.

### I

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." Amdt. 1. As I have explained, an important function of the Clause was to "ma[ke] clear that Congress could not interfere with state establishments." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 50 (2004) (opinion concurring in judgment). The Clause, then, "is best understood as a federalism provision" that "protects state establishments from federal interference." *Ibid.*; see also *Zelman v. Simmons-Harris*, 536 U.S. 639, 677–680 (2002) (THOMAS, J., concurring); *Lee v. Weisman*, 505 U.S. 577, 641 (1992) (SCALIA, J., dissenting). Ohio contends that this federalism understanding of the Clause prevents federal oversight of state choices within the "play in the joints" between the Free Exercise and Establishment Clauses. *Locke v. Davey*, 540 U.S. 712, 718–719 (2004). In other words, Ohio asserts that the Clause protects the States from federal interference with otherwise constitutionally permissible choices regarding religious policy. In Ohio's view, RLUIPA intrudes on such state policy choices and hence violates the Clause.

Ohio's vision of the range of protected state authority overreads the Clause. Ohio and its *amici* contend that, even though "States can no longer establish 'preferred churches'" because the Clause has been incorporated against the States through the Fourteenth Amendment, "Congress is as unable as ever to contravene constitutionally permissible state choices regarding religious policy." Brief for Respondents 26 (emphasis added); Brief for Commonwealth of Virginia etal. as *Amici Curiae* 6–13. That is not what the Clause says. The Clause prohibits Congress from enacting legislation "respecting an establishment" of religion (emphasis added); it does not prohibit Congress from enacting legislation "respecting

religion" or "taking cognizance of religion." P. Hamburger, Separation of Church and State 106–107 (2002). At the founding, establishment involved "coercion of religious orthodoxy and of financial support by force of law and threat of penalty," *Newdow*, *supra*, at 52 (THOMAS, J., concurring in judgment) (quoting *Lee*, *supra*, at 640–641 (SCALIA, J., dissenting, in turn citing L. Levy, The Establishment Clause 4 (1986))), including "governmental preferences for *particular* religious faiths," 542 U.S. at 53 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 856 (1995) (THOMAS, J., concurring)). In other words, establishment at the founding involved, for example, mandatory observance or mandatory payment of taxes supporting ministers. See 542 U.S. at 52 (THOMAS, J., concurring in judgment); *Lee*, *supra*, at 640–641 (SCALIA, J., dissenting); McConnell 2131; Levy, The Establishment Clause 10 (2d ed. 1994). To proscribe Congress from making laws "respecting an establishment of religion," therefore, was to forbid legislation respecting coercive state establishments, not to preclude Congress from legislating on religion generally.

History, at least that presented by Ohio, does not show that the Clause hermetically seals the Federal Government out of the field of religion. Ohio points to, among other things, the words of James Madison in defense of the Constitution at the Virginia Ratifying Convention: "There is not a shadow of right in the general government to intermeddle with religion. Its least interference with it would be a most flagrant usurpation." General Defense of the Constitution (June 12, 1788), reprinted in 11 Papers of James Madison 130 (R. Rutland, C. Hobson, W. Rachal, & J. Sisson eds. 1977). Ohio also relies on James Iredell's statement discussing the Religious Test Clause at the North Carolina Ratifying Convention:

"[Congress] certainly [has] no authority to interfere in the establishment of any religion whatsoever.... Is there any power given to Congress in matters of religion? Can they pass a single act to impair our religious liberties? If they could, it would be a just cause of alarm.... If any future Congress should pass an act concerning the religion of the country, it would be an act which they are not authorized to pass by the Constitution, and which the people would not obey." Debate in North Carolina Ratifying Convention (June 30, 1788), in 5 Founders' Constitution 90 (P. Kurland & R. Lerner eds. 1987).

These quotations do not establish the Framers' beliefs about the scope of the Establishment Clause. Instead, they demonstrate only that some of the Framers may have believed that the National Government had no authority to legislate concerning religion, because no enumerated power gave it that authority. Ohio's Spending Clause and Commerce Clause challenges, therefore, may well have merit. See n.2, *supra*.

In any event, Ohio has not shown that the Establishment Clause codified Madison's or Iredell's view that the Federal Government could not legislate regarding religion. An *unenacted* version of the Clause, proposed in the House of Representatives, demonstrates the opposite. It provided that "Congress shall make no laws touching religion, or infringing the rights of conscience." 1 Annals of Cong. 731 (1789); see also *Wallace v. Jaffree*, 472 U.S. 38, 96–97 (1985) (REHNQUIST, J., dissenting). The words ultimately adopted, "Congress shall make 'no law respecting an establishment of religion,'" "identified a position from which [Madison] had once sought to distinguish his own." Hamburger, *supra*, at 106. Whatever he thought of those words, "he clearly did not

mind language less severe than that which he had (previously) used." *Ibid.* The version of the Clause finally adopted is narrower than Ohio claims.

Nor does the other historical evidence on which Ohio relies—Joseph Story's Commentaries on the Constitution—prove its theory. Leaving aside the problems with relying on this source as an indicator of the original understanding, see *U. S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 856 (1995) (THOMAS, J., dissenting), it is unpersuasive in its own right. Justice Story did say that "the whole power over the subject of religion is left exclusively to the state governments, to be acted upon according to their own sense of justice, and the state constitutions." Commentaries on the Constitution of the United States 702–703 (1833) (reprinted 1987). In context, however, his statement concerned only Congress' inability to legislate with respect to religious *establishment*. See *id.*, at 701 ("The real object of the amendment was . . . to prevent any national ecclesiastical establishment, which should give to a hierarchy the exclusive patronage of the national government"); *id.*, at 702 ("[I]t was deemed advisable to exclude from the national government all power to act upon the subject. . . . It was impossible, that there should not arise perpetual strife and perpetual jealousy on the subject of ecclesiastical ascendancy, if the national government were left free to create a religious establishment").

In short, the view that the Establishment Clause precludes Congress from legislating respecting religion lacks historical provenance, at least based on the history of which I am aware. Even when enacting laws that bind the States pursuant to valid exercises of its enumerated powers, Congress need not observe strict separation between church and state, or steer clear of the subject of religion. It need only refrain from making laws "respecting an establishment of religion"; it must not interfere with a state establishment of religion. For example, Congress presumably could not require a State to establish a religion any more than it could preclude a State from establishing a religion.

II

On its face—the relevant inquiry, as this is a facial challenge—RLUIPA is not "a law respecting an establishment of religion." RLUIPA provides, as relevant: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person," first, "further[s] a compelling governmental interest," and second, "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§2000cc–1(a)(1)–(2). This provision does not prohibit or interfere with state establishments, since no State has established (or constitutionally could establish, given an incorporated Clause). Nor does the provision require a State to establish a religion: It does not force a State to coerce religious observance or payment of taxes supporting clergy, or require a State to prefer one religious sect over another. It is a law respecting religion, but not one respecting an establishment of religion.

In addition, RLUIPA's text applies to all laws passed by state and local governments, including "rule[s] of general applicability," *ibid.*, whether or not they concern an establishment of religion. State and local governments obviously have many laws that have nothing to do with religion, let alone establishments thereof. Numerous applications of RLUIPA therefore do not contravene the Establishment Clause, and a facial challenge based on the Clause must fail. See *United States v. Booker*, 543 U.S. ___, ___ (2005) (slip op., at 2) (THOMAS, J., concurring in

part and dissenting in part); *United States v. Salerno*, 481 U.S. 739, 745 (1987).

It also bears noting that Congress, pursuant to its Spending Clause authority, conditioned the States' receipt of federal funds on their compliance with RLUIPA. §2000cc–1(b)(1) ("This section applies in any case in which . . . the substantial burden is imposed in a program or activity that receives Federal financial assistance"). As noted above, n.2, *supra*, RLUIPA may well exceed the spending power. Nonetheless, while Congress' condition stands, the States subject themselves to that condition by voluntarily accepting federal funds. The States' voluntary acceptance of Congress' condition undercuts Ohio's argument that Congress is encroaching on its turf.

---

[1] The Court properly declines to assess RLUIPA under the discredited test of *Lemon v. Kurtzman*, 403 U.S. 602 (1971), which the Court of Appeals applied below. 349 F.3d 257, 262–268 (CA6 2003). *Lemon* held that, to avoid invalidation under the Establishment Clause, a statute "must have a secular legislative purpose," "its principal or primary effect must be one that neither advances nor inhibits religion," and it "must not foster an excessive government entanglement with religion." 403 U.S., at 612–613 (internal quotation marks and citation omitted). Under the first and second prongs, RLUIPA—and, indeed, any accommodation of religion—might well violate the Clause. Even laws *disestablishing* religion might violate the Clause. Disestablishment might easily have a religious purpose and thereby flunk the first prong, or it might well "strengthen and revitalize" religion and so fail the second. McConnell, Establishment and Disestablishment at the Founding, Part I: Establishment of Religion, 44 Wm. & Mary L.Rev. 2105, 2206–2207 (2003) (hereinafter McConnell).

[2] The Court discusses the parties' arguments about the federalism aspect of the Clause with the brief observation that the Court of Appeals did not address the issue. *Ante*, at 7–8, n.7. The parties' contentions on this point, however, are fairly included in the question presented, which asks "[w]hether Congress violated the Establishment Clause by enacting [RLUIPA]." Pet. for Cert. i. Further, both parties have briefed the federalism understanding of the Clause, Brief for Respondents 23–33, Reply Brief for Petitioners 12–16, and neither suggests that a remand on it would be useful or that the record in this Court lacks relevant facts. *Good News Club v. Milford Central School*, 533 U.S. 98, 119, n.9 (2001).

Also, though RLUIPA is entirely consonant with the Establishment Clause, it may well exceed Congress' authority under either the Spending Clause or the Commerce Clause. See *Sabri v. United States*, 541 U.S. 600, 613 (2004) (THOMAS, J., concurring in judgment) (for a spending clause condition on a State's receipt of funds to be "Necessary and Proper" to the expenditure of the funds, there must be "some obvious, simple, and direct relation" between the condition and the expenditure of the funds); *United States v. Lopez*, 514 U.S. 549, 587 (1995) (THOMAS, J., concurring) ("The Constitution not only uses the word 'commerce' in a narrower sense than our case-law 'might suggest,' it also does not support the proposition that Congress has authority over all activities that 'substantially affect' interstate commerce"). The Court, however, properly declines to reach those issues, since they are outside the question presented and were not addressed by the Court of Appeals.

[3] Ohio claims the benefit of the federalism aspect of the Clause, yet simultaneously adheres to the view that the Establishment Clause was incorporated against the States through the Fourteenth Amendment. Brief for Respondents 25–26. These positions may be incompatible. The text and history of the Clause may well support the view that the Clause is not incorporated against the States precisely because the Clause shielded state establishments from congressional interference. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 50–51 (THOMAS, J., concurring in judgment). I note, however, that a state law that would violate the incorporated Establishment Clause might also violate the Free Exercise Clause. *Id.*, at 53, n.4, 54, n. 5.

EXHICIT    "C-2"

State of California

# M E M O R A N D U M

Date:        July 13, 2005

To:          Mitchell, D - 44205, GW 209L

Subject:     FIRST LEVEL APPEAL RESPONSE CTF – C – 05-02094

Your appeal has been referred for First Level Review on July 13, 2005.

In your first level appeal response you are stating " . . .This is a group appeal based on the recent policy change on (SRD) Special Religious Diet and constant harassment and discrimination on Muslim inmates first Amendment right to the free. . . ."

You are requesting "That the CSP-Soledad Food Services Officials adopt the ruling of The Supreme Court Of The United States ruling (RLUIPA) Cutter v. Wilkinson. SEE EX (A) And adhere to this court ruling by providing Halal meals for breakfast, lunch and dinner according to The Islamic Faith."

J. Hodges, Assistant Correctional Food Manager (ACFM) conducted a telephone interview with you at approximately 0855 hours on July 15, 2005. Providing you the opportunity to fully explain your appeal and to provide any supporting information or documentation. Attached to your appeal are two documents; 1) Exhibit A, which is a copy of Daily Appellate Report, dated June 1, 2005. 2) Exhibit B, which is a copy of an inmate/parolee 602 appeal filed by you and dated March 17, 2004. At the time of the telephone interview, you stated, "I am just going through the process and adding defendants to the list for a Federal Lawsuit, is the appeal granted or denied?" J. Hodges, ACFM, replied to your question by stating, "Pending further investigation, a written response to your inmate/parolee 602 appeal will be sent to you." The telephone interview was concluded at approximately 0900 hours.

To respond to the action you have requested in your inmate/parolee 602 appeal, "That the CSP-Soledad Food Services Officials adopt the ruling of The Supreme Court Of The United States ruling (RLUIPA) Cutter v. Wilkinson. SEE EX (A) and adhere to this court ruling by providing Halal meals for breakfast, lunch and dinner according to The Islamic Faith." As of July 13, 2005, there is no ruling for the California Department of Corrections and Rehabilitation (CDCR) to provide Halal meals to the inmate population.

Page 2 – FIRST LEVEL APPEAL RESPONSE, APPEAL LOG # CTF-C-05-02094

Sue Summersett, Departmental Food Administrator (DFA) has stated, "CDCR offers pork free meals for the general population, a vegetarian choice for all religious needs."

Pursuant, California Department of Corrections Operations Manual, Section 54080.1, which states, "The California Department of Corrections shall supply inmates with a wholesome, nutritious and adequate diet."

Furthermore, pursuant California Department of Corrections Operations Manual, Section 54080.14, which states, "Each institution/facility shall make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require special religious diets." In addition, pursuant Title 15, section 3054 (a), the Correctional Training Facility (CTF – Soledad) has adopted the Operational Procedure 67, which offers two (2) diets, a "modified" special religious diet and a "strict" special religious diet. A copy of OP 67 has been attached to your appeal for your review.

The CTF Administration as well as the Food Service Department is sensitive to all religious groups' needs, etc.

Therefore, based on the foregoing information, your appeal is *DENIED* at the First Level Review.

A.O. Amaya
Correctional Food Manager II
CTF – SOLEDAD

B. Hedrick
Correctional Business Manager II
CTF – SOLEDAD

EXHICIT    "C-3"

CDC 602

First Level    ☐ Granted    ☐ P Granted    ☒ Denied    ☐ Other _____ Cdc Receipt

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUN 29 2005 ___ Due Date: AUG 11 2005

Interviewed by "SEE ATTACHMENT"

RECEIVED

RECEIVED

Staff Signature: ADAmaya ___ Title: CFM II ___ Date Completed JUL 19 2005

Division Head Approved: B. Heddeli ___ Returned

Signature _____ Title: CBHII ___ Date to Inmate JUL 21 2005

F. If dissatisfied, explain reasons for requesting a Second Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

In the words of Justice J. Thomas United States Supreme Court on Cutter v. Wilkinson " Respecting an establishment Religion"; it must not interfere with state establishment of religion." CSP-Soledad Officials have not provide a "relevant" reasoning how providing Halal meals for an "established" religion Al Islam has a "substantial burden" on the Department Of Corrections or CSP-Soledad? This answer is inacceptable and far off base of the Constitutionality of the Cutter decision. Gregory Mitchell

Signature Gregory Mitchell ___ Date Submitted 7/27/05

Second Level ☐ Granted    ☐ P Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: JUL 20 2005 ___ Due Date AUG 26 2005

☐ See Attached Letter

Signature _____ Date Completed _____

Warden/Superintendent Signature _____ Date Returned to Inmate _____ 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Justice Thomas stated: " For more than a decade, The Federal Bureau Of Prison (Have provide Halal meals, and other Religious accomodations) has managed the largest correctional state in the Nation under the same (C.D.C) scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of prisoners." Cutter v. Wilkerson For some (five years from inception of implementation of Special Religious Diet Program at CSP-Solsdad) years now California Department Of Corrections (C.D.C) have been aware of The Mayweather v. Newland 314 F.3d. 1062-1068 (CA 9.2002). And have choose too Substantiall burden appellant's and other situated Muslim inmates by not providing Halal meals or something equivalent as a substitute for none Halal meats. This answer is unsatisfactory.

Signature Gregory Mitchell ___ Date Submitted 8/21/05

For the Director's Review, submit all documents to: Director of Corrections

P.O. Box 942883

Sacramento, CA 94283-0001

Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

☒ See Attached Letter

Date NOV 30 2005

CDC 602 (12/87)

# EXHICIT "C-4"

|  CORRECTIONAL TRAINING FACILITY OPERATIONS PROCEDURE #67 | Subject: SPECIAL RELIGIOUS DIETS |
|---|---|
| | Reference: DOM 54080.14 & CCR 3054 |
| | Revision Due Date: JULY 2005 |
| | Responsibility: ASSOCIATE WARDEN SOUTH |

## SPECIAL RELIGIOUS DIET (SRD)

### PURPOSE AND OBJECTIVE:

To make reasonable efforts, as required by law, to accommodate those inmates who have been verified to require special religious diets.

REFERENCE: Title 15, Article 4, Religious Programs, Section 3054.

RESPONSIBILITY: The Warden has appointed the institution Chaplains to designate inmates who require Special Religious Diet (SRD).

APPROVAL AND REVIEW: This procedure is to be reviewed annually during the month of July, by the Associate Warden South Facility (A/W South) and the Chaplains, for approval by the Warden.

### METHODS:

Verification:

The designated Chaplain will verify an inmate's dietary needs. Upon verification, the Chaplain will prepare a 128B chrono, documenting the inmates special religious dietary needs and place him on the Institutional SRD List.

SRD List and SRD Identification Card (MODIFIED / STRICT)

The designated Chaplain will prepare an Institutional SRD List designating the type of SRD diet each inmate is to receive; either Modified (no meat) or Strict (no cooked or prepared foods). The SRD list must be prepared by the first day of each month signed by Chaplain and A/W-South. Distribution will be to the Food Manager, and Watch Commander of each facility. In the absence of an institutional Chaplain, the A/W-South will prepare and distribute the monthly SRD list.

The designated Chaplains will be responsible for lamination and issuance of Special Religious Diet (SRD) identification cards (ID) through Receiving and Release.

Special Religious Diet Program (Modified/Strict):

The Food Manager, in consultation with the institutional Chaplain, has developed two (2) SRD diets: Modified or Strict.

### MEAL DISTRIBUTION:

MORNING MEAL Inmates assigned to the SRD Program will eat with their respective housing unit, according to the scheduled meal release. Participants will receive their SRD breakfast and lunch.

EVENING MEAL: Inmates assigned to the SRD Program will eat with their respective housing unit, according to the scheduled meal release.



| | CORRECTIONAL TRAINING FACILITY OPERATIONS PROCEDURE #67 | Subject: SPECIAL RELIGIOUS DIETS |
|---|---|---|
| | | Reference: DOM 54080.14 & CCR 3054 |
| | | Revision Due Date: JULY 2005 |
| | | Responsibility: ASSOCIATE WARDEN SOUTH |

CONT. Special Religious Diet Program (Modified/Strict):

When approaching the service tray window, the inmate will present his SRD I.D. card to the Steam Line Officer supervising the meal. After presenting his SRD I.D. card, identified as either "Modified" or "Strict", the inmate will step aside until the appropriate tray arrives at the window. The inmate will then take his tray and proceed to his seat.

MODIFIED SRD TRAY:
Inmates whose religious beliefs do not permit them to eat certain food items will be issued a MODIFIED SRD I.D. card, and will receive a MODIFIED SRD tray. There is currently various food restrictions for inmates in a number of religions, the food exception shall be noted on the back of the SRD card. The food item most often substituted is meat.

The MODIFIED SRD diet tray will consist of the regular meal issue. However, all items from the regular meal that contain an excluded item will be substituted with a starch or vegetable food item depending on the food restriction indicated on the back of the SRD card.

The inmate will be issued a MODIFIED SRD diet lunch
The Modified SRD lunch bag will contain the same items as the regular issued day lunches however with substitutions according to restrictions. The common substitute will be peanut butter and/or cheese.

STRICT SRD DIET TRAY:
Inmates whose religious beliefs do not permit them to eat from the serving line (ex: Orthodox Jew), will be issued a STRICT SRD I.D. card, and issued a STRICT SRD tray during breakfast and evening meals.

STRICT SRD Breakfast tray will contain:
1. Two (2) boxes of dry cereal.
2. One (1) package of raw vegetables.
3. One (1) raw fruit.
4. Two (2) cartons of milk.
5. Dried fruit (optional) based on availability.
6. Package of peanut butter or cheese.
7. Two (2) pieces of bread.

\.O. AMAYA, CFM II    Central Facili

State of California

MEMORANDUM

DATE:        June 15, 2005

TO:          All Correctional Supervising Cooks
             Assigned to the Lunch Room Position

SUBJECT:     Special Religious Dietary Sack Lunches - Modified

This memorandum is generated to clarify the practice of meat substitutions for the Modified, "Special Religious Diet (SRD)" lunches that are to be issued to all inmates with a "SRD" card or are on the list awaiting the issuance of the card.

Due to budget restraints and nutritional values, strict adherence to the Standardized Menu is required by all Departmental Food Services Staff. Please, refer to the approved guidelines of CTF's Operational Procedure #67, Special Religious Diets. The following items are authorized for the substitution of the meat item:

   ❖ Cheese, American (p/s), 3 slices.
   ❖ Peanut butter, 2 oz.

Your cooperation in this matter is greatly appreciated. Please feel to contact R. Batiste, ACFM, at extension 4802 or J. Hodges, ACFM, at extension 5864, if you have any questions.

A.O. Amaya
Correctional Food Manager II
CTF – Soledad

Cc: ACFM's
    SCC's
    Butcher Shop
    File

# EXHICIT    "C-5"

State of California

# M E M O R A N D U M

Date:        August 15, 2005

To:          Mitchell, D - 44205, GW 209L

Subject:     SECOND LEVEL APPEAL RESPONSE CTF – C – 05-02094

Your appeal has been referred for Second Level Review on August 3, 2005.

In your First Level appeal the action you requested was as follows, "That the CSP- –
Soledad Food Services Officials adopt the ruling of The Supreme Court of the United
States ruling (RLUIPA) Cutter v. Wilkinson. SEE EX (A) and adhere to this court ruling
by providing Halal meals for breakfast, lunch and dinner according to The Islamic Faith."

At approximately 0855 hours on July 15, 2005, J. Hodges, Assistant Correctional Food
Manager (ACFM) conducted a telephone interview with you to respond to the action you
requested in your first level inmate/parolee 602 appeal, "That the CSP-Soledad Food
Services Officials adopt the ruling of The Supreme Court of the United States ruling
(RLUIPA) Cutter v. Wilkinson   SEE EX (A) and adhere to this court ruling by providing
Halal meals for breakfast, lunch and dinner according to The Islamic Faith." J. Hodges,
ACFM, explained to you, "As of July 13, 2005, there is no ruling for the California
Department of Corrections and Rehabilitation (CDCR) to provide Halal meals to the
inmate population."

Pursuant, California Department of Corrections Operations Manual, Section 54080.1,
which states, "The California Department of Corrections shall supply inmates with a
wholesome, nutritious and adequate diet."

Additionally, pursuant California Department of Corrections Operations Manual, Section
54080.14, which states, "Each institution/facility shall make reasonable efforts, as
required by law, to accommodate those inmates who have been verified to require special
religious diets."

The Correctional Training Facility has complied with Title 15, section 3054 (a), by
developing the Operational Procedure 67, which offers two (2) diets, a "modified" special
religious diet and a "strict" special religious diet. In addition, you were informed that Sue
Summersett, Departmental Food Administrator (DFA) has stated, "CDCR offers pork
free meals for the general population, a vegetarian choice for all religious needs."

Page 2 – SECOND LEVEL APPEAL RESPONSE, APPEAL LOG # CTF-C-05-02094

Furthermore, The CDCR Office of Legal Affairs reviews court decisions pertaining to Corrections. Upon evaluation of the legal review, the Office of Legal Affairs will issue an Administrative Bulletin notifying Institutions of a change to regulations, pending a modification to the California Code of Regulations, Title 15.

The CTF Administration as well as the Food Service Department is sensitive to all religious groups' needs, etc.

Therefore, based on the foregoing information, your appeal is *DENIED* at the Second Level Review.

W. Cohen
Associate Warden Business Services
CTF – SOLEDAD

A. Kane
Warden (A)
CTF – SOLEDAD

EXHICIT    "C-6"

First Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUN 2 9 2005 ___ Due Date: AUG 1 1 2005

Interviewed by: "SEE ATTACHMENT"

Staff Signature: _____ A.V. Amaro _____ Title: CFM II _____ Date Completed: JUL 1 9 2005

Division Head Approved: B. Hedgpeth ___ Title: CB4 II ___ Returned

Signature: _____ Date to Inmate: JUL 2 7 2005

F. If dissatisfied, explain reasons for requesting a Second Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

In the words of Justice J. Thomas United States Supreme Court on Cutter v. Wilkinson "Respecting an establishment Religion", it must not interfere with state establishment of religion." CSP-Soledad officials have not provide a "relevant" reasoning how providing Halal meals for an established religion Al Islam has a "substantial burden" on the Department Of Corrections or CSP-Soledad? This answer is unacceptable and far off base of the Constitutionality of the Cutter decision.

Signature: Gregory Mitchell ___ Date Submitted: 7/27/05

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____
☒ See Attached Letter

G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: JUL 2 9 2005 ___ Due Date: AUG 2 6 2005

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: AUG   2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Justice Thomas stated: " For more than a decade: The Federal Bureau Of Prison (Have provided Halal meals, and other Religious accommodations) has managed the largest correctional system in the Nation under the same (C.D.C) scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of prisoners." Cutter v. Wilkerson For some (five) years from inception of implementation of Special Religious Diet Program a CSP-Soledad) years now California Department of Corrections (C.D.C) have been aware of The Mayweather v. Newland 314 F.3d. 1062-1063 (CA 9 2002). And, have choose too Substantiall burden appellant's and other situated Muslim inmates by not providing Halal meals, or something equivalent as a substitute for none Halal meats. This answer is unsatisfactory.

Signature: Gregory Mitchell ___ Date Submitted: 8/21/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____
☒ See Attached Letter

CDC 602 (12/87)

Date: NOV 3 0 2005

EXHIBIT "C" 7

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **NOV 3 0 2005**

Group Appeal

In re: Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0502563          Local Log No.: CTF 05-02094

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:** It is the appellant's position that food services staff at the Correctional Training Facility (CTF) have arbitrarily made substitutions to the Special Religious Dietary (SRD) meals. He contends that no substitutions have been made for the meat products. He requests the CTF comply with the United States Supreme Court Case established in the Religious Land Use And Institutionalized Persons Act regarding Halal meals for breakfast, lunch, and dinner.

II   **SECOND LEVEL'S DECISION:** The reviewer found that the CTF has complied with the California Code of Regulations, Title 15, Section (CCR) 3054(a) by establishing Operational Procedure (OP) #67. This OP indicates that two modified religious diets are available; a Modified SRD and a Strict SRD. Additionally, the Department offers pork free meals for the general inmate population and a vegetarian choice for all religious needs. Furthermore, the Office of Legal Affairs reviews court decisions pertaining to the Department. Any legal changes will come from that office. The CTF is sensitive to the needs of all religious groups.

III   **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A.   **FINDINGS:** The appellant makes vague and very general allegations in the documentation he has included with this appeal. OP #67 outlines the criteria for Modified SRDs and Strict SRDs. The OP also includes the procedures for those inmates who have been approved for an SRD to follow when receiving their meals. The appellant shall address any concerns he has with the SRDs with staff at the time he receives his meals if there is a problem. In previous appeal Log #CTF-C-04-000085, it is evident that the institution has met with the appellant regarding the meal substitutes, and they have established a written procedure, OP #67, that addresses this issue. CTF has made a reasonable effort as required by law, to accommodate those inmates with special religious dietary needs. The appellant's taste preferences notwithstanding, the meals served are nutritionally balanced, wholesome and healthy. Based upon the documentation presented, no modification to the decision reached by the institution is required.

B.   **BASIS FOR THE DECISION:**
CCR: 3050, 3052, 3090

C.   **ORDER:** No changes or modifications are required by the institution.

The appellant shall, pursuant to CCR section 3084.2(f)(2), share this response with other inmates who signed this appeal.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:      Warden, CTF
         Appeals Coordinator, CTF

EXHIBIT "D"

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTION!

INMATE/PAROLEE
APPEAL FORM
CDC 602 (12/87)

Location    Institution/Parole Region    Log No    05 - 0 1 9 4 2    Category
1    CTF-S                              1
     AUG 0 9 2005
2                                      2    SEP 2 2 2005

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME G. MITCHELL | NUMBER D-44205 | ASSIGNMENT WEST GATE PORTER A.M. | UNIT/ROOM NUMBER GW 209 |

A. Describe Problem Appellant comes with this matter under P.C. 5009 and Senate Bill 2869 under The Religious Land Use and Institutionalized Persons Act Of 2000 c.c. 1. For years now appellant and other situated Muslim inmates have been sitting on blankets provided by CSP-Soledad, laundry room. This has remain the case and unchanged for an approximately 10 years or more. There have been unsuccessful attempts by Muslim Chaplain and other informal request. All of these request for a carpet or prayer rug to replace the state issued blankets consequent this appeal. Furthermore, seemingly there is no evidences that if CSP-Soledad Officials provided a carpet or prayer rug for the Jummah or daily prayers

If you need more space, attach one additional sheet.    (SEE ATTACHED SHEET TO INMATE APPEAL)

B. Action Requested  That CSP-Soledad Officials provide or order a carpet or prayer rug large enough for the whole Muslims population whom participate in Jummah Friday Prayers and/or participate in the prescribed five daily prayers performed in Inter-faith chapel too sit on.

Inmate/Parolee Signature  Gregory Mitchell                         Date Submitted  6/15/05

C. INFORMAL LEVEL (Date Received)

Staff Response: BYPASS

Staff Signature:                                    Date Returned to Inmate:

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response

BYPASS

RECEIVED   RECEIVED

Signature:                                                          Date Submitted:
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim     RECEIVED     RECEIVED     CDC Appeal Number
                                    AUG - 9 2005   AUG 1 8 2005   05 - 0 1 9 4 2

JUN 1 7 2005                                    SEP 2 0 2005

CTF APPEALS

Supplement page of inmate appeal.

performed in the inter-faith chapel is a "substantial burden." The relevant facts in this inmate appeal (CDC 602) show that " Jumu'ah is a commanded by the Koran/Qu'ran and must be held every friday after the sun reaches its zenith and before the Asr, or afternoon prayers see O Lone v. Estate Of Shabazz 482 U.S. 340-45 (1987).

Thus CSP-Soledad Officials, recognize the Christian faith by providing their participants with pews to sit on and the Naive American participants with fire wood, tee-pee etc... . In fact, under RLUIPA STANDARDS " No government shall impose a substantial burden on the religious exercise of a person residing in or confided to an institution... 42 U.S.C. 2000 cc-1 (a) The act applies to any " program or activity that receives Federal Financial assistance." 42 U.S.C. 2000 cc-(b) (1) (2) Also (RLUIPA) stated: " further provides that it shall be construed in favor of a broad protection of religious exercise to the maximum extent permitted by terms of this chapter and the constitution 42 U.S.C. 2000 cc-3 (g)."

Hence in view of carpet or prayer rug being provided to replace state issued blankets for Jummah Prayer Services or Islamic Faith prescribed five daily prayers performed in the inter-faith chapel. Unequivocally, is way over due and no doubt is a legitimate religious conviction connected too a central tenet of the Islamic (five daily prayers) faith. Whereupon the foregoing reasons in this inmate appeal (CDC-602) CSP-Soledad Officials should provide the way over due carpet or prayer rug for Jummah Services and five daily prayers prescribed by the Islamic Faith.

Respectfully submitted,

*Gregory Mitchell*

G. Mitchell D-44205 GW 209-L

# EXHIDIT "D-1"

First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

E  REVIEWER'S ACTION (Complete within 15 working days): Date assigned __JUN 1 7 2005__    Due Date __AUG 0 1 2005__

Interviewed by ___Antar Jannah   Aug 4th 2005___

THE muslim community is in the process of requesting from Outside muslim Masajid Donations and Carpet is on our List

Staff Signature _____    Title _Muslim Chaplain_    Date Completed _8/4/05_

Division Head Approved
Signature _B. Hedrick_    Title _CONII_    Date to Inmate _AUG 0 9 2005_

F  If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response

Sadly Mr. Jannah answer has been a pattern of fabricating fairy tales over the past ten years and has neglected the Muslim population at CSP-Soledad by subterfuge and equivocations. His track record shows a clear testimony that he is not quite forthcoming. This answer is dissatsifactory.

Signature _Gregory Mitchell_    Date Submitted _8/15/05_

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G  REVIEWER'S ACTION (Complete within 10 working days): Date assigned __AUG 1 8 2005__    Due Date __SEP 1 6 2005__
☐ See Attached Letter

Signature _____    Date Completed _____
Warden/ Superintendent Signature _____    Date Returned __SEP 2 2005__

H  If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In the case of Ms. Hedrick's answer to Second Level Response she notes " Blanket exch ___ can be initiated to take care of this concern." Indeed, blanket exchange can ___ the blankets — but somehow she overlooks the crux of the appeal particularly the purchas of a prayer underline in RLUIPA Federal funding by 72 U.S.C. 2000 cc-(b) (1). This ans doesn't address RLUIPA. I am absolutely not satisfied with this answer.

Signature _Gregory Mitchell_    Date Submitted _9/28/05_

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter    Date __DEC 3 0 2005__

CDC 602 (12/87)

# EXHIDIT "D-2"

First Level  ☐ Granted  ☑ P. Granted  ☐ Denied  ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned: JUN 17 2005   Due Date: AUG 0 1 2005

Interviewed by: ANTAR JANNAH  Aug 4th 2005

THE muslim community is in the Process of Requesting From Outside Muslim Masajid Donations and Carpet is on our list

Staff Signature: _____  Title: Muslim Chaplain   Date Completed: 8/4/05
Division Head Approved:
Signature: B. Hedrick   Title: CBMT   Date to Inmate: AUG 10 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Sadly Mr. Jannah answer has been a pattern of fabricating fairy tales over past ten years and has neglected The Muslim population at CSP-Soledad by subterfuge and equivocations. His track record shows a clear testimony that he is not quite forthcoming. This answer is dissatsifactory.

Signature: Gregory Mitchell   Date Submitted: 8/15/05

Second Level  ☐ Granted  ☑ P. Granted  ☐ Denied  ☐ Other
G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: AUG 18 2005   Due Date: SEP 16 2005
☐ See Attached Letter

Signature: _____   Date Completed: _____
Warden/Superintendent Signature: _____   Date Returned: SEP 2 2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In the case of Ms. Hedrick's answer to Second-Level Response she notes, "Blanket excha can be initiated to take care of this concern." Indeed, blanket exchange can wash the blankets, but somehow she overlooks the crux of the appeal particularly the purchas of a prayer underline in RLUIPA Federal funding by 42 U.S.C. 2000 cc-(b) (1)... This ans doesn't address RLUIPA I am absolutely not satisfied with this answer.

Signature: Gregory Mitchell   Date Submitted: 9/28/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☑ Denied  ☐ Other
☐ See Attached Letter   Date: DEC 3 0 2005

CDC 602 (12/87)

EXHIDIT   "D-3"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:   CTF APPEALS LOG # *CTF-S-05-01942*
      Second Level Reviewer's Response

NAME: MITCHELL        CDC# D-44205       HOUSING:  GW209

APPEAL DECISION:

*PARTIALLY GRANTED*

APPEAL ISSUE:   Program

In your appeal you state the following:

1.  You request that CTF purchase prayer rugs or a carpet for the Jummah Prayer for use in the chapel
    to replace the blankets that are currently provided for the same purpose.

2.  You request the prayer rug or carpet to be large enough for the entire Muslim population.


Dissatisfied with the First Level Response, you submitted your appeal for a Second Level of Review, stating
"Sadly, Mr. Jannah's answer has been a pattern of fabricating fairy tales over the past ten years and has
neglected the Muslim population at CSP-Soledad by subterfuge and equivocations.  His track record shows a
clear testimony that he is not quite forthcoming.  This answer is dissatisfactory."

Appeal Response:

A thorough review of your appeal's package and all of your attachments has been completed and reveals
the following:

1.  Chaplain Jannah is attempting to get donations from the Muslim Community, of prayer rugs, or
    carpets for use in the chapel during Jummah Prayer.  This portion of your appeal is partially granted.

2.  One prayer rug or carpet that would fit the entire Muslim population is not authorized at this facility.
    This portion of your appeal is denied.

3.  In your discussion with Ms. Hedrick, the Correctional Business Manager II, you indicated blankets
    are not sufficient for cleanliness reasons.  A blanket exchange can be initiated to take care of this
    concern.  They blankets can then be laid on the floor overlapping to allow all of the attendee's at the
    Jummah Prayer to be together on one floor covering.  I believe this would satisfy your request.

Based on the information provided in this appeal, a review of appeal number CTF-S-05-01942 and other
information gathered your appeal is Partially Granted.

Reviewed by:

Supplemental Page
Second Level Reviewer's Response
Appeal Log# CTF-S-05-01942
Page 2 of 2

_____                          9-16-05
Wade Cohen                                        Date
Associate Warden Business Services

_____                          9/19/05
A. P. Kane                                        Date
Warden (A)

EXHIDIT    "D-4"

First Level   ☐ Granted   ☑ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days). Date assigned: JUN 17 2005 _____ Due Date: AUG 01 2005

Interviewed by: Antar Jannah   Aug 4th 2005

THE Muslim community is IN the Process of requesting FRom Outside Muslim Masajid Donations and CARpet is on our list

Staff Signature _____  Title: Muslim Chaplain   Date Completed: 8/4/05
Division Head Approved:
Signature: B. Hedrick   Title: CCII   Date to Inmate: AUG 09 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Sadly Mr. Jannah answer has been a pattern of fabricating fairy tales over past ten years and has neglected the Muslim population at CSP-Soledad by subterfuge and equivocations. His track record shows a clear testimony that he is not quite forthcoming. This answer is dissatisfactory.

Signature: Gregory Mitchell   Date Submitted: 8/15/05

Second Level   ☐ Granted   ☑ P. Granted   ☐ Denied   ☐ Other
G. REVIEWER'S ACTION (Complete within 10 working days). Date assigned: AUG 18 2005   Due Date: SEP 16 2005

☐ See Attached Letter
Signature _____   Date Completed _____
Warden/Superintendent Signature _____   Date Returned to Inmate _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

In the case of Ms. Hedrick's answer to Second Level Response she notes: "Blanket exchange program ... can be initiated to take care of this concern." Indeed, blanket exchange can wash the blankets, but somehow she overlooks the crux of the appeal particularly the purchase of a prayer rug underline in RLUIPA Federal Funding by 42 U.S.C. 2000 cc-(b) (1). This ans doesn't address RLUIPA I am absolutely not satisfied with this answer.

Signature: Gregory Mitchell   Date Submitted: 9/29/05

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other _____
☑ See Attached Letter                                       DEC 30 2005
CDC 602 (12/87)                                        Date: _____

EXHIDIT     "D-5"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **DEC 3 0 2005**

In re: Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0503680          Local Log No.: CTF 05-01942

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Burleson. All submitted documentation and supporting arguments of the parties have been considered.

I   APPELLANT'S ARGUMENT: It is the appellant's position that the institution has recognized the Christian faith by providing pews to sit on, and the Native American's are provided firewood, sweat lodge, etc., yet the Muslim faith has not been provided a prayer rug. The appellant requests that the institution provide a carpet/prayer rug large enough for the whole Muslim population whom participate in Jummah Friday Prayers and/or participate in the prescribed five daily prayers performed in the Inter-Faith Chapel, to sit on.

II   SECOND LEVEL'S DECISION: The reviewer found that the Muslim community is in the process of requesting from outside Muslim Masajid donations and carpet is on the list of requested items. The Muslim population is presently provided with blankets, which can be laid on the floor overlapping to allow all of the attendee's at the Jummah Prayer to be together on one floor covering. If cleanliness is the root concern, the institution offered to initiate an exchange.

III   DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.   FINDINGS: In this case, the documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the Second Level of Review. There is no evidence that supports the appellant's contention that Muslim religious programs is being subjected to discrimination and that blankets are insufficient. Justification for intervention at the Director's Level of Review has not been established.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

B.   BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3210, 3213, 3270

C.   ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, CTF
Appeals Coordinator, CTF

EXHIEIT    "E"

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

TREAT AS ORIGINAL

Location: Institution/Parole Region

Log No. 05-02433    Category

OCT 28 2005

1. _____  2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| G MITCHELL (Gregory) | D44205 | WEST GATE PORTER A.M. | HW 209L |

A. Describe Problem: This is pursuant C.C.R. Title 15 3084. 5 (b)(1) (2) " a policy of procedure implemented by the institution head. A policy procedure or regulation implemented by the the department." Also see Sec. 3 of the Religious Land Use and Institutionalized Person Act of 2000 (RLUIPA) 42. U.S.C. 2000 cc-1 (a) (1) (2) " provides in part " no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the burden furthers " a compelling government interest," and does so by " the least restrictive means." The new policy concerning Special Food Items For Religious Events purports the cost per meal for lunch or dinner be reduced to ¢ 85 cent per person is in conflict with (RLUIPA) 2000 cc 1 (a) (1) (2) See Memo Ex (A)

If you need more space, attach one additional sheet.

B. Action Requested: That the ¢85 per meal be increased to $ 5.00 dollars per meal for Special Religious Events i.e. the two Eid banquets and The Holy Month Of Ramadhan (30 days of fasting) " The First Amendment to the Constitution protects the free exercise of religion. Appellant faith Al Islam has no question involving " Religiosity". Thus to reduce the base cost per meal to ¢85 is not a substantial burden on CSP-Soledad Officials.

Inmate/Parolee Signature: *Gregory Mitchell*    Date Submitted: 7/24/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS RECEIVED

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number:

NOV 1 0 2005    DEC 2 0

CTF APPEALS    05-02433

# EXHIBIT "A"

State of California                                                    Department of Corrections

# M e m o r a n d u m

**Date**         : June 3, 2005

**To**           : All Inmates

**Subject**      : SPECIAL FOOD ITEMS FOR RELIGIOUS EVENTS

Effective July 1, 2005, CTF will begin to adhere to CCR Title 15 Section 3053 Special Food for Religious Events. This section reads:

> Authorized inmate religious groups may be permitted no more than two events each year where special foods with religious significance are provided to them by the facility in place of the regularly planned meal. The value of such meal for a religious event shall not exceed that of the meal replaced. The religious group's request for special foods shall be directed to the institution head at least four weeks before the event and shall include the proposed menu and number of persons to be served.

Religious banquets will no longer be provided at a dollar cost that exceeds what is currently allotted for the meal being replaced. The cost per meal of a lunch or dinner meal, currently, is approximately $.85 (cents). Therefore, no religious meals will be provided by the institution at a cost greater than $.85 (cents) per person.

Should your event coordinator feel that additional food items are necessary for the Religious event, it will be their responsibility to request the items necessary and indicate the anticipated payment method with the Warden's approval. This will most likely require a donation from the Religious organization in the community.

Should you have any questions regarding this memorandum, please direct your questions through the Religious leader of the organization to A. Amaya, Correctional Food Manager II.

A.P. KANE
Warden (A)
CTF

EXHIEIT   "E-1"

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUL 2 9 2005    Due Date: SEP 1 2 2005

Interviewed by: _I interviewed Mr Mitchell On Oct 27 2005_

**TREAT AS TAEFT**

_The DOM inforces The cost of the meals. My Dept can_
_not raise the amount. There is no justification for this._

Staff Signature: _Antar U/annah_    Title: _Muslim Chaper_    Date Completed: _Oct 27, 2005_

Division Head Approved: _B. Hedrick_    Title: _CBM II_    Returned Date to Inmate: OCT 28 2005

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

[RLUIPA] 2000cc-1 (a) (1)-(2) "religious exercise" is to include "any exercise of religion , whether or not compelled by, or central to, a system of religious belief." 2000 cc-5 (7)(A) section 3 applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance" in this instances the new policy of ¢85 cent is a substantial burden on Muslims religious banquets.    11/9/05

Signature: _Gregory Mitchell_    Date Submitted: 11/9/05

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____ DEC 13 2005

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: NOV 10 2005    Due Date: DEC 13 2005

☒ See Attached Letter

Signature: _____    Date Completed: 12-14-2005

Warden/Superintendent Signature: _(W) (4)_    Date Returned to Inmate: 12-15-2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

It's obvious that CTF-Soledad Officials alongside C.D.C Official continue to overlooked any U.S. Supreme Court or 9th Circuit decisions e.g. Cutter v. Wilkihson No 03-9877 routing: " 2000 cc-5 (7) (A). Section 3 applies when The substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance. CDC receives federal assistance and this not within a penological interest because prior too this new policy CTF-Soledad Officials allotted $.750.00 dollars for the Muslim Eid celebrations and with this new policy provides least than $ 130.00 dollars. This answer is unsatisfactory and irrational.

Signature: _Gregory Mitchell_    Date Submitted: 1/5/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter    MAR 2 8 2006
Date: _____

CDC 602 (12/87)

EXHIEIT    "E-2"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

## S U P P L E M E N T A L   P A G E

**RE:** CTF APPEALS LOG # *CTF-C-05-02433*
Second Level Reviewer's Response

**NAME: MITCHELL**      **CDC# D-44205**      **HOUSING:   G-Wing 209-L**

## INTERVIEWED BY:

A. Jannah, Muslim Chaplain

## APPEAL DECISION:

### *DENIED*

## APPEAL ISSUE:   PROGRAM

In your appeal you state that you have the right to any exercise of religion, whether or not compelled by or central to a system of religious belief. You state that the $.85 rule imposed is a substantial burden on the Muslim's religious banquets.

## REQUESTED ACTION:

You are requesting the price per meal be increased from $.85 to $5.00 for special religious events such as the two EID banquets and the Holy Month of Ramadan (30days of fasting). You are basing your argument on the First Amendment to the Constitution protecting the free exercise of religion. You also indicate the RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution.

## Appeal Response:

The State of California allots $2.51 per inmate per day to feed the individuals incarcerated within the California Department of Corrections and Rehabilitation. This is to provide 3 meals each day. The average amount per meal is set at $.837. We have successfully accomplished this for years. In accordance with CCR, Title 15 section 3053, this institution allows up to two events per year in which special foods with religious significance are provided in place of the regularly planned meal. The value of such meal shall not exceed that of the meal replaced. We also allow up the special events and Ramadan to take place.

You have failed to demonstrate how this has an adverse effect on you or your ability to freely exercise your religious beliefs.

Supplemental Page
Second Level Reviewer's Response
Appeal Log# CTF-05-02433
Page 2 of 2

Based on the information provided in this appeal and a review of appeal number CTF-C-05-02433 and other information gathered **your appeal is DENIED.**

_____          12-14-2005
P. BARKER                                          Date
Chief Deputy Warden

_____          12-15
A. P. KANE                                          Date
Warden (A)

# EXHIEIT "E-3"

First Level     ☐ Granted     ☐ P. Granted     ☒ Denied     ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: JUL 2 0 2005     Due Date: SEP 2 2005

Interviewed by: _I interviewed Mr Mitchell on Oct 27 2005_

*RECEIVED AS TAFT*

The DOM inforces the cost of the meals. My Dept can not raise the amount. There is no justification for this.

Staff Signature: _Antar U/annah_     Title: _Muslem Chaplan_     Date Completed: _Oct 27, 2005_

Division Head Approved:
Signature: _B. Hedrick_     Title: _CBM II_     Returned
Date to Inmate: _OCT 28 2005_

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

[RLUIPA] 2000cc-1 (a) (1)-(2) "religious exercise" is to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 2000 cc-5 (7)(A) section 3 applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance" in this instances the new policy of $85 cent is a substantial burden on Muslims religious banquets.

Signature: _Gregory Mitchell_     Date Submitted: 11/9/05

Second Level     ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other     NOV 10 2005

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____     Due Date: DEC 13 2005

☒ See Attached Letter

Signature: _____     Date Completed: 12-14-2005

Warden/Superintendent Signature: _Ln Q(4)_     Date Returned to Inmate: 12-2005

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

It's obvious that CTF-Soledad Officials alongside C.D.C Official continue to overlooked any U.S. Supreme Court or 9th Circuit decisions e.g. Cutter v. Wilkinson No 03-9877 routing: " 2000 cc-5 (7) (A). Section 3 applies when the substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance. CDC receives federal assistance and this not within a penological interest because prior too this new policy CTF-Soledad Officials alloted $ 750.00 dollars for the Muslim Eid celebrations and with this new policy provides least than $ 130.00 dollars. This answer is unsatisfactory and irrational.

Signature: _Gregory Mitchell_     Date Submitted: 1/5/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other
☒ See Attached Letter

Date: MAR 2 8 2006

CDC 602 (12/87)

EXHIEIT    "E-4"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **MAR 2 8 2006**

In re:    Mitchell, D-44205
          Correctional Training Facility
          P.O. Box 686
          Soledad, CA 93960

          IAB Case No.: 0507431        Local Log No.: CTF 05-02433

This matter was reviewed on behalf of the Director of the California Department of Corrections and
Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and
supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that the new policy concerning Special Food
Items For Religious Events is in conflict with Religious Land Use and Institutionalized Persons Act. He
requests that the meals for the special religious events be increased from $.85 to $5.00.

**II   SECOND LEVEL'S DECISION:** The reviewer found that appellant has failed to demonstrate how this has
an adverse effect on his ability to freely exercise his religious beliefs. The Department has for years
successfully provided three meals each day by using the established average amount of money allotted for
each meal. The institution is providing two events per year in which special foods with religious significance
are provided in place of regularly planned meals. The value shall not exceed that of the meal replaced.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.  FINDINGS:** The appellant has not established that a substantial burden has been placed on his choice
   to exercise his religious freedom in this matter. He has not demonstrated that departmental policy or the
   law has been violated. There is no evidence to indicate that the cost cited for religious meals has been
   falsified or that the meals served do not meet the intent of the California Code of Regulations, Title 15,
   Section (CCR) 3053. No relief at the Director's Level of Review is warranted.

   **B.  BASIS FOR THE DECISION:**
   CCR: 3001, 3053, 3054, 3210, 3300, 3301, 3380, 3383

   **C.  ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
       Appeals Coordinator, CTF

EXHIFIT   "F"

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

2ND LEVEL

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region    CTF-C    Log No. 0 6 - 0 0 5 3 3    Category 5-15

1. _____    1. _____

2. MAR 23 2006    2. APR 26 2006

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME  G. MITCHELL, Gregory | NUMBER D71285 | ASSIGNMENT  WEST GATE PORTER A.M. | UNIT/ROOM NUMBER  GWL 209L |
|---|---|---|---|

A. Describe Problem: This appeal is in congruent to appellant's pro se civil rights compliant # C-05-2432 TEH (PR) under 42 U.S.C 1983 28 U.S.C. 1367 also (RLUIPA) 42 U.S.C. 2000 cc in relations to an adverse policy which violates appellant's and situated Muslims first amendment rights to free exercise of their religion, as well as their fourteenth amendment right to equal protection of the law. In this case, appellant is being impermissibly burdened by CTF-officials by limiting appellant's and other situated Muslim inmates ability to order/purchase religious artifacts See Ex. (A). The fact is, there has been a long-standing policy of having a limit on purchasing religious artifacts from one vendor Broadworld Fragrance and a four (4) ounce limit, and four (4) fragrance limit annually every six (6) months. There has not been any justification reasonably related to a legitimate penological

If you need more space, attach one additional sheet.    (SEE ATTACHED SHEET)

B. Action Requested:    That no limits be on the fragrances and instead of 4 ounce limit every six months be modified to four ounce every three months. And religious artifact vendors be added e.g. Garden of Fragrance, Halveh Book shop, The Helper's of Mohammed Books and Things.    Please state a legitimate penological interest in why this appeal can not be granted.

Inmate/Parolee Signature: _Gregory Mitchell_    Date Submitted: 3/27/4506

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED

Signature: _____

RECEIVED    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

FEB 23 2006

CTF APPEALS

APR 2 6 2006

CTF APPEALS

CDC Appeal Number:

0 6 - 0 0 5 3 3

ADDITIONAL PAGE TO INMATE APPEAL

interest see Freeman v. Arpaio F. 2d. 732, 736 (9th Cir 1997). In this sense, CTF-Soledad Officials are clearly acting under the color of state law.

Appellant is seeking to develop a record base on facts that show CTF-Soledad Officials are forcing him to order/purchase religious artifacts from one vendor. In addition, which substantially burdened appellant's rights under equal protection of religious exercise, because general population inmates are afforded a variety of package vendors compared to appellant being force and limited to order religious artifacts from one vendor.

At the end, one vendor and limits placed on appellant is not the least restrictive means of furthering compelling governmental interest. Whereas, this policy violates appellant's First Amendment right to free exercise of religion as well as the Religous Land Use and Institutionalized Person Act (RLUIPA). In fact, CTF-Soledad Officials can grant this grievance to accommodate appellant's religious rights under (RLUIPA).

1. SMITH                    D-89280                    BW-130

2. HUNDLEY                  C-65838                    GW-316

3. EVANS                    D-19360                    GW-237

4. Wesley                   J-46248                    GW-350

5. WILLIAMS                 C-09038                    GW-116

6. GLAUDE                   K12408                     GW-138

7. SIMMONS                  K47704                     GW-109

8.

9.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# CORRESPONDENCE REFERRAL

CDC 972 (03/02)

| | YACA TRANSMITTAL NUMBER | CCU NUMBER |
|---|---|---|
| | | 05-30 |

| ASSIGNED TO | DATE ASSIGNED: | DATE DUE: |
|---|---|---|
| INSTITUTIONS DIVISION | 1/4/2005 | 2/10/2005 |

THE ATTACHED CORRESPONDENCE IS REFERRED TO YOU FOR ACTION AS INDICATED

FROM: D-44205 MITCHELL

REGARDING: MUSLIM ARTIFACTS

Institution:

CTF

TYPE OF ACTION:

PACKAGING INSTRUCTIONS:

SMALL

LARGE ACTION - Return one copy of your response and the original CORRESPONDENCE REFERRAL (with the DISPOSITION SECTION completed) to the Correspondence Control Unit.

SMALL ACTION - Return only the original CORRESPONDENCE REFERRAL (with the DISPOSITION SECTION completed) to the Correspondence Control Unit.

| DISPOSITION SECTION | SPECIAL INSTRUCTIONS TO RESPONDING DIVISION |
|---|---|

MUST BE COMPLETED PRIOR TO RETURNING TO CCU

Type of Response:

☐ Letter/memo        ☐ E-Mail

☐ Telephone call. Please note discussion in the space below:

☐ No response necessary. Note reason no response was necessary in space below:

☐ Copy of YACA referral sheet and completed correspondence sent to YACA.

RESPONDED TO BY OR DETERMINED NO RESPONSE NEEDED BY:

PRINT OR TYPE NAME

RESPONSE DATE:

JAN 2005
RECEIVED
BY INSTITUTIONS
DIVISION

REASSIGNMENT INSTRUCTIONS: NOTIFY Correspondence Control Unit and reassigned Division IMMEDIATELY if this referral is reassigned. Phone: (916) 323-0962, or E-mail

Reassigned to: _____

Date Correspondence Control Unit notified of reassignment: _____

HAND CARRY OR MAIL IMMEDIATELY TO REASSIGNED UNIT

☐ TO: CORRESPONDENCE CONTROL UNIT, 1515 S St., Rm 124 S, Sacramento, CA 95814
(X-MARK HERE TO RETURN COMPLETED ASSIGNMENT TO CORRESPONDENCE CONTROL UNIT.)

Read By: JJ        Assigned By: LA

State of California
Department of Corrections

# Memorandum

Date:    February 3, 2005

To:    Inmate Gregory Mitchell
       D-44205
       G-243

Subject: REQUEST FOR EXTENSION OF MUSLIM ARTIFACTS

This is to acknowledge receipt of a Correspondence Referral from the Institutions
Division regarding your Request for Interview, dated January 27, 2004 to Antar
Jannah, Muslim Chaplain.

Your letter indicates you want to know the outcome of the meeting with the
Warden on October 14, 2004 regarding the extension of prayer oil fragrances.
Be advised that Mr. Jannah was unable to attend the scheduled quarterly
Chaplain's meeting with the Warden regarding this issue.

However, as the Religious Program Coordinator, I met with Mr. Jannah regarding
the extension of prayer oil fragrances. I asked the specific questions listed below:

1. Can the Muslims practice their prayers with the existing oils being used?
   The answer was yes.

2. Is the request for more oils and vendors to be added a requirement for
   practice of the faith? He indicated that additional oils and vendors are not
   a requirement. The request is a desire.

3. I asked if there were any or would there be any violations of the Muslim
   Religious practices if the request were to be denied. He indicated that the
   Muslim inmates would still be able to practice their religion without
   additional prayer oils or vendors.

Therefore, based on the above statements, there is no need to approve additional
oils or vendors as the existing vendors are adequate to meet the needs of the
Muslim inmate population.

P. MANDEVILLE
Associate Warden
Religious Programs

REQUEST FOR INTERVIEW

DATE: Dec 27, 2004

TO: Muslim Chaplain Mr. Junnah

SUBJECT: Request For Extension Of Muslim Artifacts.

This request for interview is regarding a response from Associate Warden P. Madeville Religious Programs, Per A.P. Kane Warden Of CTF Soledad. I 've attached copies of each document concerning this long awaited process of extending the selections of prayer oil fragances and additional vendors.

Accordingly, to the response's of P. Mandeville A.W. Religious Programs dated on Oct 4, 04 a meeting had been scheduled with you on October 14, 2004 for the purpose to make a decison on the possibilities, of extending the aforementioned Religious Artifacts.

In likeness of you delegating your authority as The Muslim Chaplain, what is your summary on the process of this three month old meeting? And more importantly, when do you think you'll at least achieve the goal of meeting with the Associate Warden Of Religious Programs, on extending the oil fragrances and the vendors? I await your response.

Cc. J. Woodford, Director of Corrections
      P.Madeville A.W. Religious Programs CTF Soledad
      A.P. Kane Warden CTF Soledad
      Antar Junnah, Muslim Chaplian CTF Soledad

P.S. ..." If possible could you please send your response's in writing."

Respectfully, yours
Gregory Mitchell D 44205 GW 243-Up

*Gregory Mitchell D44205*
*12/27/04*

State of California                                                    Department of Corrections

# Memorandum

Date : August 27, 2004

To   : A.P. Kane, Warden (A)
       Correctional Training Facility

Subject : VENDORS FOR RELIGIOUS SPECIAL PURCHSE

    I'm requesting that the below religious (3) vendors be
approved to supply the Muslim Community with religious artifacts
per CTF Operation Procedure #42, 53050.  Muslim inmates are
currently allowed to purchase from Broadworld Fragrance.  The
inmates are allowed to purchase a maximum of four (4) one ounce
ceremonial prayer oils from this vendor.  I'm requesting that the
maximum be extended to eight (8) one ounces, (quartely packages
from Walkenhorst allow 9 oz.)  I'm requesting six (6) additional
fragrances that will bring the maximum total of ten (10)
frangrances that the inmates be allowed to select from.

    Thank you.

## VENDORS:

GARDEN OF FRANGRACE                  DAWAH BOOK SHOP
1960 A 54TH. STREET                  4801 SOUTH CRENSHAW BLVD.
SAN DIEGO, CA.  92115                LOS ANGELES, CA. 90043
or P.O. BOX 152513                     Ph. (323) 299-0335
    SAN DIEGO, CA. 92115               FAX: (323) 299-4434
Ph. (619) 527-1307   FAX: (619) 527-2101


The Helper's Of Muhammad - Books and Things
674 San Juan
Venice, CA.  90291
Ph. (310) 925.2071

## FRAGRANCES:

1) Frakensence & Myrrh      4) Mecca
2) DRAKKAR                  5) Medina Musk
3) Kush                     6) Timbuctu

Imam Antar Jannah                        Approve / Disapprove
Muslim Chaplain
Correctional Training Facility            W. Cohen
                                          Associate Warden
                          RECEIVED        CTF South Facility

Approve / Disapprove
                          2004 SEP -1  P 12: 05

A.P. Kane, Warden (A)
Correctional Training Facility WARDENS OFFICE
                               CTF SOLEDAD                    AUG 3 1 2

Gregory Mitchell D44205
P.O. Box 689 G-243
Soledad CA 93960

September 13, 2004

A.P. Kane
Warden
Correctional Training Facility

Dear A.P. Kane:

Peace Be With You.

This letter is regarding to a personal conversation you and I had near the West End of the
Central Facility Corridor a month or so ago. You and I discussed the possibility of
extending the Muslim population's Religious Artifacts, specifically, the prayer oil
fragrances selection, which at that time was four and the amount of four ounces could be
purchased. At this present time, this has been extended to six additional fragrances for a
total of ten, and the additional four ounces extending to a total of eight and four
additional vendors to order from. In actuality after our discussion a month ago or so you
stated, *"I am one Warden that is willing to help. Have your Muslim Chaplain to write
up the proposal and I'll give it a honest look."* Verily your words were true and we the
signed on this letter would like to personally thank you for assisting and facilitating this
particular issue. We would also like to extend our gratitude to those who assisted you on
this matter, Associate Warden Mr. Cohen and the Muslim Chaplain Antar Jannah and all
others who assisted.

Respectfully submitted,

*Gregory Mitchell*
Gregory Mitchell

P.S. The best of Salutations of Peace and hopefully you and your staff will attend our
belated Eid Banquet on October 2, 2004 and in the up-coming Banquets.

Cc:  J. Woodford, Director of Corrections
     W. Cohen, Associate Warden, CTF
     Antar Jannnah, Muslim Chaplian, CTF
     J. White, Receiving & Release, CTF

# Memorandum

Date:    October 4, 2004

To:    Inmate Gregory Mitchell
D-44205
G-243

Subject: REQUEST FOR EXTENSION OF MUSLIM ARTIFACTS

This is to acknowledge receipt of your letter to A. P. Kane, Warden, dated September 13, 2004 regarding a previous conversation with Mr. Kane relative to extending Muslim Religious Artifacts, specifically, the prayer oils. Your letter has been assigned to P. Mandeville, Associate Warden and Coordinator of Religious Programs at CTF.

P. Mandeville will be conducting a meeting with the Chaplains on October 14, 2004. At that time the feasibility of extending the number of prayer oils will be discussed. The Muslim Population will be advised via written documentation of the decision. If you have additional information you would like to have presented, please submit it to you Chaplain for discussion at the meeting.

P. Mandeville

P. MANDEVILLE
Associate Warden
Religious Programs

EXHIBIT "F-1"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

<u>RE:</u>   CTF APPEALS LOG # *CTF-C-06-00533*
First Level Reviewer's Response

NAME: MITCHELL        CDC# D-44205        HOUSING:   GW 209

<u>INTERVIEWED BY:</u>        B. Hedrick, Correctional Business Manager II
Religious Coordinator

<u>APPEAL DECISION:</u>

*PARTIALLY GRANTED*

<u>APPEAL ISSUE:</u>    PROGRAM

You feel that based upon RLUIPA placing limits on the amount of religious artifacts you are authorized to purchase and restricting the vendor you are allowed to purchase the religious artifacts from is a violation of your First Amendment right to free exercise of religion.

1.    You would like there to be no limits on the types of fragrances allowed as religious artifacts.
2.    You would like the quantity of oils increased from four ounces every six months to four ounces every three months.
3.    You would like additional vendors added for religious artifacts.
4.    You would like a legitimate Pena logical interest as to why this appeal can not be granted.

<u>APPEAL RESPONSE:</u>

You were interviewed by B. Hedrick Correctional Business Manager II and Religious Coordinator. A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

1.  Limits have been placed on the types of fragrances allowed for religious artifacts, as inmates were using this as an opportunity to buy many types of cologne for other than religious purposes. The types of fragrances were determined by the Muslim Chaplain and the Administration to ensure the appropriate fragrances with religious significance were still being authorized.
2.  Quantities of the fragrance oils are limited to the amount necessary for religious purposes. The religious oils are not to be used for other than the intended religious use. Any other use of fragrances would need to be purchased through the canteen or special purchases.
3.  You state that you should have multiple vendors for religious artifacts as there are three vendors authorized for quarterly packages. You have the use of those same three quarterly package vendors as the rest of the inmate population. You are actually allowed to purchase from more than the general population now. However, the vendor Garden of Fragrances has been made the new authorized vendor for your religious artifacts.

Supplemental Page
First Level Reviewer's Response
Appeal Log# CTF-C-06-00533
Page 2 of 2

4. In a prison setting it is necessary to limit the amount and types of items that inmates are allowed to have possession of. The reasons for this vary and include but are not limited to space limitations. Inmates are authorized only 6 cubic feet of property per person. Fire safety regulations require appropriate hallways, exits, ventilation and lighting. If no limits were placed on the amount of property, we would violate fire codes. Also, we must ensure the safety and security of the institution, the inmates who live here, the staff who work here, and the general public. Oils are flammable, they can be used to start fires, and they can be heated and thrown at staff or inmates causing severe burns. The different scents can cause allergic reactions which in turn can cause respiratory problems for the individuals affected.

You have failed to demonstrate how any of these limitations prohibit you or hinder you in the practicing of the Muslim Religion. There has been no violation of your first amendment right.

Based on the information provided in ths appeal and a review of appeal number CTF-C-06-00533 and other information gathered **your appeal is PARTIALLY GRANTED.**

Reviewed by:

_B. Hedrick_ _____          _3-21-06_ _____
B. Hedrick                                  Date
Correctional Business Manager II

_V. Raso_ _____          _3/21/06_ _____
V. Raso                                     Date
Associate Warden Business Services (A)

EXHIFIT  "F-2"

First Level    ☐ Granted    ☑ P. Granted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned: **FEB 22 2006**    Due Date: **APR 6 2006**

Interviewed by: _____

See Attached

---

Staff Signature: B. Hedrick    Title: CBM II    Date Completed: 3-21-06

Division Head Approved: _____    Returned

Signature: _____    Title: BMT    Date to Inmate: MAR 23 2006

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This answer is far-fetching by Ass. Warden Religious Program B. Hedrick, For additional vendors, fragrances and modify present policy for order/purchase religious artifacts from every six-months to every three-months (quarterly (four-times a year instead of two-a-year). Secondly, 6 cubic feet of property per person, fire safety regulation requirement; prayer oils being flammable; causing allergic reactions and respiratory problems as a legitimate penological interest is outlandished, there are no recorded incidences in this matter. Not satisfied with this answer.

Signature: Gregory Mitchell    Date Submitted: 3/26/06

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: **MAR 29 2006**    Due Date: **APR 27 2006**

☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: **APR 26 2006**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

P. Barker Chief Deputy Warden and A. P. Kane (Warden (A)) Stated: "You have failed to provide additional substantiation of clarification with regards to your concerns, other than you you do not agree with the response. Therefore, the first level response stands as written." P. Barker and A. P. Kane answer does not meet any legitimate penological justification, and " burdened the practice of appellant's religion, in spite of the first level response. In addition, to the far-fetching first level response. The Equal Protection Clause of the U.S. is violated because all other religious artifacts venders has have multiple fragrances and venders.

Signature: Gregory Mitchell    Date Submitted: 5/04/06

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

**RECEIVED**

**MAR 29 2006**

**CTF APPEALS**

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☑ Denied    ☑ Other
☑ See Attached Letter

Date: **JUL 25 2006**

CDC 602 (12/87)

FXHIFIT    "F-3"

**Department of Corrections and Rehabilitation**
**Correctional Training Facility**
**Soledad, California**

### S U P P L E M E N T A L   P A G E

**RE:**   CTF APPEALS LOG # *CTF-C-06-00533*
Second Level Reviewer's Response

**NAME: MITCHELL**        **CDC# D-44205**        **HOUSING:   GW 209**

**APPEAL DECISION:**

### *PARTIALLY GRANTED*

**APPEAL ISSUE:**   PROGRAM

You were dissatisfied with the first level response. You state the answer given is far-fetching. Your original request is that you feel, based upon RLUIPA, that placing limits on the amount of religious artifacts you are authorized to purchase and restricting the vendor you are allowed to purchase the religious artifacts from is a violation of your First Amendment right to free exercise of religion.

1.  You would like there to be no limits on the types of fragrances allowed as religious artifacts.
2.  You would like the quantity of oils increased from four ounces every six months to four ounces every three months.
3.  You would like additional vendors added for religious artifacts.
4.  You would like a legitimate Penalogical interest as to why this appeal can not be granted.

**APPEAL RESPONSE:**

A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

You have failed to provide additional substantiation or clarification with regards to your concerns, other than you do not agree with the response. Therefore, the first level response stands as written.

Based on the information provided in ths appeal and a review of appeal number CTF-C-06-00533 and other information gathered, **your appeal remains PARTIALLY GRANTED.**

Reviewed by:

P. Barker
Chief Deputy Warden

4·21·06
Date

A. P. Kane
Warden (A)

4/24/06
Date

FXHIFIT   "F-4"

First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days). Date assigned: FEB 22 2006    Due Date: APR 6 2006

Interviewed by: _____

See Attached

Staff Signature: B. Hedrick    Title: CBM II    Date Completed: 3-21-06

Division Head Approved: Signature: _____    Title: BMII    Returned Date to Inmate: 3/21/06  MAR 23 2006

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This answer is far-fetching by Ass. Warden Religious Program B. Hedrick, for additional vendors, fragrances and modify present policy for order/purchase religious artifacts from every six-months to every three-months (quarterly (four-times) a year instead of two-a-year). Secondly, 6 cubic feet of property per person, fire safety regulation requirement, prayer oils being flammable, causing allergic reactions and respiratory problems as a legitimate peno-logical interest is outlandish, there are no recorded incidences in this matter. I'm satisfied with this answer.

Signature: Gregory Mitchell    Date Submitted: 3/26/06

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days). Date assigned: MAR 29 2006    Due Date APR 27 2006

☒ See Attached Letter

Signature: _____    Date Completed: APR 26 2006

Warden/Superintendent Signature: _____    Date Returned to Inmate: APR 26 2006

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

P. Barker Chief Deputy Warden and A.P. Kane Warden (A), Stated, "You have failed to provide additional substantiation or clarification with regards to your concerns, other than, you do not agree with the response. Therefore, the first level response stands as written." P. Barker and A.P. Kane answer does not meet any legitimate penological justification, and "burdened the practice of appellant's religion, in spite of the first level response. In addition, to the far-fetching first level response. The Equal Protection Clause of the U.S. is violated, because all other religious artifacts venders has have multiple fragrances and venders.

Signature: Gregory Mitchell    Date Submitted: 5/04/06

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

RECEIVED

MAR 29 2006

CTF APPEALS

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☒ Other
☒ See Attached Letter    Date: JUL 25 2006

CDC 602 (12/87)

FXHIFIT    "F-5"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    **JUL 2 5** 2006

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0513067        Local Log No.: CTF 06-00533

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he is being forced to purchase religious artifacts from one vendor. He requests that the allowed quantities to order and the vendor limit be lifted.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant requests have been reviewed and considered. A determination has been made that Correctional Training Facility (CTF) has established policies in compliance with departmental policy in this matter. The appellant has failed to provide additional substantiation or clarification regarding his appeal issues, other than disagreeing with the responses provided.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.    FINDINGS:** The appellant fails to present convincing evidence to substantiate his claim to warrant a modification of the decision reached by the institution. The appeal issues have been reviewed and appropriate responses in compliance with departmental policies have been provided. The appellant has not provided convincing evidence that CTF staff have established polices not in compliance with departmental policy. No relief at the Director's Level of Review is warranted.

   **B.    BASIS FOR THE DECISION:**
   California Code of Regulations, Title 15, Section: 3190, 3191, 3193
   CDC Operations Manual Section: 53040.1

   **C.    ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

   cc:    Warden, CTF
          Appeals Coordinator, CTF

# EXHIBIT   "G"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

**2ND LEVEL**

Location. Institution/Parole Region: CTF    MAR 23 2006

Log No. 06-00428

Category 11/5

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

D:44205

NAME GREGORY MITCHELL Mitchell    NUMBER D 44205    ASSIGNMENT L.M. WEST GATE PORTER    UNIT/ROOM NUMBER GW 209 LOW

A. Describe Problem: This appeal is pursuant D.O.M. 53050. 5 Religious Program Activities/Religious Education and and U.S.C.A. Const Amend 1, 28 U.S.C.A. 2254, Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. 2000cc and under 42 U.S.C. 1983, for alleged violations of his First Amendment right to the free exercise of his religion, as well as his fourteenth Amendment right to equal protection of the law. Appellant contends [He] and other situated Muslim inmates are adversely affected because they are being deprived from exercising their religion All Islam. In this case, appellant has being exploring basic educational skills, to learn the the Qur'anic Arabic, which entails a qualified Muslim scholar or Imam with an understanding of the eleven (11) prerequisites See EX. (A) and D.O.M. 53050.5 Religious Program Activities. Wardens can implement the religious

If you need more space, attach one additional sheet.    ( SEE ATTACHED SHEET D.602)

B. Action Requested: That CTF-Soledad Officials hired another full-time or part time Muslim Scholar or Chaplain based on his qualifications to teach appellant and other situated Muslim inmates the eleven (11) rudiment prerequisites in the sciences of the Holy Qur'anic Arabic and Ahadith. SEE e.g. EX. (1) and (B). And order materials consistent in this nature from the Religious Annual Budget.

Inmate/Parolee Signature: Gregory Mitchell    Date Submitted: 2/7/06

C. INFORMAL LEVEL (Date Received: _____)

Staff Response:

*[BYPASS stamp overlaid]*

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

*[BYPASS stamp overlaid]*

Signature: RECEIVED    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

RECEIVED
FEB - 9 2006
CTF APPEALS

RECEIVED
MAR 2 3 2006
CTF APPEALS

RECEIVED
APR - 5 2006
CTF APPEALS

CDC Appeal Number: 06-00428

ADDITIONAL PAGE TO INMATE APPEAL

activities which allows Wardens the authority to implement religious programs consistent with appellant and other situated Muslim inmates Religious belief by obtaining a qualified person as well as hired a full time or part time or intermittent basis. In sense of this logic in D.O.M. 53050.5 appellant believes sincerely he is required to learn the dimensions of Qur'anic Arabic, the literal, and the types of metaphor, in respect, of the Islamic scholarship worlawide have all agreed, that the Qur'anic and Hadith commentaries are tremenaously important to teacher, students, Imams, speakers, writers and translators who are preparing materials to present to Muslim audiences. SEE EX(B)

As commanded by Allah and His Messenger Mohammad (P.B.U.P) appellant is required to follow the scholarly consensus and the tenets of his faith ;accordingly, to Ahl-Sunnah which requires him to learn the educational aspects of the eleven (11) prerequisites sciences to understand the Holy Qur'an and the Sunnah. For these reasons, it is very important to appellant's faith and equally important this right is protected under the RLJIPA Standards 42 U.S.C. 2000 cc-1 (a). This act applies to any "program or activity that receives federal financial assistance." 42 U.S.C. 2000 cc 1 (b)(1) and (2) also D.O.M. 53050. 5. Religious Program Activities.

At present appellant is being force to try to learn these eleven (11) prerequisites without the assistance of a qualified scholar or Imam. And doesn't have the appropriate materials e.g. tapes on the 11 sciences to pursue his Islamic education, which is a fundamental requirement in relations to his five daily prayers, that are to be recited in Qur'aic Arabic. At the end, appellant sincerely believes, learning these Islamic sciences will assist him in his rehabilitation efforts spiritually, psychological and make him better asset to his community in San Juaquin County.

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*March 29, 2006*

*MITCHELL, D44205*
*CFGWT2000000209L*

Log Number: CTF-C-06-00428
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*Your appeal is incomplete. You must include supporting documentation. All documents must be legible. (If necessary, you may obtain copy(ies) of requested documents by sending your request with a signed trust withdrawal form to your assigned counselor.) Your appeal is missing:*

*Your appeals is missing: First Level Response.*

W. B. Childress / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

EXHIBIT "A"



# Al-Ajurrumiyya
## Concise Treatise on Arabic Grammar

By

Imam Abu Abdallah Muhammad ibn Muhammad
ibn Dawud as-Sanhaaji (famous as Ibn-Ajurrum)

Risala Publications
P.O. Box 3194
Los Angeles, Ca. 90078

بسم الله الرحمن الرحيم
*In the Name of Allah, Most Gracious, Ever Merciful*







※ باب المعرفة بأنت ...

※ باب القابل ...

١٢

١٣

Case 3:08-cv-03443-TEH    Document 1-6    Filed 07/17/2008    Page 7 of 47

١٦

١٧

٢٠

٢١

٢٢

٢٣

وهو الذي كتب اصلد بخطه سنة

صاحب مكتبة التاني ★ بتونس

فارستنه انتهاء الطبع ★

الدرس بالجامع الاعظم واعمل انه ★

احمد الهادي النيفر ★

يعون الله الغني الحميد

انتهى هذا الكتن المفيد ★

وقد اعتنى بتصحيحه الشيخ سيدي

هـ ١٣٢٥

★

★

★

★

★

★

٢٤

# EXHIBIT "B"

# JN THE NAME OF ALLAS THE BENEFICENT, THE MERCIFUL

## PERSONAL OPINION OF INTERPRETING AL-QUR'AN AND THE SUNNAH/HADITH



### RELIANCE OF THE TRAVELER pg. R-14.0

The Qur'an came as proof moral answerability against all mankind and jinn, while if interpreting It were not permissible, it could not be a decisive proof. Since it is decisive, it is permissible for someone aquatinted with the dialects of the Arabs and the circumstances under which various verses were reveled to interpret it. As for would be exegetes (explanation, critical analysis or interpretation of a word, literary passage, etc esp. in the Bible or Al-Qur'an) who do not know the dimensions of Arabic, the literal, and the types of metaphor, it is not possible form them to explain it beyond what they have heard, by way of reporting and not actual interpreting.

The generality of the prohibition also entails that whoever does not know which verses abrogate others and which are abrogate, the points on which there is scholarly consensus and the tenets of faith of Ahl-Sunna, is not safe from error if he interprets the Qur'an with nothing beyond the implications of the Arabic. Mere linguistic familiarity with the language is insufficient, and one must know what we have just mentioned. When one knows both, one may interpret Al-Qur'an and is not doing by mere opinion. The above is equally true of Hadith. Qur'an and Hadith commentaries are of tremendous importance to teachers, speakers, writers, and translators who are preparing materials to present to Muslim audiences. The dictionary is not enough.

Reliance of the Traveler R-14 comment by Shaikh Abd-al-Wakil Durbi

"Surely we have revealed it an  Arabic Qur'an that you may understand" (Sura 12 Ayah 2)
"And thus We have revealed it a true judgement in Arabic and if you follow their low desires after what has come to you of knowledge, you shall not have against Allah any guardian or protector.' (Sura 13 Ayah 37)

Narrated Abdullah Ibn Amr, may be pleased with him, I heard the *Messenger of Allah may Allah bless him and grant him peace,* saying "Allah will not deprive you of knowledge after he has given it to you, but it will taken away through the death of religious learned men with their knowledge. Then there will remain ignorant people who, when consulted, will give verdicts according to their opinions whereby they will mislead others and go astray." (Sahih Al-Bukhari book 9 #410)

### Shaikh Shehu Uthman Dan Fodio said in his Ihya as-Sunna Wai-l- Ikmad al-Bida

Innovation (bida) is that which did not exist during the time of *the Messenger of Allah, may Allah bless him and grant him peace.* It is as Ibn Abdas Salaam said, "And it includes in it (bida/innovation) that which is obligatory (waajiba) like the perquisites for understanding the Book of Allah (Al-Qur'an) and *the Sunna of the Messenger of Allah, may Allah bless him and grant him peace;* like grammar (nahw) eloquence (bayaan) and other than these. This is because the preservation of the Sharia cannot be complete except by means of these sciences. And that by which an obligation (waajib) is not completed except by it, it too becomes obligatory.

### THE PREREQUISITE SCIENCES TO UNDERSTANDING THE QUR'AN AND THE SUNNA ARE:

(1) Rules of writing Arabic (kitaaba)
(2) Rules of reading Arabic (qura'at)
(3) The sciences of different readings of the Qur'an
(4) The science of recitation of the Qur'an (tajweed)
(5) The science of conjunction of the Arabic words (sarf)
(6) The science of rhetoric (balaagha)
(7) The science of prosody ('Uruud)
(8) The science of rhyme (qawaafi)
(9) The science of linguistics (ligha)
(10) The science of literary style ('adab)
and finally (11) The science of grammar (nahw).

Each of these sciences is (with the exception of rhyme-Qiwaafi) actually bida (innovations) because they did not exist during the time of *the Messenger of Allah, may Allah bless him and grant him peace.* However they are innovations which are obligatory upon the Muslims to know and transmit because the sources of the deen (namely the Qur'an and the Sunna) can not be understood without them.

(Excerpted from Al-Ajeruumiyya by Imam Abu Abdullah Muhammad Ibn Muhammad Ibn Dawud as-anhaaji famous as Ibn Ajuruum)

*Shaikh Muhmmad al-Arabi ad Darqawi, May Allah protect his secret,* said; "If you want to be purified of doubts and illusions, then always be strengthened by the Sunna of the Messenger of Allah, may Allah bless him and grant him peace. In addition he also stated; "There is no doubt that your safety, my safety and the safety of everyone lies in following the Sunna of *Muhammad, may Allah bless him and grant him peace.* They are the Jama'at since there is no doubt that they follow the agreement of Allah. If there are few people in it, still they are many. The Jama'at can consist of one man if his foot is firm in the Sunna *of Muhammad, may Allah bless him and grant him peace,* outwardly and inwardly. A Jama'at of many people is no a Jama'at if it is not based upon the Sunna of the *Messenger of Allah, may Allah bless him and grant him peace.* (Sawq-I-Ummaa pg. #4)

GXHIGIT "G-3"

First Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other  FEB 0 9 2006

E, REVIEWER'S ACTION (Complete within 15 working days): Date assigned:  Due Date: MAR 2 7 2006

Interviewed by:

See Attached

Staff Signature: B. Hedlen    Title: CBMII    Date Completed: 3/21/06

Division Head Approved: ___    Title: GSMII    Returned
Signature:                                              Date to Inmate: MAR 29 2006

F, If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

It's widely known throughout the Islamic world that the Arabic language (Qur'anic language) is a central tenet of appellant's faith Al Islam. After discussing this with Muslim Chaplain, he is, also in agreement that learning The Al-Ajeruumiyya and the prerequisite sciences Ex (A) is be learned by all Muslims, including his self and agree with hiring another full-time or part-time Chaplain too teach the essentials to the Arabiyya for Muslims Islamic education. (For clear understanding please get a Memo in this regard for Muslim Chaplain).

Signature: Gregory Mitchell    Date Submitted: 3/26/06

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other  APR 5 2006

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned:  Due Date: MAY 3 2006
☐ See Attached Letter

Signature: ___    Date Completed: 4-28-06
Warden/Superintendent Signature: ___    Date Returned to Inmate: MAY 01 2006

H, If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Defendants stated: " Imam Waqia was consulted (It should be noted for further litigation purposes that Imam Waqia is not a state employee) An he received his field training as an Imam from the internally respected leader W.D. Mohamad and was a participant in Imam Mohamad's first Arabic training class in Northern California which began in 1981." From his own admission he participated in an Arabic class or classes. Secondly, he stated: " for the beginner, the Arabic is replaced with transliteration in order for the new Muslim to learn how to properly pronounce the Arabic works needed to perform the prayer (i.e. Bis millahir-rahman-nir- rahim, which

Signature: Gregory Mitchell (SEE ATTACHED PAGE)    Date Submitted: 5/7/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☐ Other  RECEIVED    RECEIVED
☒ See Attached Letter                                                              AUG 0 4 2006
(CDC 602 (12/87))                                                                    Date:

SND ГЕЛЕГ  MAR 2 9 2006    MAY 3

CTF APPEALS    CTF APPEALS

GXHIGIT   "G-4"

**Department of Corrections and Rehabilitation**
**Correctional Training Facility**
**Soledad, California**

## S U P P L E M E N T A L   P A G E

**RE:**   CTF APPEALS LOG # *CTF-C-06-00428*
First Level Reviewer's Response

**NAME: MITCHELL**      **CDC# D-44205**      **HOUSING:   GW243**

**INTERVIEWED BY:**      B. Hedrick, Correctional Business Manager II
Religious Coordinator

### APPEAL DECISION:

*DENIED*

### APPEAL ISSUE:   PROGRAM

In your appeal you request the following:

"That CTF Soledad Officials hire another full-time or part-time Muslim Scholar or Chaplain based on his qualifications to teach appellant and other situated Muslim inmates the eleven (11) rudiment prerequisites in the sciences of The Holy Qur'anic Arabic and Ahadith.

You also want CTF to order materials consistent in this nature from the Religious Annual Budget.

### APPEAL RESPONSE:

You were interviewed by B. Hedrick Correctional Business Manager II and Religious Coordinator.  A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

1.  CTF Soledad does not have position authority to hire an additional Muslim Chaplain, full or part time.  We currently employ a qualified full-time Muslim Chaplain at this facility.  You have failed to demonstrate that the current Chaplain is unable to assist you in the tenets of your faith.

2.  It appears you are asking for an educational instructor to teach you how to learn more about the language of your faith.  If you are interested in a college class, you will need to send a request to the Supervisor of Correctional Education Program for assistance in school classes.

3.  Materials purchased by the institution for the religious programs are determined by the Chaplains and approved by their supervisor and the Warden.  If you have a need for religious information, you will need to discuss your requests with A. Jannah, Muslim Chaplain.  Materials purchased from the institutional budget are for the benefit of the religious programs.  If you would like to purchase specific materials for your personal spiritual growth, you will need to discuss any specific items with the Muslim Chaplain.

Supplemental Page
First Level Reviewer's Response
Appeal Log# CTF-C-06-00428
Page 2 of 2

Based on the information provided in ths appeal and a review of appeal number CTF-C-06-00428 and other information gathered **your appeal is DENIED.**

Reviewed by:

B. Hedrick
Correctional Business Manager II

3-21-06
Date

V. Raso
Associate Warden Business Services (A)

3/21/04
Date

GXHIGIT    "G-5"

First Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other ___ FEB 0 9 2006

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: FEB 0 9 2006 ___ Due Date: MAR 2 7 2006

Interviewed by: _____

See Attached

Staff Signature: B. Hedrick    Title: CBMII    Date Completed: 3/21/06

Division Head Approved:
Signature: _____    Title: BMII    Returned
Date to Inmate: MAR 2 9 2006

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

It's widely known throughout the Islamic world that the Arabic language (Qur'anic language) is a central tenet of appellant's faith Al Islam. After discussing this with Muslim Chaplain, he is, also in agreement that learning The Al-Ajeruumiyya and the prerequisite sciences Ex (A) is be learned by all Muslims, including his self and agrees with hiring another full-time or part-time Chaplain too teach the essentials to the Arabiyya for Muslims Islamic education. (For clear understanding please get a Memo in this regard for Muslim Chaplain).

Signature: Gregory Mitchell    Date Submitted: 3/26/06

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other ___ APR 5 2006

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: APR 5 2006    Due Date: MAY 3 2006

☒ See Attached Letter

Signature: _____    Date Completed: MAY 0 1 2006
Warden/Superintendent Signature: _____    Date Returned to Inmate: MAY 0 1 2006

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Defendants stated: " Imam Waqia was consulted (IE should be noted for further litigation purposes that Imam Waqia is not a state employee) And he received his field training as an Imam from the internally respected leader W.D. Mohammad and was a participant in Imam Mohammad's first Arabic training class in northern California which began in 1981." From his own admission he participated in an Arabic class or classes. Secondly, he stated: " for the beginner, the Arabic is replaced with transliteration in order for the new Muslim to learn how to properly pronounce the Arabic works needed to perform the prayer (i.e. "Bis millahir-rahman-nir- rahiim, which

Signature: Gregory Mitchell    (SEE ATTACHED PAGE)    Date Submitted: 5/7/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Other
☒ See Attached Letter    RECEIVED    RECEIVED    AUG 0 4 2006
Date: _____

CDC 602 (12/87)

БИД ГЕЛЕГ    MAR 2 9 2006    MAY 3

CTF APPEALS    CTF APPEALS

ADDITIONAL PAGE TO INMATE APPEAL H. LEVEL RESPONSE

is transliteration of Arabic). Finally, he Stated: " There is nothing in the dictates to Prophet Muhammad (P.B.U.H) that commanded the Muslims of his original community to make it mandatory that all future Muslims learn advanced Arabic as a pillar or article of their faith.

Sadly, brother Waqia, contradicts his own statement " I [Imam Waqia] participated in Imam Mohammad's first Arabic class in 1981." This statement can be inferred that over a period of 23 years --he has advance in the Qur'anic Arabic. In fact, no so called or respected Imam can legitimately be concerned to an Imam without the knowledge (the sciences related to Exs. (A-B) in this inmate appeal) Qur'anic Arabic Language nor can transliteration ever be the secondary replacement for the Arabic in The Holy Qur'an, more especially the english transliterations.

At the end, the message that is conveyed by Muslim Chaplain Antar Jannah and Imam Waqia, is that Muslims are not obligated to learn the Arabic Language of The Holy Qur'an. Therefore, not affording appellant a reasonable opportunity to exercise or advance his required Islamic education connected to his bone fide belief that Al-Ajeumiyya and the prerequisite sciences must be learned, and are the only way to understand the purest and clearest expressions with regard too the words of Allah (in The Holy Qur'an). A religious freedom guaranteed by the First and Fourteenth amendments.

The defendants are impeding the process to advance or endorses appellant's faith Al Islam. Finally, in many eyes of Muslims/believers worldwide Imam Waqia and Antar Jannah Muslim chaplain's opinion deference not to learn Qur'anic language is viewed as heresy or dogmatic. This answer stalks ongoing entanglements for appellant to freely exercise his religious tenet. This answer is unfounded, speculative, irrational and absolutely dissatisfactory.

GXHIGIT    "G-6"

## Department of Corrections and Rehabilitation
## Correctional Training Facility
## Soledad, California

## SUPPLEMENTAL PAGE

**RE:**  CTF APPEALS LOG # *CTF-C-06-00428*
Second Level Reviewer's Response

**NAME: MITCHELL**        **CDC# D-44205**        **HOUSING:  GW243**

## APPEAL DECISION:

### *DENIED*

## APPEAL ISSUE:    PROGRAM

In your second level appeal you state the following:

It's widely known throughout the Islamic world that the Arabic Language (Qur'anic Language) is a central tenet of your faith Al Islam. After discussing this with Muslim Chaplain, you believe he is, also in agreement that learning The Al-Ajeuumiyya and the prerequisite sciences Ex (A) is to be learned by all Muslims, including the Chaplain himself. You also feel the Chaplain agrees with hiring another full-time or part-time Chaplain to teach the essentials to the Arabiyya for Muslims Islamic education. You then indicate, for a clear understanding please get a memo in this regard from the Muslim Chaplain.

## APPEAL RESPONSE:

A review of your appeal and it's attachments along with information gathered from Antar Jannah, Muslim Chaplain and Imam Yusef Waqia, Interim Chairman of The California Board of Imams, indicates the following:

1. CTF Soledad does not have position authority to hire an additional Muslim Chaplain, full or part time. We currently employ a qualified full-time Muslim Chaplain at this facility. Although he would appreciate additional assistance, it is not necessary.

With regards to the rest of your appeal, Imam Waqia was consulted. Imam Waqia received his direct field training as an Imam from the internally respected leader Imam W. D. Mohammad. Imam Waqia was a participant in Imam Mohammed's first Arabic training class in Northern California which began in 1981. Imam Waqia is the interim chairman of the California Board of Imams which includes amongst its membership, two retired Muslim Chaplains, three Muslim attorneys and a diversified membership representing many ethnic groups. After making him aware of the concerns indicated his response is a follows:

"Al-Islam is a way of life that requires all of its adherence to transform their lives into one that fulfills the principles and habits that enables them to accept a life of obedience to God and his prophets. Prophet Muhammad (PBUH), who the Quran was revealed to over 1400 years ago, established principles and habits that are required of all Muslims. The first being the declaration or statement of faith that makes one a Muslim, then the adherence to prayer, next the paying of charity, followed by fasting during the month of Ramadan, and the final principle is the Pilgrimage to Mecca. It is also mandatory that the Muslim believes in the articles of faith. These are the fundamental mandatory



RECEIVED

AWDS OFFICE

# EXHIBIT "A"

Supplemental Page
Second Level Reviewer's Response
Appeal Log# CTF-C-06-00428
Page 2 of 2

requirements that are placed on all Muslims both male and female. Once a person has fulfilled these requirements they are, and remain Muslims in good standing. The requirements of Muslims around the world are the same, and we find these requirements expressed in all of the elementary books explaining Al-Islam to those who are preparing to accept Al-Islam as their way of life. These books are written in languages from every part of the world. For the beginner, The Arabic is replaced with transliteration in order for the new Muslim to learn how to properly pronounce the Arabic works needed to perform the prayer (i.e. Bismillaahir-rahma-nnir-rahiim, which is the transliteration of the Arabic) which means "With the Name Allah, the Merciful Benefactor, the Merciful Redeemer." From this point learning advanced Arabic is an encouragement upon the new Muslim not a requirement. There is nothing in the dictates of the Prophet Muhammad (PBUH) that commanded the Muslims of his original community to make it mandatory that all future Muslims learn advanced Arabic as a pillar or article of their faith. Almighty God Allah speaks all languages. The Quran was not new, it was revealed to Prophet Muhammad (PBUH) in the most excellent Arabic because Prophet Muhammad (PBUH) was an Arabic speaking Prophet who had the responsibility of establishing an Islamic community on the Arabian Peninsula that would be a model for all future Muslim communities.

Just as the Jewish and Christian scholars must learn Aramaic and Hebrew to understand the original languages of the Bible, so does the Muslim scholar have this same objective, but it is not a requirement for every Muslim, Christian or Jew.

If an inmate wants to learn the advance systems of reading and speaking the Arabic language, they can do this in many ways (i.e. correspondence courses, self-help books, and by soliciting volunteers). It is not a requirement of your Muslim Chaplain to do this type of training nor is he required to possess the knowledge of advanced Arabic to fulfill his responsibilities to you institution as a Chaplain. His responsibility is to teach the basic studies of Al-Islam and assist the inmates in establishing good character. His primary job is to give them the tools to help them maintain excellent character after they are released."

Based on the information provided in ths appeal and a review of appeal number CTF-C-06-00428 and other information gathered **your appeal is DENIED.**

Reviewed by:


_____

P. Barker
Chief Deputy Warden

4-28-06
Date


_____

A. P. Kane
Warden (A)

5/1/06
Date

# EXHIBIT    "G-7"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    AUG 0 4 2006

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0513508        Local Log No.: CTF 06-00428

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that due to his need for additional education in the Islamic religion another full-time Muslim Scholar or Chaplain at the Correctional Training Facility (CTF) is required.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the responsibility of the Muslim Chaplain is to teach the basic studies of Al-Islam and assist the inmates in establishing good character while in prison and after their release to the public. CTF does not have the position authority to hire an additional Muslim Chaplain. The appellant has failed to demonstrate that the current Chaplain is unable to assist the appellant in the tenets of his faith.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

  **A.    FINDINGS:** The Second Level of Review (SLR) has adequately addressed the appellant's appeal issue. The appellant has not established adverse affect in this matter or that he is being denied religious opportunities afforded to other inmates similarly situated. The institution is in compliance with the California Code of Regulations, Title 15, Section (CCR) 3210. The appellant may engage in further religious studies in his assigned cell. The SLR has included information on purchasing specific materials on enhancing the appellant's personal spiritual growth. No relief at the Director's Level of Review is warranted.

  **B.    BASIS FOR THE DECISION:**
  CCR: 3210, 3383

  **C.    ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
        Appeals Coordinator, CTF

# EXHIBIT   "H1"

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. _____

2. _____

`07-00161`

FEB 8 2007

Category

`9-14`

1. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME GREGORY MITCHELL | NUMBER D 44205 | ASSIGNMENT WEST GATE PORTER A.M. | UNIT/ROOM NUMBER GW 209-LOW |
|---|---|---|---|

A. Describe Problem: ___This action effects me adversely because "Inmates... have the right to be

provivided with food sufficient to sustain them in good health that satifies the dietary laws

of their religion. On Jan 1/08/07  I was interveiwed by Rabbi E. J . Klen and he deny my

application to participate in the kosher program even after the Muslim Chaplain agreed on a

Multi-purpose  form  See Ex (A) and (B) The Holy Qur'an sacntions Muslims can eat from the

food of the people of the book . See Ex (A) (B) Also The Holy Qur'an 5:5  This has caused me

personal humiliation and mental angusih and irreparable harm.   This a violation of First

Amendment right.    CIF Soledad officials are aware of O Lone y.  Estate od Shabazz, 482

If you need more space, attach one additional sheet. (See pg attached)

B. Action Requested: ___That I be placed on the Kosher diet program immediately and/or provide me

with a Halal diet or something compared the Kosher diet.

Inmate/Parolee Signature: _Gregory Mitchell_    Date Submitted: __1/9/07__

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

RECEIVED

Signature: _____    Date Submitted: _____

CTF APPEALS

Note: Property/Funds appeals must be accompanied by a completed

RECEIVED

CDC Appeal Number:

Board of Control form BC-1E, Inmate Claim

JAN

FEB 16 2007

`07-00161`

ARSS

CTF APPEALS

RECEIVED

U.S. 342, 107 S Ct. 22400, 96 L Ed. 282 (1987), Turner v. Safley, 482 U.S. 78, 107 S Ct 2254, 96 L Ed. 2d 64 (1987) Appellant has a Fisrt Amendment right to a diet conforming to his religion Al Islam. CTF SOLEDADOEfficals do not provide appellant with a Halal diet nor -- have rea onable alternatives appellant is not vegeterian, and the Kosher diet is considered evidence of the reasonableness of a prison regulation, while the existence of alternatives may be evidence that the [policy] is not reasonable but is an ex-aggerated response' to prison concern , Turner, 482 U.S. at 90-91, 107 S Ct at 2262.

Appellant presented proof that he could eat the food of the people of the book, but was deined because he was not Jewish Inmate which is a violation of equal protection. Thus, CDC has implemted a poorly designed program excluding Muslims dietary laws while providing Jewish inmates their religious deitary laws while ignoring appellant Islamic law . The CDC regulations required me to file a request for relgious diet documenting my religon's dietary laws, and allow my religous sincerity to be demonstrated by signing agreement not buy or eat any foods that are not Kosher/Halal which I agreed to. In so doing, CDC policy points to no evidence not to provide appellant with Halal or kosher meals. There is no ready alternatives that would accommodate the appellant's right as de minimis costs to valid penological interest of the CDC.

In fact, this impose substantial burden on appellant's religious exercise, and trigger strict scrutiny requirement of Religious land Use and Institutionalized Persons Act (RLUIPA) Appellant faces irrepalbe harm because he is force to eat foods or not limited to meats not prosrcibed by his sincerity a central tenent of his faith Al Islam.

Respectfully, submitted

*Gregory Mitchell*

Gregory mitchell   D 44205

RECEIVED

 

A&#36;&#36;S  SVFICE

# EXHIBIT   "H2"

STATE OF CALIFORNIA
RELIGIOUS DIET REQUEST
CDCR 3030 (09/05)

DEPA...  .NT OF CORRECTIONS AND REHABILITATION

DISTRIBUTION:
ORIGINAL – C-FILE
COPY – INMATE
COPY – CHAPLAIN
COPY · CORRECTIONAL FOOD MANAGER

| INMATE NAME: GREGORY MITCHELL | FACILITY: CTF –SOLEDAD CENTRAL |
|---|---|
| CDCR NO.: D 44205 | HOUSING UNIT: GW-209 –LOWER |
| SIGNATURE: | DATE OF REQUEST: |

RELIGION: ISLAM

RELIGIOUS GROUP (optional): 2 JEWISH/KOSHER

I HAVE BEEN PRACTICING THIS RELIGION
SINCE: 1993

GROUP ADDRESS:

TELEPHONE NO:

The California Department of Corrections and Rehabilitation offers two religious meal options:

- Option 1- Vegetarian meals (including dairy products and eggs) based on regular institution meals. Vegetarian protein substitutes are offered when meats are served. Fish may be included.

- Option 2 – Jewish kosher meals. This program is for Jewish inmates of who wish to follow the standards of Judaism.

What are the religious dietary laws to which you must adhere, and the tenets of your religion?
My religious dietary needs allow me to eat the food of the people of the book. Accodingly to the attached requested for interview signed by Antar Jannah, The Holy Qur'an scantions a kosher Diet in congurent to my religious Deitary needs

Can your religious dietary needs be met by not eating pork, and/or following a vegetarian diet? If not, please explain why. The Holy Qur'an prohibits me to eat and pork or pork by products. It is absolutely Haram prohibitted to pork.

*Attach documentation to support your request (optional)*
INMATES DO NOT WRITE BELOW THIS LINE

DIET REQUEST: Kosher                APPROVED  /  DENIED

If denied, give reason(s): NOT OF JEWISH FAITH

Other Action Taken / Comments:

CHAPLAIN'S SIGNATURE:                          DATE: 1/08/07

Date Application Received: 1/08/07    Date Inmate Interviewed: 1/08/07

RECEIVED

JAN 17 2007

AWSS OFFICE

RECEIVED

AWBS  OFFICE

# EXHIBIT  "B"

# MULTI-PURPOSE FORM

TO: ANTAR JANNAH    MUSLIM CHAPLAIN    DATE: 12-27-06

(Name)     (Title)

☐ MEDICAL CONCERN
☐ DENTAL CONCERN
☐ VISITING CONCERN
☐ REQUEST FOR INTERVIEW
☐ PACKAGE ROOM
☐ REQUEST FOR I.D. CARD
☐ REQUEST FOR REVIEW CENTRAL FILE
☐ MAIL ROOM: Request for metered envelopes (No Funds)
☐ E.P.R.D.: You should be within six (6) months of release date to inquire

☐ TRUST ACCOUNTS
☐ TRUST ACCOUNT WITHDRAWAL
☐ REQUEST FOR ROOM CHANGE
☐ REQUEST FOR UNIT CHANGE
☐ FAMILY HOUSING UNIT VISIT INTERVIEW
☑ REQUEST FOR CHAPLAIN INTERVIEW
☐ MEDICALLY CLEARED FOR CUNLINARY REQUEST

REASON FOR REQUEST (Be specific: Explain your problem): To be placed on The Kosher
Det List As you know As a Muslim That it is ORDAINED
IN THE HOLY QUR'AN SANCTIONS A KOSHER DEIT ACCORDING
TO THE DICTATES OF THE HOLY QUR'AN MUSLIMS CAN EAT FOODS
FROM THE PEOPLE OF BOOK

DATE:

STAFF RESPONSE: You are correct    Antar V. [signature] 12/27/06

INMATE: G MITCHELL    INMATE NUMBER: D 44205    CELL: G10-209-LOW
ASSIGNMENT: WEST GATE PORTER    A.M. HOURS: 7:30 A.M. to 1:30 P.M.    RDO'S: F.S.

CTF-304 (Rev. 04-97)

# EXHIBIT    "H3"

**Department of Corrections and Rehabilitation**
**Correctional Training Facility**
**Soledad, California**

RECEIVED

**SUPPLEMENTAL PAGE**

RE:    CTF APPEALS LOG # *CTF-C-07-00161*
First Level Reviewer's Response

AWDS    OFFICE

**NAME: MITCHELL**          **CDC# D-44205**      **HOUSING:**    **GW-209L**

**INTERVIEWED BY:**      B. Hedrick, Correctional Business Manager II
Religious Coordinator

**APPEAL DECISION:**

*PARTIALLY GRANTED*

**APPEAL ISSUE:**      LIVING CONDITIONS

You would like to be placed on the Jewish Kosher Food Diet immediately and/or be provided with a Halal diet or something compared to the Kosher Program.

**APPEAL RESPONSE:**

You were interviewed by B. Hedrick Correctional Business Manager II and Religious Coordinator, on Thursday, February 01, 2007, at approximately 1245 hours. A thorough review of your appeal's package and all of your attachments has been completed and reveals the following:

You are not a Jewish inmate and are therefore not entitled to the Jewish Kosher Diet. CCR Title 15 section 3054.2 (a) states, "Jewish inmates may participate in the program as determined by a Jewish Chaplain. This portion of your appeal is denied.

You have not been denied a diet that meets the expectations of your faith. You have failed to provide any information which indicates you were denied the Special Religious Diet Option 1- Vegetarian meals. You may complete a CDCR form 3030 Religious Diet Request, and forward it to the Muslim Chaplain for review. The Regular and Vegetarian diets contain no pork or pork products. The vegetarian diet serves no meat except fish and fish is Halal. Therefore, there is a dietary option that accommodates your religious beliefs.

Based on the information provided in ths appeal and a review of appeal number CTF-C-7-00161 and other information gathered your appeal is **PARTIALLY GRANTED.**

Reviewed by:

E. J. Klein
Jewish Chaplain

2-05-07
Date

B. Hedrick
Correctional Business Manager II

2/5/07
Date

# EXHIBIT "H4"

## F. LEVEL RESPONSE ADDITIONAL SHEET

At both my interviews with Jewish Chaplain E. J. Klen and Business Manager II B. Hederick I mentioned the fact that their conduct is violating clearly established law that a reasonable official should know. Rabbi Klen and B Hedrick acknowledged that I have a right to be provided with a diet according to my religious belief Al Islam.    However, in light of CCR Title 15 3052 (a) "only allows Jewish observants to participate in this program."

Secordly, on the First Level Reviewer's Response stated: "you have failed to provide any information which indicates you when denied the special religious diet option- 1 vegetarian meals.  Defendants overlooked the curx of the this appeal " CTF—SOLEDAD OFFICIALS do not provide appellant with a Halal diet nor -- have reasonable alternatives appellant is not a vegaterian"  "I should be noted that at the interview with B. Hedrick she stated I could sue her all I wanted."


Respectfully, yours

*Gregory Mitchell*
Gregory Mitchell D 44205

F. Level Response

First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: ___JAN 1 2 2007___ Due Date: __FEB 2 8 2007__

Interviewed by: _____

Staff Signature: _____    Title _hap'ain___    Date Completed 2 - 05 - 07

Division Head Approved: __B Hedrice__    Title: _CBM II___    Returned
Signature: _____    Date to Inmate: FEB 8 07 2007

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This answer is terribly flawed and I am dissatisfied (See Attached Response)

Signature: __Gregory Mitchell__    Date Submitted: __2/11/07__

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __FEB 1 6 2007__    Due Date: __MAR 1 9 2007__
☒ See Attached Letter

Signature: _____ ALSOS    Date Completed: __2/27/57__

Warden/Superintendent Signature: _____    Date Returned to Inmate: FEB 1 8 07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

This answer is legally argued therefore see attached sheet for H level

Response I dissatisfied.

Signature: __Gregory Mitchell__    Date Submitted: __3/6/06__

For the Director's Review, submit all documents to: Director of Corrections
                                                    P.O. Box 942883
                                                    Sacramento, CA 94283-0001
                                                    Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter
                                                                        Date: _____
CDC 602 (12/87)

# EXHIBIT "H5"

Department of Corrections and Rehabilitation
Correctional Training Facility
Soledad, California

SUPPLEMENTAL PAGE

RE:    CTF APPEALS LOG # *CTF-C-07-00161*
       Second Level Reviewer's Response

NAME: MITCHELL          CDC# D-44205        HOUSING:    GW-209L

APPEAL DECISION:

   *PARTIALLY GRANTED*

APPEAL ISSUE:       LIVING CONDITIONS

   You would like to be placed on the Jewish Kosher Food Diet immediately and/or be provided with a Halal diet or something compared to the Kosher Program. You believe the first level response was terribly flawed and you are dissatisfied.

APPEAL RESPONSE:

   Several federal courts have concluded recently that a prison' refusal to provide inmates with halal meat was constitutionally adequate. *Williams v. Morton*, 343 F.3d 212 (3d. Cir. 2003); Hudson v. Maloney 326 F.Supp.2d 206 (D. Mass. 2004). Upon consulting the decisions of courts that considered the issue before September 2002, "the vast majority of these courts had determined that a prison permissibly discharged its constitutional duty to respect the dietary beliefs of Muslim inmates by offering an alternative, pork-free diet, and more broadly, that the law permitted prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the large number of food-related religious beliefs likely to be encountered in a prison population." *Hudson*, 326 F.Supp.2d at 211.

   You have not been denied a diet that meets the expectations of your faith. You have failed to provide any information which indicates you were denied the Special Religious Diet Option 1- Vegetarian meals. You may complete a CDCR form 3030 Religious Diet Request, and forward it to the Muslim Chaplain for review. The Regular and Vegetarian diets contain no pork or pork products. The vegetarian diet serves no meat except fish and fish is Halal. Therefore, there is a dietary option that accommodates your religious beliefs.

   Based on the information provided in ths appeal and a review of appeal number CTF-C-07-00161 and other information gathered your appeal remains **PARTIALLY GRANTED**.

Reviewed by:


_____                    _2/27/07_____
W. J. Hill                                               Date
Associate Warden Business Services


_____                    _2/26/07_____
B. Curry                                                 Date
Warden (A)

# INMATE APPEAL ROUTE SLIP

To: AW - BUS SVCS                          Date: February 16, 2007

From: INMATE APPEALS OFFICE

Re: Appeal Log Number **CTF-S-07-00161** By Inmate **MITCHELL, D44205**

Please assign this appeal to appropriate staff for **SECOND** level response.

Appeal Issue: **LIVING CONDITIONS**
Due Date: **03/19/2007**
Special Needs:

STAFF INSTRUCTIONS:
Second level appeals require a personal interview if not afforded at the first level. Begin your response with: **GRANTED, DENIED, PARTIALLY GRANTED** or **WITHDRAWN**. When complete, return to Appeals Office. Appeals that are incomplete will be returned to the responding staff for appropriate completion. Refer to D.O.M. 54100 for instructions.


**J. Aboytes, CCII / P.G. Dennis, CCII**
**Appeals Coordinators,**
**Correctional Training Facility**

# EXHIBIT "H6"

First Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __JAN 1 2 2007__  Due Date: __FEB 2 8 2007__

Interviewed by: _____

Staff Signature: _____  Title: Chaplain  Date Completed: 2-05-07

Division Head Approved: ____

Signature: B Hedicee  Title: CBM II  Returned Date to Inmate: FEB 08 2007

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

This answer is terribly flawed and I am dissatisfied (See Attached Response)

Signature: Gregory Mitchell  Date Submitted: 2/11/07

Second Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __FEB 1 6 2007__  Due Date: __MAR 1 9 2007__

☒ See Attached Letter

Signature: _____, AWDS  Date Completed: 2/27/57

Warden/Superintendent Signature: _____  Date Returned to Inmate: FEB 2 8 07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

This answer is legally argued therefore see attached sheet for H level

Response I dissatisfied.

Signature: Gregory Mitchell  Date Submitted: 3/6/06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)  Date: _____

# EXHIBIT   "H7"

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JUN 1 1 2007**

In re:    Mitchell, D-44205
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0611473        Local Log No.: CTF 07-00161

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. G. Arceo, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that the institution is violating his right to practice his religious as the Religious Diet Program as outlined in the California Code of Regulations, Title 15, Section (CCR) 3030 forces Muslim inmates to violate their religious dietary needs. He requests to be placed on the kosher diet program immediately and to provide him with a Halal diet or something comparable to the kosher diet.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the First Level of Review and Second Level of Review in this matter has addressed the appellant's appeal issue and his request. The appellant is not being denied a diet that meets the expectations of his faith. The appellant has failed to provide any information which indicates that he has been denied the Special Religious Diet Option 1-Vegetarian meals. The appellant may completed a CDC Form 3030, Religious Diet Request, and forward it to the Muslim Chaplain for review. The Regular and Vegetarian diets contain no pork or pork products and serves no meat except fish and fish is Halal.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.    FINDINGS:** The appellant's appeal issue has received the required review. The appellant has presented no evidence that the Department has failed to comply with the CCR 3054 in this matter. The appellant has been advised of the religious diet alternatives. No relief at the Director's Level of Review is required.

**B.    BASIS FOR THE DECISION:**
CCR: 3001, 3050, 3054

**C.    ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, CTF
Appeals Coordinator, CTF